Ellisen S. Turner, P.C. (SBN 224842)
Ali-Reza Boloori (SBN 271489)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:    (310) 552 4200
Facsimile:    (310) 552 5900
ellisen.turner@kirkland.com
ali-reza.boloori@kirkland.com

Joseph A. Loy, P.C. (*Pro Hac Vice*)
Joshua L. Simmons, P.C. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:    (212) 446-4980
Facsimile:    (212) 446-4900
jloy@kirkland.com
joshua.simmons@kirkland.com

Jeanne M. Heffernan, P.C. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:    (512) 678-9100
Facsimile:    (512) 678 9101
jheffernan@kirkland.com

Additional counsel contained in signature block.

*Attorneys for Defendant Samsara Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTIVE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSARA INC., <br><br> Defendant. | CASE NO. 3:24-CV-00902-JD <br> **SAMSARA'S MOTION TO TRANSFER OR STAY PURSUANT TO THE FIRST-TO-FILE RULE** <br><br> Hearing Date: May 23, 2024 <br> Hearing Time: 10:00 a.m. <br> Courtroom 11, 19th Floor <br> Judge: Hon. James Donato |

1

2

## NOTICE OF MOTION TO TRANSFER OR STAY UNDER THE FIRST-TO-FILE RULE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 23, 2024 at 10:00 a.m., or as soon thereafter as it may be heard, in the courtroom of the Honorable James Donato, San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Samsara Inc. ("Samsara") respectfully moves to transfer this action to the District of Delaware or, in the alternative, for a stay under the first-to-file rule, based on the earlier-filed action in that Court captioned *Samsara Inc. v. Motive Technologies, Inc.*, C.A. No. 1:24-00084-MN (D. Del.) ("Delaware Action"), which involves identical parties and substantially similar issues.

Samsara's motion is supported by the Memorandum of Points and Authorities contained herein, the Declaration of Ali-Reza Boloori ("Boloori Decl.") and supporting exhibits submitted herewith, all other pleadings and papers filed in this action, and all other evidence, information, and argument that has been or will be presented to the Court in connection with this motion.

## STATEMENT OF THE RELIEF SOUGHT

Samsara respectfully requests that the Court transfer this action to the District of Delaware under the first-to-file rule in view of an earlier-filed action pending in the District of Delaware involving identical parties and substantially similar issues and disputes.

# TABLE OF CONTENTS

**Page**

I.     **INTRODUCTION**.................................................................................1

II.    **ISSUES TO BE DECIDED** ..............................................................3

III.   **FACTUAL BACKGROUND**.............................................................3

       A.    **The Parties** ..........................................................................3

       B.    **Procedural History**..............................................................3

IV.   **LEGAL STANDARD** ........................................................................5

V.    **ARGUMENT** .....................................................................................6

       A.    **The First-to-File Rule Applies** ..........................................6

             1.    Samsara's Delaware Action is first filed. ...........................6

             2.    The parties are identical. ....................................................7

             3.    The issues are substantially similar....................................7

       B.    **This Court Should Defer to the District of Delaware, as the First-Filed Forum, to Decide Whether to Deviate From the First-to-File Rule** .....................13

VI.   **CONCLUSION** ...............................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alibaba.com, Inc. v. Litecubes, Inc.*,
   No. C03-5574 MHP, 2004 WL 443712 (N.D. Cal. Mar. 8, 2004) ...........................................5, 13

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
   946 F.2d 622 (9th Cir. 1991) ...................................................................................................5, 13

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011) .........................................................................................................5

*Bashiri v. Sadler*,
   No. CV 07-2268-PHX-JAT, 2008 WL 2561910 (D. Ariz. Jun. 25, 2008)....................................12

*Church of Scientology of Cal. v. U.S. Dep't of the Army*,
   611 F.2d 738 (9th Cir. 1979) ...........................................................................................................5

*Comp360 LLC v. KT Enterprises, LLC*,
   No. 8:22-CV-0447-KKM-AAS, 2022 WL 2441937 (M.D. Fla. Jun. 23, 2022) .........................12

*Golo, LLC v. Goli Nutrition Inc.*,
   No. 2:21-cv-02348-VAP(MAAx), 2021 WL 3360134 (C.D. Cal. Jul. 30, 2021) .........................5

*Juniper Networks, Inc. v. Mosaid Techs. Inc.*,
   No. C 11-6264 PJH, 2012 WL 1029572 (N.D. Cal. Mar. 26, 2012) ............................................13

*Lyons v. Hall Ambulance Serv. Inc.*,
   172 F.3d 57 (9th Cir. 1999) ...........................................................................................................12

*Martin v. Glob. Tel\*Link Corp.*,
   No. 15-CV-00449-YGR, 2015 WL 2124379 (N.D. Cal. May 6, 2015) ...................................5, 12

*Moyer v. Cellura*,
   No. 23-CV-03004-SVK, 2023 WL 6959277 (N.D. Cal. Oct. 19, 2023) .......................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*,
   No. C-11-1892 EMC, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012)...............................................7

*O2COOL, LLC v. Discovery Commc'ns, LLC*,
   No. 12 C 3204, 2013 WL 157703 (N.D. Ill. Jan. 15, 2013) ............................................................6

