Ellisen S. Turner, P.C. (SBN 224842)
Ali-Reza Boloori (SBN 271489)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:    (310) 552-4200
Facsimile:    (310) 552-5900
ellisen.turner@kirkland.com
ali-reza.boloori@kirkland.com

Joseph A. Loy, P.C. (*pro hac vice*)
Joshua L. Simmons, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue,
New York, NY 10022
Telephone:    (212) 446-4980
Facsimile:    (212) 446-4900
jloy@kirkland.com
joshua.simmons@kirkland.com

Jeanne M. Heffernan, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone:    (512) 678-9100
Facsimile:    (512) 678-9101
jheffernan@kirkland.com

Karthik Ravishankar (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone:    (202) 389-5000
Facsimile:    (202) 389-5200
karthik.ravishankar@kirkland.com

Attorneys for Defendant
SAMSARA INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTIVE TECHNOLOGIES, INC., | CASE NO. 24-CV-00902-JD |
| Plaintiff, | |
| v. | **SAMSARA INC.'S ANSWER TO MOTIVE TECHNOLOGIES, INC.'S AMENDED COMPLAINT AND COUNTERCLAIMS FOR PATENT INFRINGEMENT** |
| SAMSARA, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

Subject to and without waiving any arguments in its pending motion to dismiss (Dkt. 49), Defendant Samsara Inc. ("Samsara"), by and through its undersigned counsel, hereby submits its Answer, Affirmative Defenses, and Counterclaims in response to the Amended Complaint (Dkt. 40, the "FAC") filed by Plaintiff Motive Technologies, Inc. ("Motive") on May 6, 2024, as follows:

**PRELIMINARY STATEMENT**

Since its founding in 2015, Samsara has been the pioneering leader in the field of data-driven operations powered by Internet-of-Things ("IoT") device connectivity. Its mission is to increase the safety, efficiency, and sustainability of physical operations that power the global economy. Samsara discovered and solved substantial problems associated with the inability to obtain real-time updates and actionable information effectively and accurately about vehicles while they were in transit. Its innovative fleet management and safety platform includes on-vehicle hardware with AI capability to record physical data, detect driving events, and communicate that information to Samsara's Connected Operations Cloud$^{TM}$, where smart analytics further process vehicle information and provide real-time, actionable analysis and data to drivers and vehicle fleet managers, increasing operational safety, sustainability, and efficiency.

Samsara's rise has been nothing less than meteoric, propelled in no small part by industry leading, best-in-class innovative products. Its groundbreaking research and development, intense focus on customer needs, and hard work have elevated Samsara's success. In 2019, only four years after its founding, Samsara reached unicorn status, surpassing $1 billion in valuation. By late 2022, it surpassed 1,600 employees worldwide and became the largest open ecosystem for physical operations with more than 200 integration partners on the Samsara platform.

Motive Technologies has taken a very different approach to grow its business. For years, Motive has been competing with Samsara through unfair and unlawful practices, including covertly accessing Samsara's platform using false names, fraudulent business entities, and improperly obtained security credentials to disguise itself as a Samsara customer. Motive's competitive mission has been to siphon Samsara's leading innovations and copy them into its own products; grossly misrepresent the capabilities of Samsara's products in Motive's advertisements and in Motive's paid, manipulated benchmarking "studies" that were anything but "independent"; and infringe multiple Samsara patents. When confronted,

rather than end its unlawful activities Motive responded with bad-faith accusations and baseless retaliation.  To put a stop to Motive's misconduct, after giving Motive clear notice and a substantial opportunity to change its behavior, Samsara was forced to file a lawsuit in United States District Court and seek a formal investigation into Motive's unfair acts, which the U.S. International Trade Commission (ITC) has since instituted.

Motive remains unwilling to admit what it did or provide Samsara with any reasonable remedy despite the undeniable evidence proving Motive's unlawful behavior.  That includes the countless instances when multiple Motive executives and product development personnel accessed and used Samsara's products and systems, and were caught on video engaging in that misconduct—actions that Motive has never denied undertaking.  Instead, after Samsara filed its litigation against Motive, Motive launched the present retaliatory lawsuit to change the narrative, distract and mislead the public from the undisputed evidence regarding Motive's undeniable misconduct and culture of copying, and falsely portray Samsara in a negative light.  As Samsara has demonstrated in its pending motion to dismiss, and as it will further prove throughout discovery, Motive's claims lack merit.  Moreover, because Motive's infringement of Samsara's intellectual property has only escalated, Samsara asserts three counterclaims for Motive's patent infringement.

## NATURE OF THE ACTION

1.      Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the FAC and thus denies the allegations on that basis.

2.      Samsara states that the allegations contained in Paragraph 2 of the FAC are conclusions of law or characterization as to which no response is necessary.  To the extent any response is required, Samsara admits that Motive brought the present lawsuit.

3.      Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the FAC and thus denies the allegations on that basis.

4.      Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the FAC and thus denies the allegations on that basis.

5.      Samsara denies the allegations contained in Paragraph 5 of the FAC, except it admits that the Samsara Vehicle Gateway was released in 2016.

6.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the FAC and thus denies the allegations on that basis.

7.    Samsara denies the allegations contained in Paragraph 7 of the FAC, except it admits that Motive commissioned at least two benchmarking studies on Samsara's products without Samsara's consent or authorization.

8.    Samsara denies the allegations contained in Paragraph 8 of the FAC.

9.    Samsara denies the allegations contained in Paragraph 9 of the FAC, including because Samsara has never condoned its employees accessing Motive's platform, and nearly everyone identified as having accessed Motive's platform no longer works at Samsara.  Samsara also states that the allegations concerning "fraud," "unfair competition," and "federal fraud and identity theft statutes" are conclusions of law or characterization as to which no response is required.

10.    Samsara denies the allegations contained in Paragraph 10 of the FAC, except it admits that Samsara's Code of Conduct states that Samsara "does not seek competitive advantages through illegal or unethical business practices."

11.    Samsara states that the allegations contained in Paragraph 11 of the FAC are conclusions of law or characterization as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 11 of the FAC, except it admits that Samsara is a public company and states that its public SEC filings speak for themselves.

12.    Samsara states that the allegations contained in Paragraph 12 of the FAC are conclusions of law or characterization as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 12 of the FAC, except it admits that it has offered for sale and has sold the CM31 and CM32 dash cams.

13.    Samsara denies the allegations contained in Paragraph 13 of the FAC, except it admits that Motive paid Strategy Analytics, Inc. ("Strategy Analytics") to benchmark Motive's and Samsara's dash cams in a study that Motive directed and designed to benefit Motive and to Samsara's detriment, and that Motive published Strategy Analytics's report in April 2022.

14.    Samsara denies the allegations contained in Paragraph 14 of the FAC, except it admits that Samsara never consented to or authorized Motive's commission of the Strategy Analytics Report.

15. Samsara denies the allegations contained in Paragraph 15 of the FAC, except it admits that the Strategy Analytics test results were designed to favor Motive over Samsara and that Samsara demanded that Motive cease distributing the false conclusions of the Strategy Analytics study, including through Motive's website.

16. Samsara denies the allegations contained in Paragraph 16 of the FAC, except it admits that Samsara never consented to or authorized Motive's commissioning of any benchmarking studies on Samsara's products, including any joint commission by the parties.

17. Samsara denies the allegations contained in Paragraph 17 of the FAC, except it admits that Motive paid the Virginia Tech Transportation Institute ("VTTI") to benchmark Motive's and Samsara's dash cams in 2023 based on a study design that Motive manipulated to benefit Motive, to Samsara's detriment.

18. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the FAC and thus denies the allegations on that basis.

19. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the FAC and thus denies the allegations on that basis.

20. Samsara denies the allegations contained in Paragraph 20 of the FAC, except it admits that Samsara filed a complaint against Motive in the District Court of Delaware to put a stop to Motive's fraudulent access of Samsara's platform, false advertising, and unfair competition, and that Samsara also filed a complaint against Motive in the U.S. International Trade Commission to put a stop to Motive's patent infringement.

21. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the FAC and thus denies the allegations on that basis, except it admits that Motive filed the present lawsuit.

## PARTIES

22. Samsara admits that Motive is a Delaware corporation, with its principal place of business at 55 Hawthorne Street, Suite 400, San Francisco, CA 94105.

23. Samsara admits that Samsara is a Delaware corporation, with its principal place of business at 1 De Haro Street, San Francisco, CA 94107.

**JURISDICTION AND VENUE**

24.    Samsara states that the allegations contained in Paragraph 24 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara admits that Motive asserts claims under 35 U.S.C. § 271, 15 U.S.C. § 1125(a), and California state law, and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1131, 1338, and 1367.

25.    Samsara states that the allegations contained in Paragraph 25 of the FAC are conclusions of law to which no response is necessary.  To the extent any response is required, Samsara admits that this Court has personal jurisdiction over the parties to this litigation.

26.    Samsara states that the allegations contained in Paragraph 26 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara admits that venue is proper in this District for only the purposes of the present case.

**DIVISIONAL ASSIGNMENT**

27.    Samsara states that the allegations contained in Paragraph 27 of the FAC are conclusions of law as to which no response is necessary.

28.    Samsara states the allegations contained in Paragraph 28 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations in Paragraph 28 of the FAC.

**FACTS**

29.    Samsara denies the allegations in Paragraph 29 of the FAC.

30.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the FAC and thus denies the allegations on that basis, except it admits that Motive was founded as "KeepTruckin."

31.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the FAC and thus denies the allegations on that basis.

32.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the FAC and thus denies the allegations on that basis.

33.    Samsara denies the allegations contained in Paragraph 33 of the FAC, except it admits that Samsara was incorporated in 2015.

34.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning Motive's Driver App contained in Paragraph 34 of the FAC and thus denies the allegations on that basis.  Samsara further denies the remaining allegations in Paragraph 34 of the FAC, except it admits that Samsara's Driver App was released in July 2016.

35.     Samsara denies the allegations contained in Paragraph 35 of the FAC.

36.     Samsara denies the allegations contained in Paragraph 36 of the FAC.

37.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the FAC and thus denies the allegations on that basis.

38.     Samsara denies the allegations contained in Paragraph 38 of the FAC, except it admits that Samsara began offering in 2019 AI Dash Cams that can, among other things, detect tailgating, cell phone use, and driver distraction, and that Samsara has used the phrase "prevent accidents before they happen" in its advertisements.

39.     Samsara denies the allegations contained in Paragraph 39 of the FAC, except it admits that Samsara continues to offer AI Dash Cams as of the date of this Answer.

40.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the FAC and thus denies the allegations on that basis.

41.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the FAC and thus denies the allegations on that basis.

42.     Samsara states that the allegations contained in Paragraph 42 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 42 of the FAC.

43.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the FAC and thus denies the allegations on that basis.

44.     Samsara denies the allegations contained in Paragraph 44 of the FAC, except it admits that to the extent Mr. Billy Waldman or Ms. Lauren Roberts signed up for access to a Motive website, or to receive marketing communications from Motive, or anything else that Motive contends constitute an "access" of Motive's platform, at least some of such activities occurred before their employment with Samsara, and Samsara did not condone any such "access."

45. Samsara denies the allegations contained in Paragraph 45 of the FAC, except it admits that to the extent that any Samsara employee signed up for access to a Motive website, or to receive marketing communications from Motive, or anything else that Motive contends constitute an "access" of Motive's platform, Samsara did not condone any such "access."

46. Samsara denies the allegations contained in Paragraph 46 of the FAC, except it admits that Mr. Kiren Sekar is the Chief Product Officer and Chief Strategy Officer of Samsara, and that Mr. Sekar was a Samsara employee at the company's founding. Samsara further states that its website speaks for itself.

47. Samsara denies the allegations contained in Paragraph 47 of the FAC, except it admits that to the extent that Mr. Sekar created an account in relation to Motive or its website, or to receive marketing communications from Motive, Mr. Sekar did not review Motive's platform or gather any information that he or Samsara used for Samsara product development or business strategy.

