## GT GreenbergTraurig

David S. Bloch
Tel 415.590.5110
blochd@gtlaw.com

June 27, 2025

**Via ECF**

The Honorable James Donato
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
Courtroom 11, 19th Floor
San Francisco, CA 94102

Re:  *Motive Technologies v. Samsara Inc., Case No. 3:24-cv-00902-JD*

Dear Judge Donato:

We write on behalf of Plaintiff Motive Technologies, Inc., pursuant to Paragraph 18 of Your Honor's Standing Order Regarding Civil Discovery, to seek the Court's assistance resolving a discrete issue concerning the protective order that will govern discovery in this case: the ability of in-house counsel to access information designated as Highly Confidential ("HC"). To prevent the inadvertent disclosure of "extremely sensitive" material by a direct competitor that created a website for publishing information about this and related lawsuits, Motive respectfully requests that both sides be precluded from sharing HC information with their in-house counsel. I certify that I conferred with counsel for defendant Samsara, Inc. pursuant to the Local Rules and the Court's Standing Order ¶ 18 on June 27, 2025—preceded by lengthy correspondence that resolved all issues save this one—but we were unable to resolve this last remaining dispute.

### Factual Background and Overview of the Dispute

Motive and Samsara are "direct competitors" in the vehicle fleet management industry. ECF 94 ¶ 166. The parties are embroiled in multiple litigations and arbitrations in which they accuse each other of infringing or misappropriating intellectual property. ECF 50 ¶¶ 2, 12. In this action, Motive alleges that Samsara engaged in a campaign to "to steal [its] trade secrets and intellectual property," "steal customers," and "misappropriate[] and imitate[e] Motive's superior technology." ECF 40 ¶¶ 9, 12. Based upon this and other conduct, Motive asserts claims against Samsara for violations of the Lanham Act, fraud, unfair competition, misappropriation of trade secrets, defamation, and intentional interference with prospective economic relations. ECF 40.

Samsara asserts three patent infringement counterclaims against Motive. ECF 94. Samsara alleges that Motive has a "culture of copying" and a "competitive mission" to "siphon Samsara's

**Greenberg Traurig, LLP | Attorneys at Law**

101 Second Street  |  Suite 2200  |  San Francisco, CA 94105-3668  |  T +1 415.655.1300  |  F +1 415.707.2010

Albany. Amsterdam. Atlanta. Austin. Berlin˘. Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London˙. Long Island. Los Angeles. Mexico City†. Miami. Milan˜. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Diego. San Francisco. Seoul˜. Shanghai. Silicon Valley. Singapore˜. Tallahassee. Tampa. Tel Aviv˙. Tokyo˜. Warsaw˜. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ˜Greenberg Traurig Germany, LLP; ˙A separate UK registered legal entity; ˙Greenberg Traurig, S.C.; ˙Greenberg Traurig Santa Maria; ˙Greenberg Traurig LLP Foreign Legal Consultant Office; ˙Greenberg Traurig Singapore LLP; ˙A branch of Greenberg Traurig, P.A., Florida, USA; ¤GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ˜Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

June 27, 2025
Page 2

leading innovations and copy them." ECF 94 at pp. 1-2. Samsara accuses Motive of "covertly accessing Samsara's platform" to steal its intellectual property. *Id*. at p. 1.

Samsara even created a website dedicated to disseminating information about its various lawsuits with Motive. *See* https://www.innovationprotection.com/motivelawsuit/.  Samsara's website states that Motive has committed "BRAZEN THEFT OF INTELLECTUAL PROPERTY" and engaged in "PERVASIVE FRAUD WITHIN LEADERSHIP TEAM," "A CULTURE BASED ON COPYING" and a "PATTERN OF THEFT." *Id*.[1] Samsara's website also includes a timeline with information about the lawsuits and purported frequently asked question, such as how "Motive's products or services infringe on Samsara's patents." *Id*.

To help safeguard their confidential information, the parties have been negotiating a stipulated [proposed] protective order for several weeks. The only remaining dispute between the parties concerns disclosure of HC information to in-house counsel. The redlines edits to the draft protective order filed herewith as **Exhibit A** shows the disputed provisions that Motive opposes. As reflected in Sections §§ 2, 7.3, and 7.4, Samsara proposes that up to three designated in-house counsel be permitted access to HC information, after the party seeking to disclose the HC information has made a written request to give the designated house counsel access and the opposing party has had an opportunity to object to the disclosure. If any such objection cannot be resolved following a meet-and-confer, the party seeking to disclose the HC information to the designated house counsel would then file a motion seeking permission to do so. Ex. A at § 7.4(c).