*Pacesetter Sys. Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982) .............................................................................................................5

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
   No. 16-cv-06371-BLF, 2017 WL 1065334 (N.D. Cal. Mar. 21, 2017)......................................7, 8

*Red v. Unilever U.S., Inc.*,
  No. 09-07855 MMM, 2010 WL 11515197 (C.D. Cal. Jan. 25, 2010) ..........................................8

*Schwartz v. Frito–Lay N. Am.*,
  No. C–12–02740, 2012 WL 8147135 (N.D. Cal. Sept. 12, 2012)....................................................5

*SMIC, Ams. v. Innovative Foundry Techs. LLC*,
  473 F. Supp. 3d 1021 (N.D. Cal. 2020) ......................................................................................6

*Therapy Stores, Inc. v. JGV Apparel Grp., LLC*,
  No. 4:16-CV-02588-YGR, 2016 WL 4492583 (N.D. Cal. Aug. 26, 2016) ..................................6

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
  967 F. Supp. 2d 1289 (N.D. Cal. 2013) ...............................................................................7, 12

*Ward v. Follett Corp.*,
  158 F.R.D. 645 (N.D. Cal. 1994).........................................................................................12

*Williamson v. Am. Mastiff Breeders Council*,
  No. 3:08-CV-336-ECR-VPC, 2009 WL 634231 (D. Nev. Mar. 6, 2009) ...............................7, 12

**Statutes**

28 U.S.C. § 1404..........................................................................................................................13

28 U.S.C. § 1659..........................................................................................................................13

Tariff Act Section 337 ..................................................................................................................4

**Rules**

Fed. R. Civ. P. 15..........................................................................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The Court should transfer this second-filed, retaliatory action to the District of Delaware, where a first-filed action between the same parties, concerning directly overlapping claims and issues, is already pending. In January, Samsara filed that first action against Motive in Delaware, where both parties are incorporated, to stop Motive's pervasive fraud, false advertising, unfair competition, and patent infringement (the "Delaware Action"). Ex. 4.[1]

The Delaware Action was triggered after Samsara discovered that Motive's management team, including its founder, chief executive officer, chief technology officer, and numerous other Motive employees had for years been using fake company names, posing as legitimate Samsara customers, to access Samsara's technology platform. Ex. 6 (Samsara's Amended Complaint in the Delaware Action) ¶ 55. Disguised as genuine customers, Motive's leadership team fraudulently gained access to Samsara's technical information and the epicenter of Samsara's product platform, which Motive studied and copied to develop competing products. *Id*. ¶¶ 3, 59. Motive had also solicited fraudulent benchmarking studies with improperly manipulated and flawed results that it used and continues to use to deceive consumers into believing Motive's products are more accurate and better than Samsara's. *Id*. ¶¶ 70–91. Shocked at the extensive culture of sharp business practices at Motive, Samsara continued its investigation and soon uncovered that Motive was also infringing multiple Samsara patents. *Id*. ¶ 5. Samsara ultimately raised all of these issues with Motive's chief executive officer and its board of directors in the hopes that Motive would at least change its behavior, even if it would not take its own management to task for their extensive misconduct. Ex. 3. But Motive refused to stop, let alone correct, its behavior, and Samsara was therefore forced to file suit on January 24, 2024. Ex. 4. Samsara also updated its websites to explain why Motive's fraud, patent infringement, and other misconduct had forced Samsara to resort to legal process to protect its rights and uphold the standards of fair competition.

Motive's CEO immediately decried Samsara's litigation, proclaiming that "[t]his courtroom tactic is an attempt to limit competition and we will fight these baseless accusations to the fullest extent." Ex.

---

[1] "Ex." Refers to an exhibit to the Booloori Decl.

16 at 2. But Motive instead did the opposite, ducking Samsara's first-filed litigation in Delaware at every turn. Motive solicited an extension of time to respond to Samsara's complaint. Ex. 15. But rather than use that time to answer, let alone deny, Samsara's claims, Motive instead crafted and filed the present retaliatory litigation on February 15, 2024. Dkt. 1 (Motive Complaint). Motive also launched its own responsive website falsely attacking Samsara and Samsara's business. *Id*. ¶¶ 13, 109. Much like Motive's copycat tactics in its business, Motive's complaint here largely copies and reverses the claims Samsara had already asserted in its first-filed complaint (although Motive's allegations have a specious and deficient factual basis as the Court will later learn). Two weeks later, on February 28, 2024, Motive moved to dismiss Samsara's Delaware action, send all of Samsara's claims to arbitration, or have them transferred here. *See* Exs. 5, 12. After Samsara filed a March 20, 2024 amended complaint (Ex. 6) that mooted Motive's motion (Ex. 7), Motive refiled its motion on April 3, 2024 and additionally moved to stay all of Samsara's claims (Ex. 8).