48. Samsara denies the allegations contained in Paragraph 48 of the FAC, except it admits that Mr. Sean McGee is the Vice President of Product, Platform & Infrastructure at Samsara, and that Mr. McGee leads Samsara's product development and strategy, including as those relate to Samsara's platform. Samsara further admits that Mr. Michael Ross stopped working at Samsara in October 2020, and that to the extent Mr. McGee and Mr. Ross signed up for access to a Motive website, or to receive marketing communications from Motive, or anything else that Motive contends constitute an "access" of Motive's platform, Samsara did not condone any such access.

49. Samsara denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 49 of the FAC to the extent that the named individuals are no longer employed at Samsara and thus denies the allegations on that basis.

50. Samsara denies the allegations contained in Paragraph 50 of the FAC, except it admits that competitors may, in certain circumstances, use one another's products, within the scope of the relevant terms of service and applicable law, and that Samsara may commission third-party studies on such products, including its own, within this scope. Samsara further admits that Samsara never consented to Motive's commissioning of benchmarking studies on Samsara's products, including a joint commission by the parties. Samsara denies the remaining allegations in Paragraph 50 of the FAC.

51.     Samsara denies the allegations contained in Paragraph 51 of the FAC.

52.     Samsara states that the allegations contained in Paragraph 52 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 52 of the FAC, except it admits that Motive sent a letter to Samsara on July 29, 2022, and that the letter speaks for itself.

53.     Samsara denies the allegations contained in Paragraph 53 of the FAC, except it admits that, on its face, U.S. Patent No. 11,875,580 ("the '580 patent") indicates that it issued on January 16, 2024 and is entitled "Camera Initialization for Lane Detection and Distance Estimation Using Single-View Geometry."  Samsara also admits that FAC Exhibit A purports to be a copy of the '580 patent.

54.     Samsara denies the allegations contained in Paragraph 54 of the FAC.

55.     Samsara denies the allegations contained in Paragraph 55 of the FAC.

56.     Samsara denies Motive's characterization of claim 1 as alleged in Paragraph 56 of the FAC. For example, claim 1 recites a method and not a system.  As another example, the claim requires "identifying one or more lines in the video using a predictive model, the one or more lines including a horizon line," and therefore "horizon line" is a required, not optional, element of the claim.

57.     Samsara denies the allegations contained in Paragraph 57 of the FAC.

58.     Samsara denies the allegations contained in Paragraph 58 of the FAC, except it admits that Samsara currently supports the CM31 and CM32 Dash Cams.

59.     Samsara states that the allegations contained in Paragraph 59 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 59 of the FAC, except it admits that Samsara's Connected Operations$^{TM}$ Cloud platform ("Samsara Cloud") receives data collected from dash cams (including the CM31 and CM32 Dash Cams).

60.     Samsara states that the allegations contained in Paragraph 60 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 60 of the FAC.

61.     Samsara states that the allegations contained in Paragraph 61 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 61 of the FAC.

62.     Samsara denies the allegations contained in Paragraph 62 of the FAC.

63.     Samsara states that the allegations contained in Paragraph 63 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 63 of the FAC.

64.     Samsara states that the allegations contained in Paragraph 64 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 64 of the FAC and thus denies the allegations on that basis.

65.     Samsara states that the allegations contained in Paragraph 65 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 65 of the FAC, except it admits that one or more of its current or past employees may have formerly been employed by Motive.

66.     Samsara states that the allegations contained in Paragraph 66 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 66 of the FAC.

67.     Samsara states that the allegations contained in Paragraph 67 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 67 of the FAC.

68.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 of the FAC, including the identity of Former Employee 1, and thus denies the allegations on that basis.

69.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69 of the FAC and therefore denies the allegations on that basis.

70.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70 of the FAC and therefore denies the allegations on that basis.

71.     Samsara denies the allegations contained in Paragraph 71 of the FAC.

72.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72 of the FAC and therefore denies the allegations on that basis.

73.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 of the FAC and therefore denies the allegations on that basis.

74.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the FAC and therefore denies the allegations on that basis.

75.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the FAC and therefore denies the allegations on that basis.

76.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the FAC and therefore denies the allegations on that basis.

77.     Samsara denies the allegations contained in Paragraph 77 of the FAC.

78.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78 of the FAC and thus denies the allegations on that basis, except that it admits that Samsara's dash cams have used the Qualcomm chip platform. Samsara further denies that Motive currently "remains the only major fleet management dashcam provider using an Ambarella chip," including because Samsara's CM33 and CM34 Dash Cams use the publicly available Ambarella CV22 System-on-Chip ("SoC").

79.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 of the FAC and thus denies the allegations on that basis, except it admits that it was publicly known in 2021 that Motive was using a publicly available Ambarella chip for its AI Dashcam.

80.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 of the FAC and thus denies the allegations on that basis, except it admits that Samsara hired Mr. Olivier Boireau in October 2019.

81.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the FAC and therefore denies them on that basis.

82.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 82 of the FAC and therefore denies them on that basis.

83.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the FAC and therefore denies them on that basis.

84.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84 of the FAC and thus denies the allegations on that basis, except it admits that Samsara hired Ms. Pearl Li in September 2021.

85.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 of the FAC and therefore denies them on that basis.

86.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 of the FAC and therefore denies them on that basis.

87.    Samsara denies the allegations contained in Paragraph 87 of the FAC.

88.    Samsara denies the allegations contained in Paragraph 88 of the FAC, except admits that its CM33 and CM34 Dash Cams use the publicly available Ambarella CV22 SoC.

89.    Samsara denies the allegations contained in Paragraph 89 of the FAC.

90.    Samsara denies the allegations contained in Paragraph 90 of the FAC.

91.    Samsara denies the allegations contained in Paragraph 91 of the FAC.

92.    Samsara denies the allegations contained in Paragraph 92 of the FAC.

93.    Samsara denies the allegations contained in Paragraph 93 of the FAC.

94.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94 of the FAC and thus denies the allegations on that basis.

95.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95 of the FAC and thus denies the allegations on that basis.

96.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96 of the FAC and thus denies the allegations on that basis.

97.    Samsara states that the allegations contained in Paragraph 97 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 97 of the FAC.

98.     Samsara states that the allegations contained in Paragraph 98 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 98 of the FAC, except it admits that Motive sent a letter to Samsara on July 29, 2022, that Samsara sent a letter to Motive on September 15, 2022, and that there was subsequent written correspondence between the parties, and further states that the letters speak for themselves.

99.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 99 of the FAC and thus denies the allegations on that basis.

100.     Samsara denies the allegations contained in Paragraph 100 of the FAC and further states that the alleged advertisements speak for themselves.

101.     Samsara denies the allegations contained in Paragraph 101 of the FAC and further states that the alleged advertisements speak for themselves.

102.     Samsara denies the allegations contained in Paragraph 102 of the FAC and further states that the alleged advertisements speak for themselves.

103.     Samsara denies the allegations contained in Paragraph 103 of the FAC, and further states that the alleged advertisements speak for themselves.

104.     Samsara denies the allegations contained in Paragraph 104 of the FAC and further states that the alleged advertisements speak for themselves.

105.     Samsara admits that in December 2021 Motive sent a letter to Samsara stating that Motive believed Samsara had made false statements about Motive's products.  Samsara denies the remaining allegations contained in Paragraph 105 of the FAC.

106.     Samsara denies the allegations contained in Paragraph 106 of the FAC, except it admits that Samsara sent potential customers video footage of Samsara's dash cam in or around April 2020.

107.     Samsara denies the allegations contained in Paragraph 107 of the FAC, except it admits that Samsara has posted videos online about Samsara's products, including on Samsara's website and on YouTube.

108.     Samsara states that the allegations contained in Paragraph 108 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the

allegations contained in Paragraph 108 of the FAC, except it admits that Samsara posted a video online in February 2019 and further states that the video speaks for itself.

109.    Samsara denies the allegations contained in Paragraph 109 of the FAC.

110.    Samsara states that the allegations contained in Paragraph 110 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 110 of the FAC.

111.    Samsara denies the allegations contained in Paragraph 111 of the FAC, except it admits that in 2021, Motive commissioned Strategy Analytics, now known as TechInsights, to compare the dashcams sold by Motive, Samsara, and Lytx in a study that Motive directed.

112.    Samsara denies the allegations contained in Paragraph 112 of the FAC, except it admits that companies in the fleet management industry may commission third-party studies within the scope of the relevant terms of service and applicable law, and that truthful and objective studies that have not been manipulated by Motive to falsely portray the features, functionality, or performance of the products may aid current and prospective customers.

113.    Samsara denies the allegations contained in Paragraph 113 of the FAC and further states that the Strategy Analytics report speaks for itself.

114.    Samsara denies the allegations contained in Paragraph 114 of the FAC and further states that the Strategy Analytics report speaks for itself.

115.    Samsara denies the allegations contained in Paragraph 115 of the FAC and further states that the Strategy Analytics report speaks for itself.

116.    Samsara denies the allegations contained in Paragraph 116 of the FAC and further states that the Strategy Analytics report speaks for itself.

117.    Samsara denies the allegations contained in Paragraph 117 of the FAC and further states that the Strategy Analytics report speaks for itself.

118.    Samsara denies the allegations contained in Paragraph 118 of the FAC and further states that the Strategy Analytics report speaks for itself.

119.    Samsara denies the allegations contained in Paragraph 119 of the FAC, except it admits that Motive posted the Strategy Analytics report on Motive's website in April 2022.

120.    Samsara denies the allegations contained in Paragraph 120 of the FAC, except it admits that Samsara has sued Motive alleging, among other things, false advertising claims based on Motive's commissioning and advertising of the Strategy Analytics report, and that Samsara never consented to Motive's commissioning of benchmarking studies on Samsara's products, including a joint commission by the parties.

121.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 121 of the FAC and thus denies those allegations on that basis, except it admits that Motive paid VTTI to perform a study comparing the Motive DC-54, Samsara HW-CM32, and Lytx DriveCam SF400 dashcams based on a study design that Motive manipulated.

122.    Samsara denies the allegations contained in Paragraph 122 of the FAC.

123.    Samsara denies the allegations contained in Paragraph 123 of the FAC and further states that the VTTI study speaks for itself.

124.    Samsara denies the allegations contained in Paragraph 124 of the FAC and further states that the VTTI study speaks for itself.

125.    Samsara denies the allegations contained in Paragraph 125 of the FAC and further states that the VTTI study speaks for itself.

126.    Samsara denies the allegations contained in Paragraph 126 of the FAC and further states that the VTTI study speaks for itself.

127.    Samsara denies the allegations contained in Paragraph 127 of the FAC, except it admits that Samsara has brought suit against Motive alleging, among other things, false advertising claims based on Motive's commissioning and advertising of the VTTI, and that Samsara never consented to Motive's commissioning of benchmarking studies on Samsara's products, including a joint commission by the parties.

128.    Samsara states that the allegations contained in Paragraph 128 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 128 of the FAC and thus denies the allegations on that basis.

129.    Samsara states that the allegations contained in Paragraph 129 of the FAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 129 of the FAC.

130.    Samsara denies the allegations contained in Paragraph 130 of the FAC, except it admits that it filed a lawsuit against Motive in federal court in Delaware on January 24, 2024, and that Motive denied the allegations therein.

131.    Samsara states that the allegations contained in Paragraph 131 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 131 of the FAC, except it admits that Samsara launched a website (www.innovationprotection.com) which speaks for itself.

132.    Samsara states that the allegations contained in Paragraph 132 are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 132 and further states that the website (www.innovationprotection.com) speaks for itself.

133.    Samsara states that the allegations contained in Paragraph 133 are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 133 and further states that the website (www.innovationprotection.com) speaks for itself.

134.    Samsara states that the allegations contained in Paragraph 134 are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 134 of the FAC.

135.    Samsara states that the allegations contained in Paragraph 135 are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 135 of the FAC.

136.    Samsara states that the allegations contained in Paragraph 136 are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 136 of the FAC, except it admits that Samsara filed a lawsuit against Motive in federal court in Delaware on January 24, 2024.

137.   Samsara denies the allegations contained in Paragraph 137 of the FAC.

138.   Samsara denies the allegations contained in Paragraph 138 of the FAC.

139.   Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding "Company 1" contained in Paragraph 139 of the FAC and thus denies the allegations on that basis.