**<u>Disclosing HC Information to In-House Counsel Creates a Substantial, Unnecessary Risk</u>**

"Rule 26(c) of the Federal Rules of Civil Procedure authorizes courts to minimize the burden on a producing party by ordering 'that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.'" *Intel Corp. v. VIA Techs., Inc*., 198 F.R.D. 525, 527–28 (N.D. Cal. 2000). In evaluating whether a protective order should issue that prevents in-house counsel from accessing highly confidential information, the Ninth Circuit has instructed courts to balance "the risk of inadvertent disclosure of trade secrets to a competitor, against the risk . . . that protection of . . . trade secrets impaired prosecution [of the discovering party's] claims." *Id*. at 528 (quoting *Brown Bag Software v. Symantec Corp*., 960 F.2d 1465, 1470 (9th Cir. 1992)). "[B]ecause [Samsara] seeks disclosure of information that would otherwise be confidential, [Samara] bears the burden of establishing a sufficient need for the information which outweighs the risk of injury to [Motive]." *Intel Corp*., 198 F.R.D. at 528. Samsara cannot do so.

Here, the "concern for inadvertent disclosure is particularly acute" because the parties are "direct competitor[s]." *Adobe Sys. Inc. v. Davachi*, 2011 WL 2610170, at *4 (N.D. Cal. July 1, 2011). "The potential injury from inadvertent disclosure of [Motive] trade secrets in this case would be great, because the information could be used to duplicate [Motive] products, compete

---

[1] Samsara's false claims on its website serve as the basis for Motive's defamation claim. ECF 40 ¶¶ 129-135, 219-232. In an attempt to mitigate the harm caused by Samsara's false statements, Motive created its own website (https://www.truthandsafety.com/) to correct the record.

June 27, 2025
Page 3

for its customers, or interfere with its business plan and thereby gain a competitive advantage in the marketplace." *Intel Corp.*, 198 F.R.D. at 531. "[I]n-house counsel who is exposed to a competitor's confidential information often cannot simply forget" what they learned. *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, 2010 WL 3629830, at *2 (N.D. Cal. Sept. 14, 2010). As a result, "the good-faith assurances of an ethical counsel are insufficient on their own to safeguard the inadvertent disclosure of trade secrets." *Adobe Sys.*, 2011 WL 2610170, at *4.

One of the protective order's "Basic Principles" is that protected information disclosed during discovery may be used for "this action" only and "no other purpose." Ex. A at § 7.1. Yet, here, the parties' in-house counsel manage several other litigations involving sometimes overlapping and duplicitous claims. *See, e.g.*, ECF 85 (staying Samsara patent infringement claims pending resolution of ITC investigation and Samsara tort claims pending JAMS arbitration). Courts have declined to give in-house counsel access to HC information in situations where it "might be valuable to other litigation" involving the disclosing party. *Adobe Sys.*, 2011 WL 2610170, at *5; *see also Shared Memory Graphics, LLC v. Apple, Inc.*, 2010 WL 4704420, at *1(N.D. Cal. Nov. 12, 2010) ("alleged infringer's confidential information could be of value" to entity in business of enforcing intellectual property).

"Participation in 'competitive decision making' [also] increases the risk of inadvertent disclosure." *Intel Corp.*, 198 F.R.D. at 530. As discussed above, Samara made the competitive decision to create a website to publish information about the Motive lawsuits. Given Samsara's website purports to provide a litany of information about the lawsuits—such as the "outcomes" Samsara seeks, Samsara's reasons for "fil[ing] another lawsuit at the ITC," "the unfair practices [alleged by] Samsara," the patents asserted by Samsara, how Motive allegedly infringes those patents, and "specific examples of Motive's [alleged false] advertising—it presumably was prepared with the assistance of Samsara's counsel that has involvement in the lawsuits.[2] Where, as here, counsel has been involved in a party's competitive decision making, "courts generally deny that counsel access" to HC information. *Adobe Sys.*, 2011 WL 2610170, at *3.

A bilateral protective order that precludes both sides' in-house counsel from accessing HC information will not meaningfully impair the parties' ability to prosecute their claims. Samsara "has competent outside counsel that has been involved in this case from the outset." *Pinterest, Inc. v. Pintrips, Inc.*, 2014 WL 5364263, at *3 (N.D. Cal. Oct. 21, 2014). "Requiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden." *Id.* (quoting *Intel Corp.*, 198 F.R.D. at 529). Samsara's preference "to closely supervise its outside counsel" is "insufficient to justify risking the inadvertent disclosure of [Motive's] attorneys' eyes only information." *Pinterest*, 2014 WL 5364263, at *3.

Yours very truly,

*/s/ David S. Bloch*

David S. Bloch
Attorney for Plaintiff Motive Technologies, Inc.

---

[2] *See* https://www.innovationprotection.com/motivelawsuit/.