The direct relationship and overlap between Samsara's first-filed Delaware Action and Motive's response in this Court are apparent from the parties' complaints. For example, in this action, Motive asserts defamation and intentional interference claims. Dkt. 1 ¶¶ 207–220, 221–231. These Motive claims require proving that Samsara's allegations in its first-filed complaint in the Delaware Action were false. But the Delaware Court will resolve these ***exact issues*** in Samsara's first-filed suit as part of resolving Samsara's claims about, *e.g.*, Motive's improper access and fraud. Motive's complaint also seeks to turn the tables and assert that various Samsara employees improperly accessed Motive's platform and copied Motive's technology. *Id*. ¶¶ 9, 12. Thus, Motive merely reverses and regurgitates the same unfair competition and fraud claims that Samsara first filed. Ex. 6 ¶¶ 199–220. Motive also tacks on trade secret misappropriation claims based on employee mobility, yet it was Samsara that first alleged Motive lured away Samsara's own employees. *Id*. ¶¶ 4, 92–96; Dkt. 1 ¶ 9, 61–82. Motive further asserts false advertising claims that are based on the features of the very same Samsara products at the heart of Samsara's own first-filed false advertising claims against Motive. *Compare* Dkt. 1 ¶¶ 153–165, 177–183 *with* Ex. 6 ¶¶ 190–198. Finally, Motive contends those same Samsara products infringe a newly issued Motive patent that relates to the same product category as patents Samsara first asserted against Motive. Ex. 6 ¶¶ 127–189; Dkt. 1 ¶¶ 140–

152. Thus, at every turn, Motive's second-filed complaint concerns some or all of the same facts, products, technology, and legal issues that were already put at issue in Samsara's first-filed action in Delaware.

The Court has discretion to dismiss, stay, or transfer this action under the "first-to-file" rule. The rule applies where, as here, the first-filed action involves identical parties and substantially similar issues. Motive's complaint asserts copycat claims based on the same or substantially similar factual and legal issues already pending in Samsara's first-filed Delaware action. The first-to-file rule is intended to respect comity and the first plaintiff's choice of venue, maximize judicial and litigant economy, and eliminate the risk of inconsistent judgments. These goals are all served by transferring this case to the District of Delaware. Samsara recognizes that Motive's tactics to evade and delay Samsara's Delaware claims, by moving to transfer them here or send them to arbitration, intentionally muddies the waters. But if the Court here is not inclined to immediately grant transfer while Motive's motion in Delaware is pending, the Court's precedent directs that it should issue a stay until after the Delaware court decides how and where that earlier-filed matter should proceed.

## II.     ISSUES TO BE DECIDED

Does Samsara's first-filed Delaware Action involve issues that are at least substantially similar to those presented in Motive's second-filed claims here such that the first-to-file rule applies? If so, should the Court transfer or stay this case under the first-to-file rule?

## III.    FACTUAL BACKGROUND

### A.     The Parties

Both Samsara and Motive are Delaware corporations with offices worldwide. Ex. 6 ¶¶ 11–12. Samsara has offices in North America (Atlanta, San Francisco, and Mexico City), Europe (London, Paris, Amsterdam, Munich, and Warsaw), and Taiwan. Ex. 2. Most Motive employees appear to be in Pakistan, where it has offices in Lahore and Islamabad. *See* Ex. 17. Motive also has offices in the United States (San Francisco, Nashville, and Buffalo), Canada (Vancouver), India (Bengaluru), and Taiwan. Ex. 1.

### B.     Procedural History

***Samsara's first-filed Delaware Action:*** On January 24, 2024, Samsara sued Motive in the United States District Court for the District of Delaware. In the Delaware Action, Samsara asserted the following

claims against Motive: infringement of three patents (Counts I–III);[2] false advertising under the Lanham Act (Count IV); fraud (Count V); violation of the Computer Fraud and Abuse Act (Count VI); and violation of California's Unfair Competition Law ("UCL") (Count VII). Ex. 4 ¶¶ 127–220. Samsara's non-patent claims are based on two separate sets of Motive misconduct: (i) Motive's unlawful access of Samsara's proprietary information and platform based on Motive's leadership team and other personnel fraudulently posing as legitimate Samsara customers; and (ii) Motive's false statements about Samsara's products and their performance compared to Motive's products. *Id.*

***Motive's second-filed action in this Court:*** After seeking a 14-day extension to respond to Samsara's Delaware Action, and before filing any responsive pleading or motion in that Court, Motive filed the present action on February 15, 2024. Dkt. 1. Motive asserts: infringement of one patent (First Count); false advertising under the Lanham Act (Second Count); fraud (Third Count); violation of California's UCL (Fourth Count); trade secret misappropriation under California and federal law (Fifth and Sixth Counts respectively); defamation (Seventh Count); and intentional interference with prospective economic relations (Eighth Count). Dkt. 1 ¶¶ 140–231.

***Motive's bid to transfer or dismiss the Delaware Action:*** On February 28, 2024, Motive filed a motion in the Delaware Action to transfer to this Court or, in the alternative, dismiss in favor of arbitration. Ex. 5. On the same day, Motive filed a Demand for Arbitration with JAMS to arbitrate every claim in the Delaware Action. Ex. 12. Samsara informed JAMS that threshold questions relating to whether the parties had agreed to arbitration and the arbitrability of claims should be resolved by the Court. Exs. 14, 18. On March 22, 2024, JAMS informed the parties that, at least for now, the arbitration will proceed to arbitrator selection, and that the parties may raise jurisdictional questions with the arbitrator. Ex. 13.