140.   Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding "Company 2" contained in Paragraph 140 of the FAC and thus denies the allegations on that basis.

141.   Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding "Company 3" contained in Paragraph 141 of the FAC and thus denies the allegations on that basis.

142.   Samsara states that the allegations contained in Paragraph 142 of the FAC are conclusions of law as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 142 of the FAC.

143.   Samsara denies the allegations in Paragraph 143 of the FAC, including to the extent Samsara denies the allegations in Paragraphs 1–21 and 43–52 of the FAC.

144.   Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 144 of the FAC and thus denies the allegations on that basis.

145.   Samsara denies the allegations contained in Paragraph 145 of the FAC and further states that to the extent that any Samsara employees accessed Motive's platform, Samsara did not condone such access.

146.   Samsara states that the allegations contained in Paragraph 146 of the FAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 146 of the FAC.

147.   Samsara states that the allegations contained in Paragraph 147 of the FAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 147 of the FAC.

148.    Samsara states that the allegations contained in Paragraph 148 of the FAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 148 of the FAC.

149.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 149 of the FAC and thus denies the allegations on that basis.

150.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 150 of the FAC and thus denies the allegations on that basis.

151.    Samsara states that the allegations contained in Paragraph 151 of the FAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 151 of the FAC.

## FIRST CAUSE OF ACTION

### (Alleged Infringement of the '580 patent)

152.    Samsara denies Paragraph 152 of the FAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 53–60 of the FAC.

153.    Samsara admits that Motive Technologies, Inc. is listed as the assignee on the face of the '580 patent. Samsara lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 153 of the FAC and thus denies the allegations on that basis.

154.    Samsara denies the allegations contained in Paragraph 154 of the FAC.

155.    Samsara denies the allegations contained in Paragraph 155 of the FAC, except it admits that claim 1 of the '580 patent recites: "A method comprising: receiving, over a network from a camera device, a video comprising a set of image frames; identifying one or more lines in the video using a predictive model, the one or more lines including a horizon line; computing at least one camera parameter based on the one or more lines; overlaying the one or more lines on the video to generate an overlaid video; transmitting the overlaid video to an annotator device for manual review; receiving a confirmation from the annotator device, the confirmation indicating that the one or more lines are accurate; and transmitting data representing the at least one camera parameter to the camera device."

156.    Samsara denies the allegations contained in Paragraph 156 of the FAC, except it admits that the Samsara Cloud receives image and video data from dashcams.

157.    Samsara denies the allegations contained in Paragraph 157 and FAC Exhibit B.  Initially, claim 1 of the '580 patent recites a method that is performed not by or on a "camera device."  Therefore, the accused Samsara Dash Cams (including the CM 31 and 32 models) do not practice any limitation of claim 1.  Further, the accused Samsara products do not meet the limitations of claim 1 of the '580 patent.  Although Samsara has provided Motive with adequate opportunity to review the source code for the accused Samsara functionality and to confirm Samsara's non-infringement, Motive maintains its patent infringement allegations.

158.    Samsara states that the allegations contained in Paragraph 158 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations in Paragraph 158 of the FAC, including because Samsara does not infringe claim 1 of the '580 patent.

159.    Samsara states that the allegations contained in Paragraph 159 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations in Paragraph 159, including because Samsara does not infringe claim 1 of the '580 patent.

160.    Samsara states that the allegations contained in Paragraph 160 are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 160, including because Samsara does not infringe claim 1 of the '580 patent.  Samsara also denies Paragraph 160 of the FAC to the extent it alleges that Samsara "has sold and offered for sale, and continues to sell and offer for sale," the Samsara Cloud.

161.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 161 of the FAC and thus denies the allegations on that basis, except it admits that it has "not sought or obtained from Motive a license under the '580 Patent."

162.    Samsara denies the allegations contained in Paragraph 162 of the FAC.

163.    Samsara denies the allegations contained in Paragraph 163 of the FAC.

164.    Samsara denies that Motive is entitled to a judgment as set forth in the Prayer for Relief in the FAC.

## SECOND CAUSE OF ACTION

### (Alleged Violation of Lanham Act, 15 U.S.C. § 1125(a))

165.    Samsara denies Paragraph 165 of the FAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 97–109 of the FAC.

166.    Samsara denies the allegations contained in Paragraph 166 of the FAC, except it admits that the parties are direct competitors, including in the vehicle fleet management industry.

167.    Samsara denies the allegations contained in Paragraph 167 of the FAC to the extent Samsara denies the allegations contained in Paragraph 167 of the FAC.

168.    Samsara denies the allegations contained in Paragraph 168 of the FAC.

169.    Samsara denies the allegations contained in Paragraph 169 of the FAC.

170.    Samsara denies the allegations contained in Paragraph 170 of the FAC.

171.    Samsara states that the allegations contained in Paragraph 171 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 171 of the FAC.

172.    Samsara states that the allegations contained in Paragraph 172 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 172 of the FAC and thus denies the allegations on that basis.

173.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 173 of the FAC and thus denies the allegations on that basis.

174.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 174 of the FAC and thus denies the allegations on that basis.

175.    Samsara denies the allegations contained in Paragraph 175 of the FAC.

176.    Samsara states that the allegations contained in Paragraph 176 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 176 of the FAC.

177.    Samsara denies that Motive is entitled to injunctive relief and recovery of any damages, treble damages, attorneys' fees, costs, and Samsara's profits.

## THIRD CAUSE OF ACTION

### (Fraud)

178.    Samsara denies Paragraph 178 of the FAC to the extent Samsara denies the allegations in Paragraphs 1–21 and 43–52 of the FAC.

179.    Samsara denies the allegations contained in Paragraph 179 of the FAC.

180.    Samsara denies the allegations contained in Paragraph 180 of the FAC.

181.    Samsara denies the allegations contained in Paragraph 181 of the FAC.

182.    Samsara denies the allegations contained in Paragraph 182 of the FAC.

183.    Samsara denies the allegations contained in Paragraph 183 of the FAC.

184.    Samsara states that the allegations contained in Paragraph 184 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 184 of the FAC.

185.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 185 of the FAC and thus denies the allegations on that basis.

186.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 186 of the FAC and thus denies the allegations on that basis.

187.    Samsara denies that Motive is entitled to compensatory damages under Cal. Civ. Code § 1709 *et seq.* or under California common law.

188.    Samsara denies that Motive is entitled to recover any damages, including damages for conduct beyond three years before the filing of the present lawsuit.  Samsara lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 188 of the FAC and thus denies those allegations on that basis.

## FOURTH CAUSE OF ACTION

### (Alleged Violation of California Unfair Competition Law, Cal. Civ. Code § 17200)

189.    Samsara denies Paragraph 189 of the FAC to the extent Samsara denies the allegations contained in Paragraphs 1–21, 43–52, 93–109, and 129–151 of the FAC.

190.     Samsara states that the allegations contained in Paragraph 190 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 190 of the FAC.

191.     Samsara denies the allegations contained in Paragraph 191 of the FAC.

192.     Samsara denies the allegations contained in Paragraph 192 of the FAC.

193.     Samsara states that the allegations contained in Paragraph 193 of the FAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 193 of the FAC and thus denies the allegations on that basis.

194.     Samsara denies that Motive is entitled to (1) recover any restitution and (2) any injunction.

195.     Samsara denies that Motive is entitled to recover any damages, including damages for conduct beyond four years before the filing of the present lawsuit.  Samsara lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 195 of the FAC and thus denies those allegations on that basis.

## FIFTH CAUSE OF ACTION

### (Alleged Violation of California's Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 to 3426.11)

196.     Samsara denies Paragraph 196 of the FAC to the extent Samsara denies the allegations in Paragraphs 1–21 and 61–92 of the FAC.

197.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 197 of the FAC and thus denies the allegations on that basis.

198.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 198 of the FAC and thus denies the allegations on that basis.

199.      Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 199 of the FAC and thus denies the allegations on that basis.

200.     Samsara denies the allegation in Paragraph 200 of the FAC.  Samsara denies the allegation that "[i]n violation of Motive's rights, Samsara misappropriated Motive's confidential, proprietary, and trade secret information through the improper and unlawful means alleged [in the FAC]."  As to the

allegations that Samsara "recruit[ed]" "Motive employees" with "detailed knowledge of proprietary information to re-create Motive's dashcam, fleet management solutions, and other products" and "detailed knowledge of proprietary customer information," Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the extent of such knowledge possessed by any Motive employee who worked for Samsara and thus denies the allegation on that basis; Samsara also denies the allegation to the extent it asserts that Samsara hired any individual with an intention to "re-create Motive's dashcam, fleet management solutions, and other products."

201.   Samsara incorporates its response to Paragraph 200 of the FAC.  Samsara denies the allegations in Paragraph 201 of the FAC.  As to the allegation that Samsara "knew or had reason to know that Motive's former employees disclosed the information without Motive's consent and while under a duty to maintain its secrecy," Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegation and thus denies the allegation on that basis.  Samsara further denies that it "induced" any Motive employee to disclose the alleged information described in Paragraph 201 of the FAC.

202.   Samsara denies the allegations contained in Paragraph 202 of the FAC.

203.   Samsara denies the allegations contained in Paragraph 203 of the FAC to the extent it alleges (a) that Samsara had or has possession, custody, or control of Motive trade secrets or confidential information and/or (b) that Samsara "is retaining and using Motive's trade secrets and confidential information."

204.   Samsara denies the allegations contained in Paragraph 204 of the FAC.

205.   Samsara denies that Motive is entitled to a judgment as set forth in the Prayer for Relief in the FAC.

206.   Samsara denies the allegations contained in Paragraph 206 of the FAC.

## SIXTH CAUSE OF ACTION

### (Alleged Violation of Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*)

207.   Samsara denies Paragraph 207 of the FAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 61–92 of the FAC.

208.   Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 208 of the FAC and thus denies the allegations on that basis.

209.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 209 of the FAC and thus denies the allegations on that basis, except it admits that Motive's dashcam and fleet management solutions are used, sold, shipped, or ordered in, or intended to be used, sold, shipped, or ordered in interstate or foreign commerce.

210.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 210 of the FAC and thus denies the allegations on that basis.

211.    Samsara denies that "Motive has made reasonable efforts to maintain the confidentiality and secrecy of its [alleged] proprietary information." Samsara denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 211 of the FAC and thus denies the allegations on that basis.

212.    Samsara denies the allegation contained in Paragraph 212 of the FAC. Samsara denies the allegation that "[i]n violation of Motive's rights, Samsara misappropriated Motive's confidential, proprietary, and trade secret information through the improper and unlawful means alleged [in the FAC]." As to the allegations that Samsara "recruit[ed]" "Motive employees" with "detailed knowledge of proprietary information to re-create Motive's dashcam, fleet management solutions, and other products" and "detailed knowledge of proprietary customer information," Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the extent of such knowledge possessed by any Motive employee who worked for Samsara and thus denies the allegations on that basis; Samsara also denies the allegations to the extent they assert that Samsara hired any individual with an intention to "re-create Motive's dashcam, fleet management solutions, and other products."

213.    Samsara incorporates its response to Paragraph 212 of the FAC. Samsara denies the allegations in Paragraph 213 of the FAC. As to the allegation that Samsara "knew or had reason to know that Motive's former employees disclosed the information without Motive's consent and while under a duty to maintain its secrecy," Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegation and thus denies the allegation on that basis. Samsara further denies that it "induced" any Motive employee to disclose the alleged information described in Paragraph 213 of the FAC.

214.    Samsara denies the allegations contained in Paragraph 214 of the FAC.

215.    Samsara denies the allegations contained in Paragraph 215 of the FAC to the extent it alleges (a) that Samsara had or has possession, custody, or control of Motive trade secrets or confidential information and/or (b) that Samsara "is retaining and using Motive's trade secrets and confidential information."