***Samsara amends its complaint in the Delaware Action:*** On March 20, 2024, Samsara filed an amended complaint in the Delaware Action, adding two more claims against Motive: (i) false advertising under California's UCL (Count VIII); and (ii) violation of Delaware's Deceptive Trade Practices Act

---

[2] On February 9, 2024, Samsara also filed a complaint at the U.S. International Trade Commission ("ITC") to institute an Investigation against Motive under Section 337 of the Tariff Act. Ex. 10. Samsara's ITC complaint alleges infringement of the same patents asserted in the Delaware Action. *Id.* at 1. The ITC instituted an investigation based on Samsara's complaint on March 12, 2024. Ex. 11.

1  (Count IX). Ex. 6 ¶¶ 221–233. These two additional counts are based on the same conduct that forms the

2  basis of the non-patent claims in Samsara's original complaint against Motive. On April 3, 2024, Motive

3  filed a renewed motion to transfer to this Court or, in the alternative, dismiss in favor of arbitration. Ex. 8.

4  In parallel, Motive moved to stay the Delaware Action in its entirety until the ITC Investigation concludes.

5  Ex. 9.

6  **IV.    LEGAL STANDARD**

7          The first-to-file rule is a "'doctrine of federal comity which permits a district court to decline

8  jurisdiction over an action when a complaint involving the same parties and issues has already been filed

9  in another district.'" *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011) (quoting *Pacesetter*

10 *Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982)). This rule is intended to promote judicial

11 efficiency by avoiding duplicative judicial efforts and inconsistent judgments. *Alltrade, Inc. v. Uniweld*

12 *Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991); *Martin v. Glob. Tel*Link Corp.*, No. 15-CV-00449-YGR,

13 2015 WL 2124379, at *3 (N.D. Cal. May 6, 2015). Under the rule, the district court has discretion to

14 dismiss, stay, or transfer a case to the district with the first-filed case. *Martin*, 2015 WL 2124379, at *3

15 (citing *Pacesetter*, 678 F. 2d at 94–95). While the rule is not to be applied mechanically, it "should not be

16 disregarded lightly." *Alltrade*, 946 F.2d at 625 (9th Cir. 1991) (quoting *Church of Scientology of Cal. v.*

17 *U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)); *Alibaba.com, Inc. v. Litecubes, Inc.*, No. C03-

18 5574 MHP, 2004 WL 443712, at *2 (N.D. Cal. Mar. 8, 2004).

19         The rule favors transferring a later-filed action to the court where an earlier-filed one is pending,

20 when the actions involve the same parties and at least substantially similar issues. *Martin*, 2015 WL

21 2124379, at *3 (citing *Schwartz v. Frito–Lay N. Am.*, No. C–12–02740, 2012 WL 8147135, at *2 (N.D.

22 Cal. Sept. 12, 2012)); *Alltrade*, 946 F.2d at 628. "Substantial similarity" requires only that key issues

23 overlap and that the resolution of one action could affect resolution of the other. *Golo, LLC v. Goli*

24 *Nutrition Inc.*, No. 2:21-cv-02348-VAP(MAAx), 2021 WL 3360134, at *7 (C.D. Cal. Jul. 30, 2021).

25 Exceptions to the first-to-file rule include where the first suit evidences bad faith, is merely anticipatory,

26 or is motivated by forum shopping, none of which apply here. *Martin*, 2015 WL 2124379, at *3 (citing

27 *Alltrade*, 946 F.2d at 628).

28

1    **V.      ARGUMENT**

2          All requirements for the first-to-file rule are met here: (1) Motive's copycat complaint trailed

3    Samsara's Delaware complaint by three weeks, and Samsara's Amended Complaint relates back to its

4    original filing; (2) the parties here and in the Delaware Action are identical; and (3) the issues and disputes

5    permeating both actions are substantially similar. Finally, no exception to the first-to-file rule applies.

6    Moreover, under controlling precedent, the decision whether to deviate from the first-to-file rule is the

7    prerogative of the first-filed forum—here, the U.S. District Court for the District of Delaware. Therefore,

8    if not transferred immediately, this action should be stayed pending decisions on Motive's motions in that

9    forum.

10         **A.      The First-to-File Rule Applies**

11                **1.      Samsara's Delaware Action is first filed.**

12         Samsara filed the Delaware Action first, on January 24, 2024, over three weeks before Motive

13   filed its copycat complaint on February 15, 2024. Indeed, at minimum Motive's defamation and tortious

14   interference claims are solely based on Samsara's Delaware Action. *See* Dkt. 1 ¶ 120. Although Samsara

15   amended its original complaint in the Delaware Action after Motive filed its own retaliatory lawsuit,

16   Samsara's original complaint triggered the first-filed rule. *SMIC, Ams. v. Innovative Foundry Techs. LLC*,

17   473 F. Supp. 3d 1021, 1025 (N.D. Cal. 2020) (applying first-to-file rule even though the plaintiff in the

18   first-filed case had amended its complaint after the defendant in that case filed a second action in a

19   different court).