216.    Samsara denies the allegations contained in Paragraph 216 of the FAC.

217.    Samsara denies that Motive is entitled to a judgment as set forth in the Prayer for Relief in the FAC.

218.    Samsara denies the allegations contained in Paragraph 218 of the FAC.

## SEVENTH CAUSE OF ACTION

### (Alleged Defamation)

219.    Samsara denies Paragraph 219 of the FAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 129–135 of the FAC.

220.    Samsara denies the allegations contained in Paragraph 220 of the FAC, and further states that the website (www.innovationprotection.com) speaks for itself.

221.    Samsara denies the allegations in Paragraph 221 of the FAC and further states that the website (www.innovationprotection.com) speaks for itself.

222.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding what third parties "reasonably understood" contained in Paragraph 222 of the FAC and thus denies the allegations on that basis.  Samsara denies the remainder of the allegations contained in Paragraph 222 of the FAC.

223.    Samsara states that the allegations contained in Paragraph 223 of the FAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 223 of the FAC.

224.    Samsara states that the allegations contained in Paragraph 224 of the FAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 224 of the FAC.

225.    Samsara states that the allegations contained in Paragraph 225 of the FAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 225 of the FAC.

226.    Samsara denies the allegations contained in Paragraph 226 of the FAC.

227.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 227 of the FAC and thus denies the allegations on that basis.

228.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 228 of the FAC and thus denies the allegations on that basis.

229.    Samsara states that the allegations contained in Paragraph 229 of the FAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 229 of the FAC.

230.    Samsara denies that Motive is entitled to reputational and punitive damages.  Samsara states that the remaining allegations contained in Paragraph 230 of the FAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the remaining allegations contained in Paragraph 230 of the FAC.

231.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 231 of the FAC and thus denies the allegations on that basis.

232.    Samsara denies that Motive is entitled to any injunctive relief or recovery of damages, including presumed, general, specific, and punitive damages.  Samsara denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 232 of the FAC and thus denies those allegations on that basis.

## EIGHTH CAUSE OF ACTION

### (Alleged Intentional Interference with Prospective Economic Relations)

233.    Samsara denies Paragraph 233 of the FAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 136–141 of the FAC.

234.    Samsara denies the allegations contained in Paragraph 234 of the FAC.

235.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding Company 1, Company 2, and Company 3 contained in Paragraph 235 of the FAC

and thus denies the allegations on that basis.  Samsara denies the remaining allegations in Paragraph 235 of the FAC.

236.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 236 of the FAC and thus denies the allegations on that basis.

237.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 237 of the FAC and thus denies the allegations on that basis.

238.    Samsara denies the allegations contained in Paragraph 238 of the FAC.

239.    Samsara states that the allegations contained in Paragraph 239 of the FAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 239 of the FAC.

240.    Samsara denies the allegations contained in Paragraph 240 of the FAC.

241.    Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 241 of the FAC and thus denies the allegations on that basis.

242.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 242 of the FAC and thus denies the allegations on that basis.

243.    Samsara denies that Motive is entitled to any injunctive relief.  Samsara denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 243 of the FAC and thus denies those allegations on that basis.

## AFFIRMATIVE DEFENSES

244.    Samsara incorporates the foregoing responses as though fully set forth in each of the affirmative defenses listed below.  Further, Samsara reserves the right to further amend this answer and assert any other affirmative defenses available to it at any time in the future.  Without conceding that any of the following must be pled as affirmative defenses or that Samsara has the burden of proof on any of them, Samsara alleges the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

245.    The FAC fails to state any claim upon which relief may be granted.

246.    For example, the FAC fails to state a claim upon which relief may be granted because asserted claim 1 of the '580 patent is invalid for failing to comply with one or more of the requirements for patentability under, including but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 *et seq.*, as set forth below in Samsara's Counterclaims.  As another example, the FAC fails to state a claim upon which relief may be granted because, as set forth below in Samsara's Counterclaims, the accused Samsara products do not infringe asserted claim 1 of the '580 patent.

## SECOND AFFIRMATIVE DEFENSE
### (No Infringement of the '580 Patent)

247.    Samsara has not infringed and does not currently infringe claim 1 of the '580 patent, literally or under the doctrine of equivalents, directly or indirectly.

248.    Samsara incorporates herein by reference its forthcoming discovery responses, expert reports, and claim construction brief, which will be served in due course in accordance with the Court's schedule in this matter.

## THIRD AFFIRMATIVE DEFENSE
### (No DOE Due to Prosecution History Estoppel, Claim Vitiation, and/or Ensnarement)

249.    To the extent Motive alleges infringement under the doctrine of equivalents, the relief sought by Motive is barred under prosecution history estoppel, claim vitiation, and/or ensnarement.

## FOURTH AFFIRMATIVE DEFENSE
### (Prosecution History Disclaimer)

250.    Motive is estopped from construing the claims of the '580 Patent to cover or include products manufactured, used, imported, sold, or offered for sale by Samsara or methods used by Samsara because of amendments, admissions, representations, or statements made before the United States Patent and Trademark Office ("USPTO") during the prosecution of the application leading to the issuance of the '580 patent or applications related thereto, because of disclosures or language in the specification of the '580 Patent, and/or because of limitations in the claims of the '580 Patent.

**FIFTH AFFIRMATIVE DEFENSE**

**(Invalidity of the '580 Patent)**

251.    Claim 1 of the '580 patent is invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code.

252.    Claim 1 of the '580 patent is invalid under 35 U.S.C. § 101 because it recites ineligible subject matter.

253.    Claim 1 of the '580 patent is invalid as anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103.  For example, claim 1 is invalid over prior art systems.  As one example of such prior art systems, the Samsara functionality and system accused by Motive, *see* FAC Ex. B (Dash Cam Calibration implemented on the Samsara CM31/32 Dash Cams, Samsara Cloud, and the Samsara Dashboard), anticipates claim 1 of the '580 patent (at least under Motive's infringement theory as articulated in FAC Ex. B and its Patent L.R. 3-1 and 3-2 Infringement Contentions) because Samsara developed and publicly released an earlier version of the same with no material differences with the accused version (the "Samsara Prior Art System") before the priority date of the '580 patent.  Both Samsara and its customers used the Samsara Prior Art System before the priority date of the '580 patent.  Alternatively, claim 1 of the '580 patent was obvious in light of the Samsara Prior Art System and the knowledge of a person of ordinary skill in the art, at least under Motive's infringement theory (at least under Motive's infringement theory as articulated in FAC Ex. B and its Patent L.R. 3-1 and 3-2 Infringement Contentions).

254.    As another example, Claim 1 of the '580 patent is invalid as anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103 in light of printed publication prior art, including the prior art and combinations disclosed in Samsara's Petition for *Inter Partes* Review in IPR2025-00574 (*see* Dkt. 81), including: (1) U.S. Publication No. 2020/0410704 to Choe *et al.* ("Choe") and figures of U.S. Patent Application Publication No. 2020/0410704 to Choe *et al.*, *available at* the USPTO SCORE Database via Patent Center; (2) Khan *et al.*, "Lane Detection Using Lane Boundary Marker Network with Road Geometry Constraints," *available at* https://ieeexplore.ieee.org/document/9093296 (May 14, 2020) and https://openaccess.thecvf.com/content_WACV_2020/html/Khan_Lane_detection_using_lane_boundary _marker_network_with_road_geometry_WACV_2020_paper.html (Mar. 2020) ("Khan"); (3) Ali *et al.*, "Real-Time Vehicle Distance Estimation using Single View Geometry," *available at*

https://ieeexplore.ieee.org/document/9093634 (May 14, 2020) and https://openaccess.thecvf.com/content_WACV_2020/papers/Ali_Real-time_vehicle_distance_estimation_using_single_view_geometry_WACV_2020_paper.pdf (Mar. 2020) ("Ali"); (4) PCT Application Publication No. PCT/EP2019/056356 to Westmacot *et al.* ("Westmacot"); and (5) Scott Workman and Menghua Zhai and Nathan Jacobs, "Horizon Lines in the Wild," *available at* https://arxiv.org/abs/1604.02129 ("Workman").[1]

255. Claim 1 of the '580 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. § 112, including the written description, enablement, and/or definiteness requirements.

256. Samsara incorporates herein by reference its forthcoming discovery responses, expert reports, and claim construction brief, which will be served in due course in accordance with the Court's schedule in this matter.

## SIXTH AFFIRMATIVE DEFENSE

### (Limitations on Recovery for Alleged Patent Infringement)

257. Motive's claim for damages and other remedies due to alleged patent infringement are limited by 35 U.S.C. §§ 287 and/or 288. Motive is barred by 35 U.S.C. § 288 from recovering costs associated with this action.

## SEVENTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

258. Motive is not entitled to injunctive relief against Samsara because any alleged injury (for any of Motive's asserted causes of action) is not irreparable, there is an adequate remedy at law for any such alleged injury, the balance of hardships and equities does not favor an injunction, and the public interest would be disserved by an injunction.

---

[1] In IPR2025-00574, Samsara has stipulated that if the USPTO's Patent Trial and Appeal Board ("PTAB") institutes *Inter Partes* Review of the '580 patent on Samsara's petition, Samsara will not raise, in this case, any grounds raised or that reasonably could have been raised in the petition or any grounds that are combinations of the prior art asserted in the petition with unpublished system prior art. *See* Ex. 7. Samsara will abide by that stipulation if the PTAB institutes *Inter Partes* Review of the '580 patent.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Identify Alleged Trade Secrets)

259.    Motive's claims for trade secret misappropriation are barred in whole or in part due to Motive's failure to identify its alleged trade secrets with sufficient particularity and to distinguish them from non-trade secret information.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Protect Alleged Trade Secrets)

260.    Motive's claims for trade secret misappropriation are barred in whole or in part because Motive did not take reasonable efforts to safeguard the alleged trade secrets.

## TENTH AFFIRMATIVE DEFENSE

### (Alleged Trade Secrets Were Readily Ascertainable and/or Publicly Available)

261.    Motive's claims for trade secret misappropriation are barred in whole or in part because the alleged trade secrets, including "specifications, designs, and customer lists" identified in FAC ¶¶ 79–80, 198 and 209, were publicly known and/or readily ascertainable by proper means at least as of the time that Motive alleges they were misappropriated by Samsara.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Lack of Independent Economic Value)

262.    Motive's claims for trade secret misappropriation are barred in whole or in part because the alleged trade secrets lacked independent economic value.

## TWELFTH AFFIRMATIVE DEFENSE

### (Independent Development of Alleged Trade Secrets)

263.    Motive's claims for trade secret misappropriation are barred in whole or in part because Samsara independently developed its Ambarella-based designs, specification, and platform.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands as to Motive's Trade Secret Causes of Action)

264.    Motive's claims for trade secret misappropriation are barred, in whole or in part, by Motive's unclean hands.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (No Exceptional Case)

265.    Samsara has not engaged in any conduct that would make this an exceptional case under 15 U.S.C. § 1117.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Opinion)

266.    Motive's Lanham Act claim is barred, in whole or in part, because any alleged false statements allegedly made by Samsara were statements of opinion rather than statements of fact and, as such, are subjective and not quantifiable, specific, and/or measurable.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands as to the Lanham Act Claim)

267.    Motive's Lanham Act claim is barred, in whole or in part, by Motive's unclean hands. For example, Motive commissioned and published the Strategy Analytics and VTTI studies and otherwise made false and misleading statements about Samsara's products and their relative performance against Motive's products.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No False or Material Statements)

268.    Motive's Lanham Act claim is barred, in whole or in part, because the Samsara statements on which Motive relies were not false or misleading.

269.    Moreover, any allegedly false statements or omissions allegedly made by Samsara were not material to the decision by consumers as to which company's products to buy or use and therefore were not the proximate cause of any injury allegedly suffered by Motive. Motive's Lanham Act claim is also barred, in whole or in part, to the extent any allegedly false or deceptive statements constitute puffery, and no reasonable consumer would have reasonably or justifiably relied on them or misunderstood the representations by such statements.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Unclean Hands as to the Fraud Claim)

270.     Motive's fraud claim is barred, in whole or in part, by Motive's unclean hands.  For example, under direction by Motive, Motive's employees accessed Samsara's platform under false pretenses.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Truth and/or Opinion)

271.    Motive's defamation claim is barred, in whole or in part, because the allegedly defamatory statements were factually true or were opinions.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Public Figure)

272.    Motive's defamation claim is barred, in whole or in part, because at all relevant times Motive was a limited purpose "public figure" and cannot prove that Samsara acted with reckless disregard for the truth or actual malice against Motive's reputation.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Litigation Privilege and other First Amendment Defenses)

273.    Motive's defamation claim is barred, in whole or in part, by the litigation privilege, because the statements were made in connection with a judicial proceeding.