20         Samsara's amended complaint in the Delaware Action also relates back to its original complaint

21   under Fed. R. Civ. 15(c). The amended complaint comprises the same claims from the original complaint

22   plus two new ones: violation of California UCL (Count VIII) and violation of Delaware's Deceptive Trade

23   Practices Act (Count IX). Ex. 6. But the two new claims arise from the same "conduct, transaction, or

24   occurrence" alleged in the original complaint. Fed. R. Civ. P. 15(c)(1)(B). Specifically, they are based on

25   the same facts as those that underlie the false-advertising claim in the original complaint—that Motive

26   made false and misleading statements about some of the same Samsara products now at issue in Motive's

27   complaint. *Compare* Ex. 4 ¶¶ 190–198 (Count IV) *with* Ex. 6 ¶¶ 221–233 (Counts VIII and IX). Because

28   Motive had notice of the conduct underlying the new claims from the original complaint, the amended

1    complaint relates back to the original complaint. *O2COOL, LLC v. Discovery Commc'ns, LLC*, No. 12 C

2    3204, 2013 WL 157703, at *2–*3 (N.D. Ill. Jan. 15, 2013) (concluding that the amended complaint related

3    back to the original complaint because both contained the same factual allegations, and the original

4    complaint properly put plaintiff on notice of the same claims that appeared in the amended complaint).

5                    **2.       The parties are identical.**

6             The parties here and in Samsara's first-filed Delaware Action are identical. In the Delaware Action,

7    Samsara is the plaintiff, while Motive is the defendant. Here, the roles are reversed. *Therapy Stores, Inc.*

8    *v. JGV Apparel Grp., LLC*, No. 4:16-CV-02588-YGR, 2016 WL 4492583, at *4 (N.D. Cal. Aug. 26, 2016)

9    (first-to-file rule applied when the two cases involved the same parties with reverse roles).

10                   **3.       The issues are substantially similar.**

11            The first-to-file rule applies when the issues in the first and second actions are "substantially

12   similar"—identicality is not required. *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289,

13   1298 (N.D. Cal. 2013). There is substantial similarity between actions when, *e.g.*, the overall content of

14   each suit is not capable of independent development and will likely overlap to a substantial degree with

15   the content of the other. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, No. C-

16   11-1892 EMC, 2012 WL 3277222, at *3 (N.D. Cal. Aug. 9, 2012). Further, substantial similarity exists

17   even if the "elements of the claims are distinct" where the "resolution of the claims will turn on similar

18   determinations of fact." *Williamson v. Am. Mastiff Breeders Council*, No. 3:08-CV-336-ECR-VPC, 2009

19   WL 634231, at *3 (D. Nev. Mar. 6, 2009). Substantial similarity also exists with "overlapping claims,

20   products, and class [*i.e.*, time] periods, [and when] a significant portion of discovery in the actions will be

21   duplicative." *Wallerstein*, 967 F. Supp. 2d at 1298. Notably, the first-to-file rule applies where substantial

22   similarity is present, even if it is arguably weak (while here, the similarity is strong and fundamental). *See*

23   *Power Integrations, Inc. v. ON Semiconductor Corp.*, No. 16-cv-06371-BLF, 2017 WL 1065334, at *2

24   (N.D. Cal. Mar. 21, 2017) (applying first-to-file rule despite "weak" similarity of issues).

25            Comparing the counts in Motive's complaint to the claims, facts, and issues in Samsara's first-

26   filed Delaware Action amply demonstrates that they are substantially similar because they involve

27   overlapping claims, facts, products, technology, time periods, and discovery.

28

### a.   First Count: Alleged Infringement of the '580 Patent

Count 1 in Motive's complaint is substantially similar to the first-filed Delaware Action's infringement claims (Counts I–III) because both involve substantially similar technology—in both, the same type of products are accused of infringement. For example, Motive accuses Samsara's AI dash cam of infringement while Samsara accuses Motive's. These dash cams are digital cameras and related software that are used or accessed onboard fleet vehicles and implement artificial intelligence capable of detecting driving events. Indeed, Motive itself alleges similarity between its products accused in the Delaware Action and the Samsara dash cam accused here. Dkt. 1 ¶ 12 (alleging that Samsara's dash cam uses the same method as Motive's), ¶ 20 (alleging that in the relevant technology, "products often have the same basic functionality"). While the details of how each product works will be the subject of the parties' dispute, the similarity of the technology is likely to raise "overlapping issues relating to prior art, the understanding of a person of ordinary skill in the art, and the relevant conduct of the parties." *See Power Integrations*, 2017 WL 1065334, at *2 (finding first-to-file rule conditions were met when all patents across the two suits related to or involved similar technology and overlapping issues).