274.    Motive's defamation claim is also barred, in whole or in part, because at all relevant times a public controversy existed, including the subject of Samsara's lawsuit against Motive, Motive had a central role in the controversy, and Samsara's statements related to Motive's role in the public controversy. As such, the allegedly defamatory Samsara statements are protected under the First Amendment of the United States Constitution.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

#### (Unclean Hands as to the Defamation Claim)

275.    Motive's defamation claim is barred, in whole or in part, by Motive's unclean hands.  For example, under directions by Motive, Motive's employees accessed Samsara's platform under false pretenses.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Waiver, Acquiescence, Latches, and/or Estoppel)

276.    Motive's claims, including its requests for damages and other relief, are barred, in whole or in part, by the doctrines of waiver, acquiescence, laches, and/or estoppel.  For example, Motive's fraud and Cal. Civ. Code § 17200 claims are barred under these doctrines to the extent Motive knew of the alleged acts by Samsara and did not take significant or meaningful action.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

277.    To the extent Motive incurred any damages, its damages claim(s) is(are) barred, in whole or in part, because Motive failed to exercise reasonable care to avoid and/or mitigate those damages.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (No Causation and/or Proximate Causation)

278.    Motive's claims are barred, in whole or in part, because Motive's purported damages were not caused by, or proximately caused by, any conduct or inaction by Samsara, and/or were not foreseeable.

## RESERVATION OF RIGHTS AS TO ADDITIONAL AFFIRMATIVE DEFENSES

279.    Samsara is presently investigating the facts relating to Motive's allegations in the FAC, including the issuance of Motive's asserted patent, the ownership and prosecution history of the asserted patent, and Motive's assertion of infringement against Samsara.  Samsara will continue its investigation throughout the discovery process.  To the extent that this investigation reveals any additional affirmative defenses in connection with such matters, Samsara reserves the right to seek leave to amend to assert such allegations and/or defenses that may be appropriate.

280.    In addition to the defenses described above, Samsara reserves all defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, which may now exist or in the future become available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

1.      Pursuant to Federal Rule of Civil Procedure 13, Samsara (also, "Counterclaim-Plaintiff") states the following counterclaims against Motive (also, "Counterclaim-Defendant") and alleges as follows:

## NATURE OF THE ACTION

2.      Samsara is the owner of all right, title, and interest in and to: (i) U.S. Patent No. 11,975,685 ("the '685 Patent"), titled "Remote Vehicle Immobilizer"; (ii) U.S. Patent No. 10,033,706 ("the '706 Patent"), titled "Secure Offline Data Offload in a Sensor Network"; and (iii) U.S. Patent No. 12,069,041 ("the '041 Patent"), titled "Authentication of a Gateway Device in a Sensor Network." The '685, '706, and '041 Patents are collectively referred to herein as the "Asserted Samsara Patents."

3.      Motive imports, offers for sale, sells, distributes, and/or uses in the United States infringing products ("Accused Motive Products"), and induces others, including customers and end users, to use the Accused Motive Products in an infringing manner. The Accused Motive Products include Motive's cloud infrastructure ("the Motive Cloud"), the Motive Vehicle Gateway, the Motive Asset Gateway, the Motive Environmental Sensor, and the Motive Engine Immobilizer.

4.      Samsara seeks past and future damages as well as pre-judgment and post-judgment interest for Motive's infringement of the Asserted Samsara Patents. Samsara also seeks an injunction against further infringement of the Asserted Samsara Patents by Motive through Motive's importation, offer for sale, sale, distribution, and/or use of the Accused Motive Products in the United States.

## THE PARTIES

5.      Counterclaim-Plaintiff Samsara is a Delaware corporation with its headquarters and principal place of business located in this District at the address: 1 De Haro Street, San Francisco, CA 94107.

6.      Counterclaim-Defendant Motive is a Delaware corporation with its headquarters and principal place of business located in this District at the address: 55 Hawthorne Street, Suite 400, San Francisco, CA 94105.

7.      Motive was founded as KeepTruckin in 2013. KeepTruckin rebranded itself as Motive in 2022.

SAMSARA'S ANSWER TO AMENDED
COMPLAINT AND COUNTERCLAIMS                 1                 CASE NO. 24-CV-00902-JD

## JURISDICTION

8.      These counterclaims arise under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

9.      This Court has personal jurisdiction over Motive.  Personal jurisdiction exists generally and specifically over Motive because Motive directly and/or indirectly (through its subsidiaries, divisions, groups, and/or distributors) has sufficient minimum contacts with the Northern District of California, at least because: (i) Motive maintains a regular and established place of business in this District; (ii) Motive conducts substantial business in this District, including by importation, offer for sale, sale, and use of one or more of the Accused Products; and (iii) Motive filed suit against Samsara in this District.

10.      Motive has been involved in importing one or more of the Accused Motive Products into the United States through ports in California, including at least Oakland, which is located in this District.

11.      Motive maintains a regular and established place of business within this District at 55 Hawthorne Street, Suite 400, San Francisco, CA 94105.  Motive employs individuals in this District and in the state of California as part of maintaining a regular and established place of business in this District.

12.      Personal jurisdiction also exists specifically over Motive because it has committed acts of patent infringement in this District and the state of California, including at least because Motive (directly and/or through its subsidiaries, divisions, groups, or distributors) imports, advertises, markets, offers for sale, distributes, sells, and/or uses the Accused Motive Products in this District and the state of California. Accordingly, Motive has committed and continues to commit tortious acts in this District and the state of California; has expressly aimed and continues to aim its actions at this District and the state of California with the knowledge that those actions would cause harm and substantial injury to Samsara in this District and the state of California; and Samsara's claims relate to Motive's products containing technology advertised, marketed, used, offered for sale, imported, and/or sold in this District and in the state of California.

13.      In addition, Motive has consented to personal jurisdiction by this Court over Motive at least by commencing its action against Samsara in this Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VENUE

14. Venue properly lies in this District under 28 U.S.C. §§ 1391(c) and 1400(b). Motive maintains a regular and established place of business in this District at 55 Hawthorne Street, Suite 400, San Francisco, CA 94105. Motive has also committed acts of infringement in this District.

## BACKGROUND

### Samsara Pioneered the Field of IOT Data-Driven Operations

15. Samsara is a pioneer and leader in the field of data-driven operations powered by IoT device connectivity. Founded in 2015, Samsara has been on a mission to increase the safety, efficiency, and sustainability of physical operations that power the global economy. Its Connected Operations™ Cloud platform is a cloud-based solution that allows customers with physical operations in broad-based industries to obtain information about their devices, equipment, and operations using IoT devices and to manage and analyze this information with advanced AI tools, allowing them to operate more safely, efficiently, and sustainably—in a word, more intelligently.

16. Samsara was founded by Sanjit Biswas and John Bicket. The two met as graduate students at the Computer Science and Artificial Intelligence Laboratory at the Massachusetts Institute of Technology ("MIT"). Mr. Biswas, who is Samsara's Chief Executive Officer, has been recognized as an MIT Technology Review "Innovator Under 35" honoree, a Technology Pioneer by the World Economic Forum, Glassdoor's 2018 Top CEO, one of Goldman Sachs's 100 Most Intriguing Entrepreneurs, and one of The Software Report's top 50 SaaS CEOs. He holds a B.S. in Computer Systems Engineering from Stanford and an S.M. in Electrical Engineering and Computer Science from MIT. Mr. Bicket, Samsara's Chief Technology Officer, is responsible for Samsara's ground-breaking technology that makes operating thousands of sensors simple and secure. He holds a B.S. in Computer Science from Cornell University and an M.S. in Computer Science from MIT.

17. Messrs. Biswas and Bicket formed Samsara to create integrated IoT solutions that bring the benefits of data to the operations that power our economy. Since its founding, Samsara's growth, propelled by its groundbreaking research and development, intense focus on customer feedback, and the hard work of its employees, has been meteoric. By late 2022, Samsara surpassed 1,600 employees worldwide and became the largest open ecosystem for physical operations with more than 200 integration

partners on the Samsara platform.[2]  Samsara's strong commitment to innovation earned it a spot on *Fast Company*'s 2023 Best Workplaces for Innovators list, which honors "organizations and businesses that demonstrate an inspiring commitment to encourage and develop innovation at all levels."[3]

18.    Presently, Samsara serves tens of thousands of customers across a wide range of industries, including transportation, wholesale and retail trade, construction, field services, logistics, utilities and energy, government, healthcare and education, manufacturing, and food and beverage.  Businesses in these industries operate critical infrastructure and are the foundation of the global economy.  They operate high-value assets, coordinate large field workforces, manage complex logistics and distribution sites, and face environmental, safety, and other regulatory requirements.  Historically, these businesses relied on error-prone, deficient, and inefficient manual processes and legacy systems that were siloed and lacked cloud connectivity as well as computational and operational capability to obtain real-time and actionable information and analysis.  Without connected digital tools, and innovative improvements to the operation of such tools, physical-operations businesses struggled to access real-time data, making it nearly impossible to achieve complete operational visibility or drive meaningful improvements in productivity.

**Samsara's Groundbreaking Solutions for IOT Data-Driven Vehicle Fleet Management**

19.    Samsara began its journey by creating innovative digital solutions, including those to monitor and manage the physical operations of connected fleets of vehicles.  Commercial vehicle fleets are the backbone of many physical operations and are required to deliver and transport services, goods, and people in virtually all industries.  Businesses with commercial vehicle fleets face continued pressure to reduce costs and improve services, while simultaneously finding ways to overcome high accident rates, inefficient fuel consumption, and compliance burdens.

20.    Samsara discovered substantial problems in the industry associated with the inability to obtain real-time updates and actionable information effectively and accurately about vehicles while they were in transit.  One of Samsara's initial products was a vehicle telematics solution based on its Vehicle

---

[2]    *Id.*; Ex. 8, https://www.businesswire.com/news/home/20220913005304/en/Samsara-Announces-200th-Partner-Integration-with-its-Connected-Operations-Cloud-Becoming-System-of-Record-for-Physical-Operations.

[3]    Ex. 9, https://www.samsara.com/blog/samsara-recognized-as-a-best-workplace-for-innovators.

Gateway. This hardware device is mounted on a vehicle and connects to the vehicle's Engine Control Unit (ECU) to receive vehicle data, including diagnostic information, speed, and support temperature monitoring. The Vehicle Gateway also includes onboard sensors, such as a GPS sensor. The Vehicle Gateway wirelessly transmits vehicle and other information to the Samsara Cloud. The Samsara Cloud performs various analytics functions on data received from the vehicle fleet and provides customer-facing information to the Samsara Dashboard, a customer-facing online platform where a customer can see data for assets across their organization all in one place. The Samsara system gave customers operational visibility and actionable data insights to drive meaningful improvements in their operations like never before.

21.     Samsara's technology offers an end-to-end solution, connecting physical operations data from IoT devices to its Connected Operations$^{TM}$ Cloud. The Connected Operations$^{TM}$ Cloud consists of Samsara's Data Platform and Applications, as shown below. The Data Platform ingests, aggregates, and enriches data both from Samsara's IoT devices and a growing ecosystem of connected assets and third-party systems, and makes the data available for use by the Applications. The Applications provide analyses that customers can use to make their operations safer and more efficient.



22.    As Samsara continued to innovate, it introduced various other IoT devices and features over the years.

23.    For example, in November 2017, Samsara introduced its AG24 Asset Gateway, which enabled real-time visibility and location tracking of a customer's assets.  The AG24 Asset Gateway worked with Samsara's wireless sensors and analog, digital, and reefer data inputs.[4]  Samsara's current Asset Gateway offerings include both powered[5] and unpowered[6] options.

---

[4]    Ex. 10, https://www.samsara.com/blog/introducing-the-solar-powered-ag24-gateway-for-trailers-mobile-assets.