### b.   Second Count: Alleged Violation of the Lanham Act

Motive's Second Count is substantially similar to Samsara's false-advertising claim (Count IV) in the Delaware Action. Although the two claims relate to different advertisements (in one case by Motive and in another by Samsara), both advertisements involve comparisons of Samsara and Motive products and technology (including AI dash cams) and analogous legal issues. *See Red v. Unilever U.S., Inc.*, No. 09-07855 MMM (AGRX), 2010 WL 11515197, at *5 (C.D. Cal. Jan. 25, 2010) (finding substantial similarity because the "underlying allegations of the Lanham Act claim" were "identical to those asserted in the state-law false advertising claims," and because the two cases substantially overlapped, and had similar timeframes); *see also Power Integrations*, 2017 WL 1065334, at *2 (finding similarity of the issues when all the patents related to or involved similar technology that could raise "overlapping issues relat[ed] to prior art, the understanding of a person of ordinary skill in the art, and relevant conduct of the parties").

Specifically*,* Motive's Lanham Act claim alleges that Samsara made false statements about the capabilities of its own and Motive's products when it compared Samsara's product features to Motive's. *See* Dkt. 1 ¶¶ 89, 155–56. For example, Motive takes issue with Samsara's statements regarding the AI

capabilities of Samsara's dash cam as compared to Motive's. *Id.* ¶ 156. In particular, Motive's allegations complain about a Samsara statement explaining that Samsara's products provided both accelerometer-detected "harsh events & crashes" and had AI-detected rolling stops and other safety events, but that Motive's dash cams lacked AI detection:



*Id.* ¶ 89 (annotated); *see also id.* ¶ 92.

Indeed, Motive in its Complaint counters Samsara's statements by claiming that Motive's dash cams can use AI to detect "close following, cell-phone use, [and] seat-belt use (or lack thereof)." *Id.* ¶ 92.

Similarly, in the Delaware Action, Samsara alleges that Motive made false statements about the capabilities of Motive's and Samsara's products (specifically the AI dash cam products) when the products were compared in a flawed study commissioned by Motive. Ex. 6 ¶ 73, 77–79, 192. Indeed, at least one of the studies published statements regarding, among other things, the performance of Samsara products' detection of "close following," texting, and seat belt wearing events, the same features Motive identifies in its copycat complaint. *Id.* ¶ 78; Dkt. 1 ¶¶ 13, 17, 41, 92, 114. Thus, both actions will require discovery into, and factual determinations related to, the competing capabilities of both parties' AI dash cams.

In sum, Motive's Lanham Act claim and Samsara's false-advertising claim relate to the same technology and products (dash cams and their AI capabilities). They also implicate similar legal issues— the standard for ascertaining whether a statement is false and/or misleading, and the extent to which customers rely on such statements in making their purchasing decisions.

1           c.     <u>Third and Fourth Counts: Alleged Fraud and Violation of the Unfair</u>

2               <u>Competition Law</u>

3      Motive's Third and Fourth counts mirror Samsara's Count 5 (fraud), Count 6 (computer fraud),

4 Count 7 (unfair competition) and Count 9 (unfair competition). The claims are all based on allegations

5 that the other party fraudulently accessed its platform for improper competitive use, with overlapping

6 issues and timeframes.[3] *See Moyer v. Cellura*, No. 23-CV-03004-SVK, 2023 WL 6959277 (N.D. Cal.

7 Oct. 19, 2023) (finding ultimate similarity between the actions when the complaint and amended

8 complaint all arose "from the parties' interactions with each other in the same time frame and concern[ed]

9 their respective rights to operate similar types of businesses").

10      In the first-filed Delaware Action, Samsara alleges Motive's personnel fraudulently accessed the

11 Samsara Dashboard, an online technology portal where, among other things, a customer can see data and

12 safety events for vehicles and other physical assets across their organization all in one place. *See, e.g.*, Ex.

13 6 ¶ 25. The Samsara Dashboard is valuable to customers because, among other things, it brings together

14 information from across a customer's physical operations in one integrated platform, providing

15 operational visibility and actionable data insights to enhance the safety, efficiency, and sustainability of

16 vehicle fleets. *Id.* ¶ 26. The platform allows customers to access data about fleet locations, routing, driver

17 logs, fuel purchases, maintenance, and benchmarking, as well as advanced tools (including AI) that

18 analyze and report safety events, driver efficiency, and other metrics that customers leverage to improve

19 safety and their bottom line. *Id.* ¶¶ 25, 32–33. Samsara alleges Motive orchestrated a scheme for numerous

20 Motive personnel to fraudulently access the Samsara Dashboard by posing as customers (*e.g.*, *id.* ¶¶ 47–

21 59), to improperly gain access to this data and these tools, and to copy Samsara's technology and its

22 marketing strategy. *Id.* ¶¶ 60–62. Indeed, Samsara's complaint includes excerpts of footage taken from

23 the Samsara Dashboard, showing Motive's CEO and Chief Product Officer studying Samsara's products

24 and demonstrating Motive's top-down anti-competitive conduct (*id.* ¶ 3):

25

26

27           —————————

[3] Motive's Fourth Count is also based on allegedly false and misleading statements by Samsara and thus
28 overlaps with Samsara's false-advertising claims for the reasons explained in § V.A.3.b, *supra*.



Footage of Motive's CEO, Shoaib Makani (left), and Chief Product Officer, Jairam Ranganathan (right), studying Samsara's products.