[5]    Ex. 11, https://kb.samsara.com/hc/en-us/articles/360042694572-Asset-Gateways-AGs-for-Powered-Assets.

[6]    Ex. 12, https://kb.samsara.com/hc/en-us/articles/360043174711-Unpowered-Asset-Gateway-AG-Installations.

SAMSARA'S ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS                    6                    CASE NO. 24-CV-00902-JD



Samsara's Powered Asset Gateways[7]

Samsara's Unpowered Asset Gateways[8]

24.    Samsara also introduced Environmental Monitor (EM) Series Sensors that can monitor temperature and/or humidity for applications that rely on monitoring environmental data, such as food safety during transportation.[9]  Samsara's EM Series sensors can automatically connect with Samsara's Asset Gateways to help provide a comprehensive view of the state of an asset.[10]



Samsara's Environmental Monitor (EM) Series Sensors[11]

---

[7]    Ex. 11, https://kb.samsara.com/hc/en-us/articles/360042694572-Asset-Gateways-AGs-for-Powered-Assets.

[8]    Ex. 12, https://kb.samsara.com/hc/en-us/articles/360043174711-Unpowered-Asset-Gateway-AG-Installations.

[9]    Ex. 13, https://kb.samsara.com/hc/en-us/articles/360043022052-Environmental-Monitor-EM-Sensors.

[10]    Ex. 14, https://kb.samsara.com/hc/en-us/articles/360042725792-Pair-a-Samsara-Sensor-to-an-Asset-Gateway.

[11]    Ex. 15, https://www.samsara.com/pdf/docs/em-datasheet-vg34.pdf.

25.    Furthermore, in February 2023, Samsara updated its Engine Immobilizer.[12]  The Engine Immobilizer allows fleet managers to remotely enable or disable the movement of vehicles from the Samsara Dashboard, for example, in the event of an emergency, thereby preventing vehicle theft and facilitating vehicle management.[13]



Samsara Engine Immobilizer.[14]

### THE ASSERTED SAMSARA PATENTS

26.    Samsara's products incorporate numerous patented technologies developed and owned by Samsara.  Three examples of Samsara's patented technologies are described below.  These patented technologies represent important developments and innovations in fleet telematics and driver safety products.

### U.S. PATENT NO. 11,975,685

27.    U.S. Patent No. 11,975,685 ("the '685 Patent"), titled "Remote Vehicle Immobilizer," issued on May 7, 2024 to Michael Luis Innocenzi, Elias Ray Dykaar, Maxwell Anton Dergosits, and Ingo Gerhard Wiegand.  A true and correct copy of the '685 Patent is attached as Ex. 1.

28.    Samsara owns the full right, title, and interest in the '685 Patent and is entitled to sue for future and past infringement of the '685 Patent.

29.    The '685 Patent is valid and enforceable.

---

[12]  Ex. 16, https://www.samsara.com/blog/4-new-releases-spring-2023.

[13]  Ex. 17, https://www.samsara.com/products/models/engine-immobilizer.

[14]  Ex. 18, https://www.samsara.com/pdf/EI21_Datasheet.pdf.

30.    The '685 Patent is generally directed to a remote vehicle immobilizer system and methods of using the same.  As the '685 Patent explains, restricting use of a vehicle can be difficult because "monitoring and controlling use of a vehicle is often not possible once the vehicle has left the control of the party implementing restrictions.  For example, a vehicle rental service or fleet manager cannot control how a vehicle is operated once the vehicle has been rented or assigned to a driver.  Accordingly, improvements are needed."  Ex. 1, '685 Patent at 1:27–34.

31.    To this end, the '685 Patent discloses "systems, methods, and non-transitory computer-readable media for a remote vehicle immobilizer" that "allows for a vehicle to be immobilized remotely to restrict use of the vehicle."  *Id.* at 2:32–35; *see also id.* at 1:13–15, Abstract.  "For example, the remote vehicle immobilizer includes an electronic switch (e.g., relay) positioned within a conducting path between the starter motor ('starter') and battery of the vehicle."  *Id.* at 2:35–39.  "The electronic switch is connected to a network gateway device (e.g., vehicle gateway) of the vehicle that allows for remote communication between the vehicle and one or more remote computing devices of a remote vehicle immobilization system."  *Id.* at 2:50–54.  "The electronic switch can be controlled remotely to cause the switch to open or close.  Opening the electronic switch causes the conducting path between the starter and the battery to be interrupted.  As a result, the starter cannot draw power from the battery to ignite the engine of the vehicle and the vehicle is immobilized (e.g., cannot be started using the starter).  Conversely, when the electronic switch is closed, the conducting path between the starter and the battery is uninterrupted and the starter may pull power from the battery to ignite the engine of the vehicle and the vehicle is mobilized (e.g., can be started using the starter)."  *Id.* at 2:39–49.

32.    The claims of the '685 Patent recite significant improvements to computer and/or device functionality and significantly more than well-understood, routine, and conventional steps or systems previously known in the art.  For example, in claim 9, at least the following limitations that recite "receiving, from a client device …, a command to cause a change in a configuration associated with a vehicle," and "in response to the command, causing the vehicle to modify the configuration of an electronic switch from a first configuration to a second configuration …," enable remote control of an electronic switch to facilitate remote immobilization of a vehicle at desired times and circumstances more

flexibly than was well-understood, routine, and conventional in the art.  *See, e.g.*, *id.* at 1:27–34, 2:32–54, 3:5–16.

9.  A system comprising:

one or more computer processors; and

one or more computer-readable mediums storing instructions that, when executed by the one or more computer processors, cause the system to perform operations comprising:

*receiving, from a client device and by one or more processors, a command to cause a change in a configuration associated with a vehicle;* and

*in response to the command, causing the vehicle to modify the configuration of an electronic switch from a first configuration to a second configuration, the electronic switch positioned within the vehicle in a conducting path between a starter motor of the vehicle and a battery of the vehicle, wherein the first configuration of the electronic switch is a closed configuration creating an uninterrupted conducting path, and the second configuration of the electronic switch is an open configuration creating an interrupted conducting path.*

Ex. 1, '685 Patent at Cl. 9 (emphasis added).

33.    The '685 Patent claims recite systems and methods that embody specific improvements to vehicle immobilizer functionality, including improvements in remote functionality of such systems, such as the specific improvement of causing a vehicle to modify the configuration of an electronic switch in response to receiving a command from a client device.  The claims recite significantly more than the performance of well-understood, routine, and conventional steps previously known in the art.  The '685 Patent overcame a § 101 rejection during prosecution.  *See* Ex. 19, '685 Patent File History at 10/24/2023 Non-Final Rejection at 3–6, 12/20/2023 Notice of Allowance.

**U.S. PATENT NO. 10,033,706**

34.     The '706 Patent, titled "Secure Offline Data Offload in a Sensor Network," issued on July 24, 2018 to John Bicket, James Michael Rowson, and Chase Phillips.  A true and correct copy of the '706 Patent is attached as Ex. 2.

35.     Samsara owns the full right, title, and interest in the '706 Patent and is entitled to sue for future and past infringement of the '706 Patent.

36.     The '706 Patent is valid and enforceable.

37.     The '706 Patent is generally directed to devices, systems, and methods for secure offline data logging in sensor networks, including transmitting sensor measurement data over secure communication channels and generating reconciled sensor measurements in which duplicates have been removed.

38.     "A sensor network includes spatially distributed autonomous sensing devices to monitor physical or environmental conditions[] (such as temperature, humidity, pressure, movement, etc.) and to record data about the physical events to deliver the data through the network to a user's location."  Ex. 2, '706 Patent at 1:19–23.  With the increase in use of sensor networks in industrial and consumer applications, *see id.* at 1:26–29, a need arose to facilitate data logging in such networks.  The '706 Patent addresses this problem by "enabling reliable and secure offload of sensor measurements in a sensor network."  *Id.* at 5:56–59.

39.     The '706 Patent claims devices, systems, and methods embodying specific improvements to computer functionality, including improving the secure transmission and reconciliation of sensor measurement data.  The '706 Patent also claims significantly more than the performance of well-understood, routine, and conventional steps previously known in the art.

40.     For example, according to some embodiments of the '706 Patent, "the system provide[s] secure communication channels between sensing devices and gateway devices of a same sensor network, and allows for intermittent connectivity between the devices and/or mobility of the sensing devices and the gateway devices while minimizing data loss."  Ex. 2, '706 Patent at 5:59–64; *see also id.* at 10:29–32.  Further, the management server "reconciles the data received from each WSD [wireless sensing device] through respective gateway devices based on the sequence numbers and the time stamps associated with

each sensor measurement to generate reconciled sensor measurements in which duplicates have been removed." *Id.* at 12:53–58.

41.    In addition, at least the following limitations in claim 7 that recite (i) "wherein the data was transmitted to the second gateway device from the wireless sensing device through a fourth secure communication channel … following disconnection of the second secure communication channel," and (ii) "generate reconciled sensor measurements in which duplicates have been removed," enable sensor measurement data to be transmitted and reconciled more securely and effectively (*e.g.*, even in scenarios of mobility and intermittent connectivity) than was well-understood, routine, and conventional in the art. *See, e.g., id.* at 5:56–64, 10:18–13:22, 19:65–20:25.

7. A management server device for supporting secure offline data logging in sensor networks, wherein the sensor networks include a plurality of wireless sensing devices operative to detect physical events and to generate sensor measurements in response to the detection of the physical events, the management server device comprising:

a non-transitory computer readable storage medium to store instructions; and

a processor coupled with the non-transitory computer readable storage medium to process the stored instructions to:

*receive, upon establishment of a first secure communication channel between a first gateway device of a plurality of gateway devices and the management server device, data indicative of a first plurality of sensor measurements taken over time, a sequence number for each, and a time stamp for each, wherein the data was transmitted to the first gateway device from a first wireless sensing device of the plurality of wireless sensing devices over a second secure communication channel between the first gateway device and the first wireless sensing device, and wherein the management server device tracks which of the plurality of gateway devices and*

*which of the plurality of wireless sensing devices is associated with which of a plurality of organizations,*

*receive, upon establishment of a third secure communication channel between a second gateway device of the plurality of gateway devices and the management server device, data indicative of a second plurality of sensor measurements taken over time, a sequence number for each, and a time stamp for each, wherein the data was transmitted to the second gateway device from the wireless sensing device through a fourth secure communication channel between the second gateway device and the wireless sensing device following disconnection of the second secure communication channel between the first gateway device and the wireless sensing device;*

*reconcile the data indicative of the first plurality of sensor measurements and the data indicative of the second plurality of sensor measurements based on the sequence numbers and the time stamps to generate reconciled sensor measurements in which duplicates have been removed;* and

provide for display a user interface including a representation of the reconciled sensor measurements over time.

Ex. 2, '706 Patent at Cl. 7 (emphasis added).

## U.S. PATENT NO. 12,069,041

42.    The '041 Patent, titled "Authentication of a Gateway Device in a Sensor Network," issued on August 20, 2024 to John Bicket, James Michael Rowson, and Chase Phillips.  A true and correct copy of the '041 Patent is attached as Ex. 3.

43.    Samsara owns the full right, title, and interest in the '041 Patent and is entitled to sue for future and past infringement of the '041 Patent.

44.    The '041 Patent is valid and enforceable.

45.     The '041 Patent is directed to devices, systems, and methods for authentication in a sensor network, including a gateway device that receives a certificate generated by a management server, transmits the certificate to a wireless sensing device, and receives data in response to confirming based on the certificate that the wireless sensing device is authorized to connect with the gateway device.

46.     The '041 Patent claims devices, systems, and methods embodying specific improvements to computer functionality, including improving authentication based on a certificate in a sensor network. The '041 Patent also claims significantly more than the performance of well-understood, routine, and conventional steps previously known in the art.