Motive's claims against Samsara mirror those in Samsara's first-filed case (although Motive's complaint lacks such supporting evidence for its claims, which are deficient in many respects). Specifically, Motive alleges among other things that Samsara personnel fraudulently accessed Motive's Fleet Dashboard software (a product that Samsara alleges mimics Samsara's own Dashboard).[4] *Id.* ¶¶ 43–52, 178. Although Motive will not be able to show any such fraudulent or anti-competitive access by Samsara, its allegations nonetheless assert that Samsara engaged in conduct analogous to what Samsara alleges in the first-filed Delaware Action that Motive engaged in. Thus, both sets of allegations raise similar questions regarding what conduct qualifies as legitimate competitive intelligence versus unlawful activity. *See, e.g.*, Ex. 6 ¶ 3.

Each party's access allegations also overlap in time. Samsara asserts that Motive engaged in this activity since at least 2017 (Ex. 6 ¶ 47), while Motive alleges that Samsara's conduct began in at least 2016. Dkt. 1 ¶ 9. Further, investigation of the claims in Samsara's first-filed Delaware Action and Motive's mirror-image claims here will include discovery into Samsara's and Motive's product offerings, including

---

[4]  To the extent Motive's Fourth Count is based on other alleged conduct—allegedly false and misleading advertising, defamation, and interference with prospective economic relations—it overlaps with other Samsara claims as explained elsewhere in this brief.

both companies' Dashboards. And, Samsara alleges in the Delaware Action that these products are similar because Motive copied and used Samsara's proprietary platform and products to develop Motive's products and platform. *See, e.g.*, Ex. 6 ¶ 45. Thus, the Delaware Action and the present action will consider overlapping issues, including whether Motive independently developed its own platform, or instead copied Samsara's, and whether Samsara (as Motive alleges) copied from Motive.

Because these questions could result in directly contradictory findings, they should be answered in the same forum—and the appropriate forum is Delaware. The same court addressing the same issues, substantively and procedurally, would advance judicial economy and remove the risk of inconsistent rulings and factual findings.

> d.   Fifth and Sixth Counts: Alleged Misappropriation of Trade Secrets

Motive alleges that Samsara hired two former Motive employees and thereby misappropriated trade secrets by allegedly obtaining and then using confidential information (including customer lists and information about a chipset used in dash cams). *See* Dkt. 1 at Counts Five and Six. Although Samsara's complaint does not presently assert a trade secret claim against Motive, it does raise facts and issues regarding Motive's campaign to solicit Samsara employees to join Motive's workforce with the goal of acquiring Samsara's confidential and proprietary information relating to current and future product plans, sales, and prospective and existing customers, all of which relate to Motive's unfair competition and efforts to copy Samsara's platform. *See, e.g.*, Ex. 6 ¶¶ 4, 92–96. Further, the technology implicated by Motive's claims overlaps with the AI dash cam technology at issue in the Delaware Action. Specifically, the Delaware Action will involve the technology used in Motive's dash cams (since they are the accused product), including the chip information that Motive alleges Samsara misappropriated. *Id*. ¶¶ 127–189, Counts I–III; Dkt. 1 ¶¶ 53–60, 78.

> e.   Seventh and Eighth Counts: Alleged Defamation and Intentional Interference with Prospective Economic Relations

Motive's defamation and intentional interference ("IIPER") claims completely overlap with Samsara's claims in the Delaware Action, as they are based on ***the same*** conduct by Motive and its personnel that is the subject of Samsara's claims. Motive's defamation claim alleges Samsara made false statements on its website about why it sued Motive in the first-filed Delaware Action. Dkt. 1 ¶¶ 207–220

1   (Count Seven). Motive's IIPER claim is based on the same underlying conduct. *See id*. ¶¶ 221–231 (Count

2   Eight). Proof that statements on Samsara's website, which repeat and summarize the allegations in

3   Samsara's Delaware complaint, are ***true*** is a complete and absolute defense to Motive's defamation claim

4   and thus also its IIPER claim. *Lyons v. Hall Ambulance Serv. Inc.*, 172 F.3d 57 (9th Cir. 1999) (affirming

5   summary judgment because substantial truth was a proper defense to the defamation claim). And, factual

6   determinations regarding the truth of those statements—*i.e.*, that Motive engaged in the conduct that

7   Samsara alleges—are essential to resolving multiple of Samsara's non-patent claims in the Delaware

8   Action. *See Bashiri v. Sadler*, No. CV 07-2268-PHX-JAT, 2008 WL 2561910, at *2 (D. Ariz. Jun. 25,

9   2008) (finding substantial similarity between different legal issues because the "discovery and evidence

10  necessary to litigate each [issue] is substantially similar"); *Williamson*, 2009 WL 634231 at *3 (finding

11  substantial similarity between two claims, despite differences in their elements, since their resolution

12  would turn on similar factual findings); *Comp360 LLC v. KT Enterprises, LLC*, No. 8:22-CV-0447-KKM-

13  AAS, 2022 WL 2441937, at *2 (M.D. Fla. Jun. 23, 2022) (finding substantial similarity because both

14  actions involved closely related questions and subject matter dealing with communications that allegedly

15  harmed the competitors' businesses.)