47.     For example, according to some embodiments of the '041 Patent, "the system provide[s] secure communication channels between sensing devices and gateway devices of a same sensor network." Ex. 3, '041 Patent at 5:43–45. "A certificate that is generated by the management server in response to a determination that the gateway device is associated with a wireless sensing device is received during an initial connection with the management server. In response to confirming, based on the certificate, that the gateway device is authorized to connect to the wireless sensing device, the certificate is transmitted to the wireless sensing device; and data is received from the wireless sensing device in response to confirming that the wireless sensing device is authorized to connect with the gateway device based on the certificate." *Id.* at Abstract.

48.     In addition, at least the following limitations in claim 11 that recite (i) "receive, during an initial connection with a management server, a certificate that was generated by the management server …," (ii) "transmit the certificate to the wireless sensing device," and (iii) "receive data from the wireless sensing device in response to confirming based on the certificate that the wireless sensing device is authorized to connect with the gateway device," enable authentication based on a certificate in a sensor network to occur more effectively than was well-understood, routine, and conventional in the art. *See, e.g., id.* at Abstract, 1:40–3:44, 5:43–45, 20:49–26:19.

11. A gateway device comprising:

> a communication interface to ***receive, during an initial connection with a management server, a certificate that was generated by the management***

*server in response to a determination that the gateway device is associated with a wireless sensing device*;

a non-transitory computer readable storage medium to store instructions; and

a processor coupled with the non-transitory computer readable storage medium to process the stored instructions to:

*in response to confirming, based on the certificate, that the gateway device is authorized to connect to the wireless sensing device, transmit the certificate to the wireless sensing device,* and *receive data from the wireless sensing device in response to confirming based on the certificate that the wireless sensing device is authorized to connect with the gateway device.*

Ex. 3, '041 Patent at Cl. 11 (emphases added).

## THE ACCUSED MOTIVE PRODUCTS

49.    The Accused Motive Products generally relate to the field of IoT data-driven operations. The Accused Products include, without limitation, the Motive Cloud, the Motive Vehicle Gateway, the Motive Asset Gateway, the Motive Environmental Sensor, and the Motive Engine Immobilizer.

50.    As depicted below, Motive advertises an "integrated platform" with three main layers: "First are the Motive IoT devices which are designed and built from the ground up by Motive. Second are the broad set of AI-powered applications used to automate the management of physical operations. Third is our data platform which provides a shared, secure, and scalable foundation for [Motive's] connected IoT devices and AI-powered applications.[15]

---

[15]    Ex. 20, https://gomotive.com/content-library/guides/system-overview/.

51.    Motive's "integrated platform" supports the Motive Safety Hub, [16] Motive Fleet Dashboard,[17] and Motive Driver App[18] through which users can manage and view data collected from Motive's IoT devices.

52.    **The Motive Asset Gateway:** Motive released its Asset Gateway (shown below) in September 2019.[19, 20]

---

[16]  Ex. 21, https://helpcenter.gomotive.com/hc/en-us/articles/6162472353053-What-is-Safety-Hub.

[17]  Ex. 22, https://helpcenter.gomotive.com/hc/en-us/articles/6177150001565-How-to-log-in-and-log-out-of-Motive-website-Fleet-Dashboard; Ex. 23, https://helpcenter.gomotive.com/hc/en-us/articles/6189410468509-How-to-view-safety-events-on-Fleet-Dashboard.

[18]  Ex. 24, https://helpcenter.gomotive.com/hc/en-us/articles/6160873196573-How-to-download-the-Motive-Driver-App-and-sign-up-for-a-new-account.

[19]  Ex. 25, https://gomotive.com/blog/trailer-tracking-and-dual-facing-dash-cam-introducing/.

[20]  Ex. 26, https://gomotive.com/content-library/spec-sheet/asset-gateway/.

SAMSARA'S ANSWER TO AMENDED
COMPLAINT AND COUNTERCLAIMS                    16                    CASE NO. 24-CV-00902-JD

53.    Motive advertises its Asset Gateway as "monitor[ing] high value equipment and reefers, with solar power and cabled options for continuous tracking."[21]  According to Motive, the Asset Gateway includes a motion sensor as well as sensors for other data streams, including speed, battery level, and location.[22]  Motive also states that its Asset Gateway supports cellular connectivity and "[s]ecure data communication with server."[23]

54.    **The Motive Environmental Sensor:** Motive's Environmental Sensor (shown below) was released in 2022.[24, 25]

---

[21]    *Id.*

[22]    *Id.*

[23]    *Id.*

[24]    Ex. 27, https://gomotive.com/blog/motive-new-cold-chain-management-solution/; Ex. 28, https://gomotive.com/blog/motive-introduces-reefer-monitoring-for-cold-chain-logistics/.

[25]    Ex. 29, https://gomotive.com/content-library/spec-sheet/environmental-sensor/.



55.    Motive advertises its Environmental Sensor as a "wireless sensor that reports temperature and humidity measurements to the Motive Asset Gateway."[26]  The Environmental Sensor "connects to the Motive Asset Gateway Solar via Bluetooth, leveraging cellular connectivity for data transmission to the cloud," and Motive advertises that "customers can create an advanced multi-zone reefer monitoring solution by connecting up to six sensors to one Asset Gateway Solar."[27]

56.    **The Motive Engine Immobilizer:** Motive released its Engine Immobilizer (shown below) in spring/summer 2024.[28, 29]



---

[26]  *Id.*

[27]  Ex. 28, https://gomotive.com/blog/motive-introduces-reefer-monitoring-for-cold-chain-logistics/.

[28]  Ex. 30, https://gomotive.com/blog/spring-product-showcase-24-summary/; Ex. 31, https://gomotive.com/wp-content/uploads/2024/06/Motive_Spring_Product_Showcase_2024.pdf.

[29]  Ex. 32, https://gomotive.com/content-library/spec-sheet/engine-immobilizer/.

57.     According to Motive, the Engine Immobilizer supports "remote immobilization" from the Motive Fleet Dashboard[30] and is "designed to prevent the vehicle from starting without the correct key or authentication."[31]

58.     According to Motive, the Engine Immobilizer may be used with Motive's Vehicle Gateway.[32]  Motive advertises its Vehicle Gateway as using "built-in cellular connectivity to continuously sync driver and vehicle data with the Motive's Driver App and Fleet Dashboard" and including capabilities such as "live GPS tracking, real-time maintenance monitoring, and up-to-date compliance records."[33] Motive further advertises its Vehicle Gateway as "one part of Motive's integrated solution."[34]

59.     Motive has infringed and continues to infringe the Asserted Samsara Patents by, *inter alia*, importing, offering for sale, selling, distributing, and/or using at least the above Accused Products in the United States despite the knowledge that they infringe the Asserted Samsara Patents as, for example, set forth below and in Exs. 4–6.

60.     Motive has been on notice that it is infringing the Asserted Samsara Patents.  For example, on April 28, 2025, Samsara's Executive Vice President and Chief Legal Officer informed Motive's Chief Legal Officer that, *inter alia*, Motive was infringing the Samsara Asserted Patents.  *See* Ex. 33.   In addition, Motive has received further notice of its infringement of the Asserted Samsara Patents via the instant pleading and claim chart exhibits (Exs. 4–6).

## COUNT 1:  PATENT INFRINGEMENT

### (Infringement of the '685 Patent)

61.     Samsara repeats and re-alleges all of the above paragraphs as if fully set forth herein.

62.     The USPTO duly and legally issued the '685 Patent on May 7, 2024.

---

[30]  *Id.*

[31]  Ex. 34, https://helpcenter.gomotive.com/hc/en-us/articles/20154685008925-Will-the-Engine-Immobilizer-stop-the-vehicle-in-motion-when-activated.

[32]  Ex. 32, https://gomotive.com/content-library/spec-sheet/engine-immobilizer/.

[33]  Ex. 35, https://gomotive.com/content-library/spec-sheet/vehicle-gateway/.

[34]  *Id.*

63.    Motive has infringed, and continues to infringe, one or more claims of the '685 Patent, including at least claim 9, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, making, and/or using in the United States, a system covered by one or more claims of the '685 Patent.  The system consists at least of the Motive Engine Immobilizer, alone or in combination with the Motive Vehicle Gateway, including their use in combination with Motive's integrated platform.  As shown by illustrative example in the attached claim chart at Ex. 4, the Motive Engine Immobilizer, alone or in combination with Motive's Vehicle Gateway, meets all limitations of at least claim 9 of the '685 Patent.

64.    On September 16, 2024, Samsara alerted Motive of its infringement of the '685 Patent and requested that it cease infringing Samsara's patented technologies.  Motive did not cease its infringing activity(ies).  Samsara again requested that Motive cease its infringement of the '685 Patent on April 28, 2025.  Motive did not respond to that letter.  Motive has therefore had knowledge of the '685 Patent at least as of September 16, 2024, and, in any event, at least as the result of the filing and service of the Counterclaims in this action.

65.    In addition to directly infringing the '685 Patent, Motive has indirectly infringed the '685 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '685 Patent by at least using the infringing Motive Engine Immobilizer, including in conjunction with the Motive Vehicle Gateway. Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induces at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '685 Patent.  *See, e.g.*, Motive Engine Immobilizer Spec Sheet;[35] Motive Help Center, *Installation Guide: Engine Immobilizer*;[36] Motive Vehicle Gateway Spec Sheet.[37]  Motive performed the acts that constitute

---

[35]  Ex. 32, https://gomotive.com/content-library/spec-sheet/engine-immobilizer/.

[36]  Ex. 36, https://helpcenter.gomotive.com/hc/en-us/articles/19840062447005-Installation-Guide-Engine-Immobilizer.

[37]  Ex. 35, https://gomotive.com/content-library/spec-sheet/vehicle-gateway/.

inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '685 Patent.

66. Motive has also indirectly infringed the '685 Patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '685 Patent by others, including at least its customers, end users, and service providers that use the Motive Engine Immobilizer, including in conjunction with the Motive Vehicle Gateway. Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Engine Immobilizer, and offering the Motive Cloud to its customers for use with the Motive Engine Immobilizer, contribute to infringement of the '685 Patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '685 Patent, and are not staple articles of commerce suitable for substantial non-infringing use. Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '685 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

67. At least based on the notices that Samsara provided to Motive before filing the instant complaint, Motive's infringement of the '685 Patent has been willful and in reckless disregard of the '685 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct. Based on the notice of infringement that Motive received by way of the instant counterclaim, Motive's infringement of the '685 Patent continues to be willful and in reckless disregard of the '685 Patent, without any reasonable basis to believe that it had a right to engage in the infringing conduct.

68. Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.

69. Unless enjoined, Motive will continue to infringe the '685 Patent.

70. Due to Motive's infringing acts, Samsara has been and will be damaged in an amount to be determined at trial.

## COUNT 2: PATENT INFRINGEMENT

### (Infringement of the '706 Patent)

71. Samsara repeats and re-alleges all of the above paragraphs as if fully set forth herein.

72.     The USPTO duly and legally issued the '706 Patent on July 24, 2018.

73.     Motive has infringed, and continues to infringe, one or more claims of the '706 Patent, including at least claim 7, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, making and/or using in the United States, a management server device covered by one or more claims of the '706 Patent.  The management server device consists of at least one or more servers or other components on the Motive Cloud that run software developed and/or provided by Motive, including their use in combination with Motive's Asset Gateway(s) and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  As shown by illustrative example in the attached claim chart at Ex. 5, the aforementioned servers or components, alone or in combination with Motive's Asset Gateway(s) and wireless sensing devices (*e.g.*, Motive's Environmental Sensors), meet all limitations of at least claim 7 of the '706 Patent.

74.     Samsara alerted Motive of its infringement of the '706 Patent and requested that it cease infringing Samsara's patented technologies on April 28, 2025.  Motive did not respond to that letter.  Motive has therefore had knowledge of the '706 Patent at least as of April 28, 2025, and, in any event, at least as the result of the filing and service of the Counterclaims in this action.

75.     In addition to directly infringing the '706 Patent, Motive has indirectly infringed the '706 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '706 Patent by at least using the Motive Cloud in conjunction with Motive's Asset Gateways and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induces at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '706 Patent.  *See, e.g.*, Asset Gateway Spec Sheet;[38] Environmental Sensor Spec Sheet.[39]  Motive performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '706 Patent.

---

[38]   Ex. 26, https://gomotive.com/content-library/spec-sheet/asset-gateway/.