## B.    This Court Should Defer to the District of Delaware, as the First-Filed Forum, to Decide Whether to Deviate From the First-to-File Rule

18          While a court may decline to apply the first-to-file rule if, for instance, the interests of equity or

19  the balance of convenience factors favor the later-filed action, no such exception applies here. *Wallerstein*,

20  967 F. Supp. 2d at 1293. Moreover, Ninth Circuit precedent directs that it is the first-filed forum that

21  should decide whether to deviate from the first-to-file rule. *Id.* ("The Ninth Circuit has cautioned that

22  relaxing the first-to-file rule on the basis of convenience is <u>a determination best left to the court in the</u>

23  <u>first-filed action</u>") (emphasis added) (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994));

24  *Martin*, 2015 WL 2124379, at *3 (same); *Juniper Networks, Inc. v. Mosaid Techs. Inc.*, No. C 11-6264

25  PJH, 2012 WL 1029572, at *2 (N.D. Cal. Mar. 26, 2012) (citing *Alltrade*, 946 F.2d at 628) (determining

26  that the court in the first-filed action "should normally weigh the balance of convenience and any other

27  factors that might create an exception to the first-to-file rule").

28

1    Thus, to the extent Motive opposes applying the first-to-file rule based on equity considerations or

2    the balance of convenience under 28 U.S.C. § 1404,[5] the Court should nonetheless transfer this case to

3    permit the District of Delaware to balance these factors against the benefit of applying the first-to-file rule.

4    Indeed, the District of Delaware is expected to consider the convenience factors in resolving Motive's

5    renewed motion to transfer the Delaware Action to this Court. In its motion, Motive argues in part that the

6    balance of the convenience factors favors transfer to this Court, and that the Delaware Action is not first

7    filed because the issues in the two cases are different. *See* Ex. 8 at 13–14, 15–16. Transferring this case

8    would allow the first-filed forum court to consider the questions at issue in this motion, serving the purpose

9    of the first-to-file rule, *i.e.*, promoting judicial efficiency and avoiding the possibility of conflicting

10   rulings.

11   In the alternative, the Court should stay Motive's second-filed action, and defer its decision on

12   transfer, until after the District of Delaware decides how it will proceed with Samsara's first-filed action.

13   *Alibaba.com*, 2004 WL 443712, at *3 (staying second-filed action until the first-filed court resolved the

14   motion to dismiss or transfer). Motive argues in its motion to transfer in the Delaware Action that the "first

15   filed" rule does not apply in part because this Court need not transfer this case to a forum (*i.e.*, District of

16   Delaware) where it would be subject to stay (due to Motive's pending requests to stay that case). *See* Ex.

17   8 at 13–14. But again, the Delaware Court should decide that issue in the first instance, and Samsara is

18   opposing Motive's bids to stay the Delaware action in its entirety.[6] Therefore, this Court may stay the

19   instant action at least until the District of Delaware resolves Motive's pending motions. If Samsara's first-

20   filed action remains in Delaware, as it should, Motive's second-filed action here should then be transferred

21   to Delaware when the stay is lifted.

22

23

24   _____

[5] Samsara reserves the right to respond to any potential exceptions that Motive may raise in its opposition.

25

26   [6] Motive is moving to stay the Delaware Action pursuant to 28 U.S.C. § 1659 in light of the ITC
     investigation. *See* Ex. 9. Samsara does not contest that Samsara's pending patent claims in the District of
27   Delaware would be subject to a stay due to the ongoing ITC investigation. *See* 28 U.S.C. § 1659(a). But
     after those ITC proceedings conclude (the final ITC hearing is scheduled for November 2024), litigation
28   concerning those Samsara patents would still proceed in the District of Delaware. Samsara's remaining
     claims in the Delaware Action are not properly subject to a stay.

## VI.     CONCLUSION

For the reasons set forth herein, Samsara respectfully requests that the Court transfer this action to the U.S. District Court for the District of Delaware, where a first-filed case involving identical parties and substantially similar and overlapping issues is pending. Alternatively, Samsara requests that the Court stay this case pending a decision from the District of Delaware regarding how and where Samsara's first-filed action should proceed.

DATED:  April 17, 2024

Respectfully submitted,

*/s/ Ellisen S. Turner*

Ellisen S. Turner, P.C. (SBN 224842)
Ali-Reza Boloori (SBN 271489)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:    (310) 552 4200
Facsimile:     (310) 552 5900
ellisen.turner@kirkland.com
ali-reza.boloori@kirkland.com

Joseph A. Loy, P.C. (*Pro Hac Vice*)
Joshua L. Simmons, P.C. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue,
New York, NY 10022
Telephone:    (212) 446-4980
Facsimile:     (212) 446-4900
jloy@kirkland.com
joshua.simmons@kirkland.com

Jeanne M. Heffernan, P.C. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:    (512) 678-9100
Facsimile:     (512) 678 9101
jheffernan@kirkland.com

Karthik Ravishankar (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone:    (202) 389-5000
Facsimile:     (202) 389-5200
karthik.ravishankar@kirkland.com

*Attorneys for Defendant*
Samsara Inc.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On April 17, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and Civil L.R. 5-1 have been so served.

*/s/ Ellisen S. Turner*
Ellisen S. Turner, P.C.