[39]   Ex. 29, https://gomotive.com/content-library/spec-sheet/environmental-sensor/.

76.     Motive has also indirectly infringed the '706 Patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '706 Patent by others, including at least its customers, end users, and service providers that use the Motive Cloud in conjunction with Motive's Asset Gateways and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Asset Gateway and Motive's Environmental Sensor, and making and offering the Motive Cloud for use by its customers,  contribute to infringement of the '706 Patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '706 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '706 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

77.     At least based on the notices that Samsara provided to Motive before filing the instant complaint, Motive's infringement of the '706 Patent has been willful and in reckless disregard of the '706 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct. Based on the notice of infringement that Motive received by way of this complaint, Motive's infringement of the '706 Patent continues to be willful and in reckless disregard of the '706 Patent, without any reasonable basis to believe that it had a right to engage in the infringing conduct.

78.     Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.

79.     Unless enjoined, Motive will continue to infringe the '706 Patent.

80.     As a consequence of the foregoing infringing activities by Motive, Samsara has been and will be damaged in an amount to be determined at trial.

## COUNT 3:  PATENT INFRINGEMENT

### (Infringement of the '041 Patent)

81.     Samsara repeats and re-alleges all of the above paragraphs as if fully set forth herein.

82.     The USPTO duly and legally issued the '041 Patent on August 20, 2024.

83.     Motive has infringed, and continues to infringe, one or more claims of the '041 Patent, including at least claim 11, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, and/or making or using in the United States, a gateway device covered by one or more claims of the '041 Patent.  The gateway device consists at least of Motive's Asset Gateway, including its use in combination with the Motive Cloud and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  As shown by illustrative example in the attached claim chart at Ex. 6, Motive's Asset Gateway, alone or in combination with the Motive Cloud and wireless sensing devices (*e.g.*, Motive's Environmental Sensors), meets all limitations of at least claim 11 of the '041 Patent.

84.     Samsara alerted Motive of its infringement of the '041 Patent and requested that it cease infringing Samsara's patented technologies on April 28, 2025.  Motive did not respond to that letter.  Thus, Motive has had knowledge of the '041 Patent at least as of April 28, 2025, and, in any event, at least as the result of the filing and service of the Counterclaims in this action.

85.     In addition to directly infringing the '041 Patent, Motive has indirectly infringed the '041 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '041 Patent by at least using Motive's Asset Gateway, including in conjunction with the Motive Cloud and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induces at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '041 Patent.  *See, e.g.*, Asset Gateway Spec Sheet;[40] Environmental Sensor Spec Sheet.[41]  Motive performed the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '041 Patent.

86.     Motive has also indirectly infringed the '041 Patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '041 Patent by others, including at least its

---

[40]   Ex. 26, https://gomotive.com/content-library/spec-sheet/asset-gateway/.

[41]   Ex. 29, https://gomotive.com/content-library/spec-sheet/environmental-sensor/.

customers, end users, and service providers that use the Motive Cloud in conjunction with Motive's Asset Gateways and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Asset Gateway and Motive's Environmental Sensor, and making and offering the Motive Cloud for use by its customers, contribute to infringement of the '041 Patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '041 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '041 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

87.     At least based on the notices that Samsara provided to Motive before filing the instant complaint, Motive's infringement of the '041 Patent has been willful and in reckless disregard of the '041 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct. Based on the notice of infringement that Motive received by way of this complaint, Motive's infringement of the '041 Patent continues to be willful and in reckless disregard of the '041 Patent, without any reasonable basis to believe that it had a right to engage in the infringing conduct.

88.     Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.

89.     Unless enjoined, Motive will continue to infringe the '041 Patent.

90.     As a consequence of the foregoing infringing activities by Motive, Samsara has been and will be damaged in an amount to be determined at trial.

## COUNT 4:  DECLARATORY JUDGMENT

### (Declaratory Judgment of Non-Infringement of the '580 Patent)

91.     Samsara repeats and re-alleges paragraphs 247–248 of Samsara's Answer as if fully set forth herein.

92.     As a result of at least the allegations contained in the FAC, an actual and justiciable controversy exists between Samsara and Motive concerning alleged infringement of the '580 patent by Samsara.

93.    Samsara incorporates by reference herein the allegations stated above in paragraphs 247–248 of Samsara's Second Affirmative Defense regarding no infringement of the '580 patent.

94.    Samsara has not infringed and does not currently infringe any asserted claim of the '580 patent, literally or under the doctrine of equivalents, directly or indirectly.  For example, with respect to asserted claim 1, the accused Samsara products do not perform any of the following limitations: (i) "identify[] one or more lines in the video using a predictive model, the one or more lines including a horizon line"; (ii) "comput[e] at least one camera parameter based on the one or more lines"; (iii) "overlay[] the one or more lines on the video to generate an overlaid video"; (iv) "transmit[] the overlaid video to an annotator device for manual review"; (v) "receiv[e] a confirmation from the annotator device, the confirmation indicating that the one or more lines are accurate;" and (vi) "transmit[] data representing the at least one camera parameter to the camera device."  In addition, asserted claim 1 recites a method that is performed not by or on a "camera device," and thus the accused Samsara Dash Cams (including the CM 31 and 32 models) cannot possibly practice any limitation of claim 1.

95.    Samsara is entitled to a judgment from this Court that it does not infringe any claim, including claim 1, of the '580 patent.

## COUNT 5:  DECLARATORY JUDGMENT

### (Declaratory Judgment of Invalidity of the '580 Patent)

96.    Samsara repeats and re-alleges paragraphs 251–256 of Samsara's Answer as if fully set forth herein.

97.    Due to at least the allegations contained in the FAC, an actual and justiciable controversy exists between Samsara and Motive concerning the validity of the '580 patent.

98.    Claim 1 of the '580 patent is invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112.

99.    Samsara incorporates by reference herein the allegations stated above in paragraphs 251–256 of Samsara's Fifth Affirmative Defense regarding invalidity of the '580 patent.

100.    Samsara is entitled to a judgment from this Court that the claims of the '580 patent, including claim 1, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

**PRAYER FOR RELIEF**

101.    Wherefore, Samsara requests entry of judgment in its favor and against Motive on all causes of action alleged herein, including as follows:

(A)    That Samsara has not infringed and does not currently infringe literally or under the doctrine of equivalents, directly or indirectly, any asserted claim of the '580 patent;

(B)    That the asserted claim(s) of the '580 patent, including claim 1, is(are) invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112;

(C)    That Samsara has not misappropriated and does not currently misappropriate any of Motive's alleged trade secrets under the Defend Trade Secrets Acts and/or the California Uniform Trade Secrets Act;

(D)    That the information Motive alleges to be trade secrets do not qualify as trade secrets under the Defend Trade Secrets Act and/or the California Uniform Trade Secrets Act;

(E)    That Samsara has not violated the Lanham Act, 15 U.S.C. § 1125(a);

(F)    That Samsara has not committed fraud;

(G)    That Samsara has not violated the California Unfair Competition Law (Cal. Civ. Code § 17200);

(H)    That Samsara has not committed defamation;

(I)    That Samsara has not committed intentional interference with Motive's prospective economic relations;

(J)    That Motive has infringed one or more claims of each of the Asserted Samsara Patents;

(K)    A permanent injunction restraining and enjoining Motive, and its respective officers, agents, servants, employees, attorneys, and those persons in active concert or participation with Motive who receive actual notice of the order by personal service or otherwise, from any further importation, offer for sale, sale, and/or use of Motive's infringing products

and/or services and any other infringement of the Asserted Samsara Patents, whether direct or indirect;

(L)     An award of damages to compensate Samsara for Motive's patent infringement, including damages pursuant to 35 U.S.C. § 284, including trebling of all damages with respect to Samsara's counterclaims for patent infringement (Counts 1–3 of Samsara's Counterclaims) due to Motive's willful infringement, as well as pre-judgment and post-judgment interest;

(M)     An award of reasonable attorneys' fees and costs, including Samsara's reasonable attorneys' fees pursuant to 35 U.S.C. § 285, the Lanham Act, the Defend Trade Secrets Act, the California Unfair Competition Law, and the California Uniform Trade Secrets Act;

(N)     A finding that this is an exceptional case, an award of treble damages due to Motive's deliberate conduct, and an order that Motive pay Samsara's costs of suit and attorneys' fees;

(O)     An award of pre-judgment and post-judgment interest; and

(P)     Such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

1    DATED: May 15, 2025                        Respectfully submitted,

2

3                                              */s/ Ellisen S. Turner, P.C.*
                                               Ellisen S. Turner, P.C. (SBN 224842)
4                                              Ali-Reza Boloori (SBN 271489)
                                               KIRKLAND & ELLIS LLP
5                                              2049 Century Park East
                                               Los Angeles, CA 90067
6                                              Telephone:    (310) 552-4200
                                               Facsimile:    (310) 552-5900
7                                              ellisen.turner@kirkland.com
                                               ali-reza.boloori@kirkland.com
8
                                               Joseph A. Loy, P.C. (*pro hac vice*)
9                                              Joshua L. Simmons, P.C. (*pro hac vice*)
                                               KIRKLAND & ELLIS LLP
10                                             601 Lexington Avenue,
                                               New York, NY 10022
11                                             Telephone:    (212) 446-4980
                                               Facsimile:    (212) 446-4900
12                                             jloy@kirkland.com
                                               joshua.simmons@kirkland.com
13
                                               Jeanne M. Heffernan, P.C. (*pro hac vice*)
14                                             KIRKLAND & ELLIS LLP
                                               401 Congress Avenue
15                                             Austin, TX 78701
                                               Telephone:    (512) 678-9100
16                                             Facsimile:    (512) 678-9101
                                               jheffernan@kirkland.com
17
                                               Karthik Ravishankar (*pro hac vice*)
18                                             KIRKLAND & ELLIS LLP
                                               1301 Pennsylvania Avenue N.W.
19                                             Washington, D.C. 20004
                                               Telephone:    (202) 389-5000
20                                             Facsimile:    (202) 389-5200
                                               karthik.ravishankar@kirkland.com
21
                                               *Attorneys for Defendant*
22                                             SAMSARA INC.

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2        Pursuant to Civil Local Rule 3-6 and Federal Rule of Civil Procedure 38(b), Samsara Inc. hereby

3   demands a trial by jury on all issues and claims triable by jury.

4

5    DATED: May 15, 2025                    Respectfully submitted,

6
                                          _/s/ Ellisen S. Turner, P.C._
7                                          Ellisen S. Turner, P.C. (SBN 224842)
                                          Ali-Reza Boloori (SBN 271489)
8                                          KIRKLAND & ELLIS LLP
                                          2049 Century Park East
9                                          Los Angeles, CA 90067
                                          Telephone:    (310) 552-4200
10                                         Facsimile:    (310) 552-5900
                                          ellisen.turner@kirkland.com
11                                         ali-reza.boloori@kirkland.com

12                                         Joseph A. Loy, P.C. (*pro hac vice*)
                                          Joshua L. Simmons, P.C. (*pro hac vice*)
13                                         KIRKLAND & ELLIS LLP
                                          601 Lexington Avenue,
14                                         New York, NY 10022
                                          Telephone:    (212) 446-4980
15                                         Facsimile:    (212) 446-4900
                                          jloy@kirkland.com
16                                         joshua.simmons@kirkland.com

17                                         Jeanne M. Heffernan, P.C. (*pro hac vice*)
                                          KIRKLAND & ELLIS LLP
18                                         401 Congress Avenue
                                          Austin, TX 78701
19                                         Telephone:    (512) 678-9100
                                          Facsimile:    (512) 678-9101
20                                         jheffernan@kirkland.com

21                                         Karthik Ravishankar (*pro hac vice*)
                                          KIRKLAND & ELLIS LLP
22                                         1301 Pennsylvania Avenue N.W.
                                          Washington, D.C. 20004
23                                         Telephone:    (202) 389-5000
                                          Facsimile:    (202) 389-5200
24                                         karthik.ravishankar@kirkland.com

25                                         *Attorneys for Defendant*
                                          SAMSARA INC.
26

27

28