David S. Bloch (SBN CA 184530)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.590.5110
Facsimile: 415.707.2010
blochd@gtlaw.com

[*Additional submitting counsel on signature page*]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTIVE TECHNOLOGIES, INC, | CASE NO. 3:24-cv-00902-JD |
| Plaintiff, | **PLAINTIFF MOTIVE'S OPPOSITION TO DEFENDANT SAMSARA'S MOTION FOR PARTIAL STAY** |
| v. | |
| SAMSARA INC., | Judge:        Hon. James Donato |
| Defendant. | Courtroom:    Courtroom 11, 19th Floor |
| | Hearing Date: January 8, 2026 |
| | Hearing Time: 10:00 a.m. |
| And related cross-action. | |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................. 1

II.     BACKGROUND ................................................................................................................... 2

III.    LEGAL STANDARD ........................................................................................................... 3

IV.     ARGUMENT ........................................................................................................................ 4

        i.      Samsara's Belated IPR Filing Demonstrates Tactical Delay.................................. 9

        ii.     Samsara's Tardiness in Moving to Stay Substantially Prejudices Motive ............ 10

        iii.    Only One Out of Six Asserted Patents Has Been Instituted for IPR ..................... 11

        iv.     Motive Will be Harmed If Its Direct Competitor is Allowed to Delay the
                Case While Continuing to Infringe ....................................................................... 11

V.      CONCLUSION ................................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Advanced Analogic Techs., Inc. v. Kinetic Techs., Inc.*,
  2009 WL 4981164 (N.D. Cal. Dec. 15, 2009) ................................................................. 5

*Affinity Labs of Texas v. Apple Inc.*,
  2010 WL 1753206 (N.D. Cal. Apr. 29, 2010) ............................................................... 10

*Asetek Holdings, Inc v. Cooler. Master Co.*,
  2014 WL 1350813 (N.D. Cal. Apr. 3, 2014) ................................................................. 12

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
  2011 WL 3267768 (N.D. Cal. July 28, 2011) ............................................................... 12

*Bd. of Trs. of Leland Stanford Junior Univ. v. Stanford Fin. Grp. Co.*,
  2009 WL 10700035 (N.D. Cal. Feb. 3, 2009) ............................................................... 12

*Capella Photonics, Inc. v. Cisco Sys.*,
  2014 U.S. Dist. LEXIS 147258 (N.D. Cal. Oct. 14, 2014) .............................................. 7

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
  2007 WL 1052883 (N.D. Cal. Apr. 5, 2007) ................................................................... 4

*Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.,*
  2020 WL 2084674 (C.D. Cal. Jan. 13, 2020) ............................................................... 10

*Entangled Media, LLC v. Dropbox Inc.*,
  732 F. Supp. 3d 1120 (N.D. Cal. 2024) .............................................................. 4, 7, 8, 9

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) ...................................................................................... 4

*Everlight Elecs. Co. v. Bridgelux, Inc.*,
  2018 WL 5606487 (N.D. Cal. Sept. 14, 2018) ............................................................... 3

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
  2014 WL 4802426 (N.D. Cal. Sept. 26, 2014) ......................................................... 7, 11

*Fulfillium, Inc. v. ReShape Med., LLC*,
  2018 WL 9848044 (C.D. Cal. June 4, 2018) ............................................................. 6, 13

*Gould, Inc. v. United States*,
  579 F.2d 571 (Ct. Cl. 1978) ............................................................................................ 8

*Haptic, Inc. v. Apple, Inc.*,
  2024 U.S. Dist. LEXIS 211402 (N.D. Cal. Nov. 20, 2024) ............................................. 3

*IMAX Corp. v. In-Three, Inc.*,
  385 F. Supp. 2d 1030 (C.D. Cal. 2005) ............................................................... 6, 13

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.*,
  2017 WL 1316549 (N.D. Cal. Apr. 10, 2017) ........................................................ 10

*JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*,
  2020 WL 6203555 (C.D. Cal. Oct. 19, 2020) ........................................................ 11

*Jiaxing Super Lighting Elec. Appliance Co. v. MaxLite, Inc.*,
  2020 WL 5079051 (C.D. Cal. June 17, 2020) ........................................................ 10

*Kearns v. Gen. Motors Corp.*,
  94 F.3d 1553 (Fed. Cir. 1996) ................................................................................ 8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ................................................................................................ 3

*LBT IP II LLC v. Uber Techs. Inc.*,
  2023 WL 322894 (N.D. Cal. Jan. 19, 2023) ........................................................... 5

*LELO, Inc. v. Standard Innovation (US) Corp.*,
  2014 WL 2879851 (N.D. Cal. June 24, 2014) ......................................................... 5

*Netlist, Inc. v. Smart Storage Sys., Inc.*,
  2014 WL 4145412 (N.D. Cal. Aug. 21, 2014) ....................................................... 10

*Nike, Inc. v. Skechers U.S.A., Inc.*,
  2020 WL 8512299 (C.D. Cal. Dec. 30, 2020) .................................................... 5, 10

*OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*,
  2018 WL 1989561 (N.D. Cal. Jan. 19, 2018) ......................................................... 4

*PersonalWeb Techs., LLC v. Apple Inc.*,
  69 F. Supp. 3d 1022 (N.D. Cal. 2014) ................................................................... 4

*Realtime Adaptive Streaming LLC v. Google LLC*,
  2019 WL 13039329 (C.D. Cal. May 6, 2019) ......................................................... 9

*Samsung Elecs. Co. v. Blaze Mobile, Inc.*,
  2022 WL 103552 (N.D. Cal. Jan. 11, 2022) .......................................................... 11

*Space Data Corp. v. Alphabet Inc.*,
  2019 WL 1131420 (N.D. Cal. Mar. 12, 2019) .................................................. 6, 8, 13

*Tech. Licensing Corp. v. Thomson, Inc.*,
  684 F. Supp. 2d 1206 (E.D. Cal. 2010) ................................................................. 13

*TPK Touch Sols., Inc v. Wintek Electro-Optics Corportation*,
  2013 WL 5289015 (N.D. Cal. Sept. 18, 2013) ...................................................... 12

*Uniloc USA Inc v. LG Elecs. U.S.A. Inc.*,
    2019 U.S. Dist. LEXIS 72002 (N.D. Cal. Apr. 29, 2019) ....................................................... 7

**Federal Statutes**

35 U.S.C. § 101 ....................................................................................................................... 2

35 U.S.C. §§ 313-314 ...................................................................................................... 3, 11

35 U.S.C. § 315(b) ................................................................................................................. 3

35 U.S.C. § 316(a)(11) ..................................................................................................... 3, 11

## I.    **INTRODUCTION**

Samsara asks this Court to stay a complex, hard-fought case that has been litigated for nearly two years—based on a single, recently instituted IPR and two pending IPR petitions that (even if instituted and ultimately successful) would not even resolve all the *patent* claims in this case, much less all the claims asserted by the parties. That request should be denied.

This action involves thirteen claims between direct competitors including six patent infringement claims or counterclaims (three by each side) and seven non-patent claims. The Court has already lifted a prior stay, entered a comprehensive Scheduling Order, and set this case on a firm path to trial in August 2027. ECFs 85, 115. The parties have exchanged infringement and invalidity contentions under the Patent Local Rules and the claim construction process is underway.

On the last day of the one-year statutory window, Samsara filed its IPR petition on the '580 patent and did not seek a stay while the parties negotiated a case schedule and trial date. The two later challenges, on the '243 and '276 patents, remain at the petition stage; institution is uncertain and, even if granted, any final written decisions and ensuing appeals would not issue until years after the current trial date.

Nor would a stay streamline this litigation. All of Motive's patent claims, Samsara's patent counterclaims, and Motive's non-patent claims arise from overlapping products, technologies, and witnesses and are already proceeding under a unified schedule. Staying only Motive's patent claims and allowing Samsara's patent counterclaims to go forward would not eliminate the need for the patent-related events that remain on the schedule: construction disclosures and briefing, a *Markman* hearing, expert discovery, pretrial motions, and trial will all still take place regardless of the outcome of Samsara's IPR petitions. Worse, barring a complete victory by Samsara in the IPRs, if a stay issues now all of those undertakings would need to take place twice.

The prejudice to Motive would be substantial. Motive and Samsara compete head-to-head in the marketplace. Samsara continues to sell the accused products and profit from the conduct Motive challenges while seeking to delay adjudication of Motive's claims for several more years. Meanwhile, Samsara's own patent claims would continue to move toward trial under the existing schedule. Motive should not be denied a timely resolution of its claims or forced into piecemeal litigation.

Because the stage of this litigation, the speculative and limited nature of any potential simplification,

1   and the severe prejudice to Motive all weigh heavily against a stay, Samsara's motion should be denied.

2   **II.     BACKGROUND**

3       Motive filed this action on February 15, 2024, asserting claims against Samsara for infringement of

4   U.S. Patent No. 11,875,580 (the "'580 patent"), violations of the Lanham Act, fraud, violation of

5   California's Unfair Competition Law, misappropriation of trade secrets under both the California Uniform

6   Trade Secrets Act and the federal Defend Trade Secrets Act, defamation, and intentional interference with

7   prospective economic relations. ECF 1.

8       On May 6, 2024, in response to Samsara's Rule 12 motion, Motive filed its First Amended

9   Complaint, adding further detail regarding former Motive employees' breaches of their confidentiality

10  obligations, identifying specific defamatory statements made by Samsara, and naming additional companies

11  that selected Samsara over Motive based on Samsara's false statements. ECF 40. Samsara moved to dismiss

12  all claims, including a challenge to the '580 patent under 35 U.S.C. § 101.  ECF 49. Less than a month later,

13  on June 4, 2024, the Court stayed the action in light of related proceedings in the District of Delaware and

14  in private arbitration. ECF 52. On March 31, 2025, the Court granted Motive's unopposed motion to lift the

15  stay. ECF 85. Within weeks of the stay being lifted (and well before the parties' stipulated deadline to amend

16  pleadings), on May 29, Motive filed a motion to further amend its Complaint to assert additional patents

17  that issued during the stay. *See* ECFs 96, 115. That same month, Samsara filed its counterclaims, asserting

18  infringement of U.S. Patent Nos. 11,975,685 (the "'685 patent"), 10,033,706 (the "'706 patent"), and

19  12,069,041 (the "'041 patent"). ECF 94. Motive timely moved to dismiss these patent counterclaims on the

20  ground that they are directed to ineligible subject matter under 35 U.S.C. § 101. ECF 97.

21      On July 9, 2025, with leave of Court, Motive filed its Second Amended Complaint, asserting claims

22  for infringement of U.S. Patent Nos. 12,136,276 (the "'276 patent") and 12,062,243 (the "'243 patent").

23  ECF 107.  On July 23, Samsara moved to dismiss Motive's '276 and '243 patents under § 101. ECF 112.

24  All of these fully briefed *Alice* motions remain pending before the Court.

25      On August 8, 2025, the Court entered a Scheduling Order setting, among other deadlines: the close

26  of claim construction discovery for February 19, 2026; the *Markman* hearing for April 16, 2026; the close

27  of fact discovery for July 24, 2026; and trial for August 30, 2027. ECF 115. Pursuant to the Scheduling

28  Order and the Patent Local Rules, the parties served infringement contentions (October 2, 2025), invalidity

contentions (November 18), and exchanged claim terms for construction (December 3). Additional claim construction disclosures are underway.

### III.  LEGAL STANDARD

#### a.  *Inter Partes* Review

A patent defendant must file an IPR petition within one year of being served with the complaint. 35 U.S.C. § 315(b). Once an IPR petition has been filed, the Director of the U.S. Patent and Trademark Office has six months to decide whether to institute IPR proceedings. 35 U.S.C. §§ 313-314.[1] *If* review is instituted, the PTAB will take another full year to render a decision—unless the PTAB chooses to extend that deadline by an additional six months. 35 U.S.C. § 316(a)(11).

#### b.  Motion to Stay

To obtain a stay, Samsara "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to [someone] else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

"In deciding whether to stay a case, courts must 'weigh [the] competing interests' of 'economy of time and effort for itself, for counsel, and for litigants' and 'maintain an even balance.'" *Haptic, Inc. v. Apple, Inc.*, 2024 U.S. Dist. LEXIS 211402, at *4 (N.D. Cal. Nov. 20, 2024). "Courts often consider the following in guiding this balancing exercise: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court." *Id*. (citation omitted). But "[t]he inquiry regarding whether a stay is appropriate in any particular instance is not limited to these three factors, but rather the totality of the circumstances governs." *Everlight Elecs. Co. v. Bridgelux, Inc*., 2018 WL 5606487, at *4 (N.D. Cal. Sept. 14, 2018) (citations and quotes omitted).

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). And a court is "under no obligation to delay its own proceedings by yielding to ongoing PTAB patent [proceedings]." *OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*,

---

[1] Effective October 20, 2025, the Director will determine whether to institute an IPR or PGR proceeding. *See* https://www.uspto.gov/sites/default/files/documents/open-letter-and-memo_20251017.pdf.

3

2018 WL 1989561, at *1 (N.D. Cal. Jan. 19, 2018). Circumstances often weigh against a stay, because "'[i]f litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner." *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007).

## IV.   ARGUMENT

### a.    The Stage of This Action Weighs Against Stay

"First, the Court looks to the question of whether litigation has progressed significantly enough for a stay to be disfavored. In weighing this factor, courts examine the posture and circumstances of each case on an individual basis." *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014). This case has advanced substantially since its filing on February 15, 2024. The parties have spent more than one year and nine months litigating their disputes—including during the nine-month period during which the case was stayed. The Court entered a Scheduling Order setting a trial date long before Samsara filed the present motion. ECF 115. Pursuant to that scheduling order, the parties already served infringement and invalidity contentions, and exchanged proposed claim terms for construction.  Additional claim construction disclosures are underway.

The parties also have invested significant resources in motion practice and discovery. They have agreed to all case management deadlines—including a trial date—and have filed competing dispositive motions. Beyond that, they have exchanged 264 requests for production, 33 interrogatories, and well over a dozen third-party subpoenas, produced more than 20,000 pages of documents, and conducted numerous source code inspections (on both sides). This case is well past the early, pre-contentions stage.

Courts find that circumstances such as these weigh against a stay. *Entangled Media, LLC v. Dropbox Inc.*, 732 F. Supp. 3d 1120, 1125 (N.D. Cal. 2024) ("the Court had already heard arguments on a dispositive motion and set a case schedule with a trial date, and the parties had engaged in significant discovery and started the claims construction process. The Court no longer considers this case to be in its 'infancy.'"); *Nike, Inc. v. Skechers U.S.A., Inc*., 2020 WL 8512299, at *1 (C.D. Cal. Dec. 30, 2020) ("staying litigation is not warranted under these circumstances. … Although a trial date has not been set, … significant activity has occurred and will shortly occur. … Defendant emphasized its argument that the case is still at an early stage in the proceedings, noting that no depositions have been taken, no expert reports have been submitted,

and no motions have been filed. The lack of significant activity is an important factor to consider, but the persuasive value of this argument is undermined by the fact that the parties (1) have already exchanged patent contentions … and (2) are currently engaged in claim construction … . By the time the PTAB decides whether to institute IPR, the parties will have already made several exchanges and completed a claim construction hearing.").

The cases Samsara relies on to argue that this matter is in its "early stages" are inapposite. In *LELO*, the complaint had been filed only two months before the court granted a stay. *LELO, Inc. v. Standard Innovation (US) Corp.*, 2014 WL 2879851 (N.D. Cal. June 24, 2014). In *Advanced Analogic Technologies*, the complaint had been filed only nine months before the stay was granted. *Advanced Analogic Techs., Inc. v. Kinetic Techs., Inc.*, 2009 WL 4981164 (N.D. Cal. Dec. 15, 2009). Here, by contrast, this case will have been pending for nearly two years by the time Samsara's motion is heard. Samsara filed its challenge against the '580 patent nearly a full year after it was sued (*compare* ECF 1 *with* IPR2025-00574), and its challenges to the '276 and '243 patents were filed 3 and 4 months after amendment, respectively (*compare* ECF 107 *with* IPR2026-00034 and IPR2026-00108).

Samsara's reliance on *LBT* is likewise misplaced. In *LBT*, no trial date had been set, and the court found no prejudice because the parties were not direct competitors. *LBT IP II LLC v. Uber Techs. Inc.*, 2023 WL 322894, at *3 (N.D. Cal. Jan. 19, 2023). Here, by Samsara's own admission, Motive and Samsara are direct competitors. *See* ECF 147 at 15. That distinction matters, because direct competition significantly heightens prejudice and weighs heavily against granting a stay—as discussed further below.

In sum, the procedural posture of this case—nearly two years of litigation, extensive discovery and motion practice, exchanged contentions, and claim construction underway—strongly weighs against granting a stay.

### b.    Samsara's Simplification Arguments Lack Merit

This action involves thirteen claims: three patent claims and seven non-patent claims asserted by Motive, and three patent counterclaims asserted by Samsara.[2] Of the six patents at issue, the PTAB has instituted IPR on only one. Samsara did not file IPR petitions on the '243 and '276 patents until October and November 2025, and institution decisions concerning those petitions are not expected until April or

---

[2] Samsara also filed declaratory judgment counterclaims concerning Motive's asserted patents.

May 2026. Samsara's suggestion that a single instituted IPR and two still-pending IPR petitions—none of which will reach an institution decision for months—will "significantly simplify the issues" is both incorrect and speculative. ECF 147 at 10.

Critically, even *if* (i) the PTAB grants all of Samsara's IPR petitions, (ii) Samsara prevails in invalidating all the asserted claims, *and* (iii) the PTAB's decisions hold up on appeal, that still would not even resolve all the patent claims in this case, much less the seven additional non-patent claims. No matter what happens as a result of the one instituted IPR and two pending IPRs, the parties will have to complete claim construction disclosures and briefing, the Court will need to conduct a *Markman* hearing and issue a claim construction order, continued fact and expert discovery on patent issues will take place, and patent claims will be the subject of pretrial proceedings and trial. And barring a complete victory by Samsara before the PTAB and Federal Circuit, all of those events will need to take place *twice*, in which case a stay will multiply rather than simplify the proceedings. To avoid such duplicative, piecemeal litigation, courts often decline to stay cases that involve additional patents or non-patent claims not at issue in the parallel USPTO proceedings. *See, e.g., Space Data Corp. v. Alphabet In*c., 2019 WL 1131420, at *7-8 (N.D. Cal. Mar. 12, 2019) ("Indeed, staying the '706 patent would have no effect on the '193 patent infringement claim, the DTSA and CUTSA trade secret claims, or the breach of contract claim. In other words, the parties are set to try this action in August 2019 and the principals and numerous witness are set to appear irrespective of whether the '706 patent is stayed. …Thus, staying the '706 patent also poses a risk of wasted resources as the Court would have to reconvene the parties and witnesses at a later date if the asserted claims of the '706 patent survive IPR."); *Fulfillium, Inc. v. ReShape Med., LLC*, 2018 WL 9848044, at *2 (C.D. Cal. June 4, 2018) ("courts have found stay unwarranted in cases involving several claims unrelated to patent infringement") (vacated on other grounds); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032-33 (C.D. Cal. 2005) (denying motion to stay because of the "myriad" of non-patent claims and counterclaims that would remain unresolved if patent at issue was reexamined).

Further increasing the potential inefficiencies of a stay, there is a substantial overlap in witnesses, products, and technologies between the Motive patent claims that Samsara seeks to stay and the ten remaining patent and non-patent claims that will move forward either way. Both parties are direct competitors accusing the other of patent infringement of similar products in the fleet management market.

*Compare* ECF 94 ¶¶ 15-25, 49-60 *with* ECF 107 ¶¶ 29-42, 171. This similarity in products means that, if this case was bifurcated into two lawsuits, witnesses would be deposed and documents produced twice. Samsara's patent claims would require both parties to bring forward witnesses and documents that explain how their dashcam technology works in order to assess Samsara's infringement claims and Motive's non-patent claims. Then, months or years later, the same would apply in Motive's infringement lawsuit: both parties would have to bring forward the same witnesses and documents to explain how their dashcam technology works to assess Motive's patent claims. Against this backdrop, the cases Samsara relies upon are distinguishable: None involved both patent and non-patent claims and the *Dialect*, *Brightex*, and *Evolutionary* cases also lacked any patent counterclaims. *Compare Topia Tech* (ECF 147 at 11), *Dialect* (*id*.), *Brightex* (*id*. at 12), *Evolutionary* (*id*. at 13), *Sonics* (*id*. at 13), *Columbia* (*id*. at 14).

Even as to the three (of thirteen) claims that could be impacted by the IPRs, the potential for simplification is speculative. The PTAB only instituted one of Samsara's IPR petitions, with the other institution decisions not expected for months. Courts have consistently held that simplification is too conjectural where the PTAB has not yet taken action. *Capella Photonics, Inc. v. Cisco Sys.*, 2014 U.S. Dist. LEXIS 147258, at *5 (N.D. Cal. Oct. 14, 2014) (a "majority of courts ... have denied stay requests when the PTAB has not yet acted on the [IPR] petition for review") (citation omitted); *Entangled Media*, 732 F. Supp. 3d at 1124 ("Courts frequently find that 'any simplification of the issues is speculative because the PTAB has not yet instituted review' and have denied motions to stay on that ground."); *Uniloc USA Inc v. LG Elecs. U.S.A. Inc.*, 2019 U.S. Dist. LEXIS 72002, at *10 (N.D. Cal. Apr. 29, 2019) ("Courts, including this one, have recognized that 'the filing of an IPR request by itself does not simplify the issues in question and trial of the case. Ultimately, the PTO may not institute IPR proceedings.'"). Courts have "no obligation to stay proceedings pending parallel litigation in the PTAB." *Space Data Corp.*, 2019 WL 1131420, at *1.

Samsara contends that "the IPRs stand to eliminate Motive's patent infringement case entirely," relying on an asserted statistic that "63% of patents addressed in a Final Written Decision had all claims invalidated." ECF 147 at 11. But the data it cites is outdated—the report in question contains information through the end of Fiscal Year 2025 (September 2025), meaning it overwhelmingly covers a period before the new USPTO Director took office on September 22, 2025. More recent USPTO data shows an institution rate of only **23%** for "Electrical/Computer" patents. Declaration of Yang Liu ¶ 2, Ex. A. Recent analyses

of institution decisions under the new Director reflect that only **four** IPR petitions have been instituted since he assumed office, having "rejected all of the nearly 100 petitions that reached his desk." *Id*. ¶ 3, Ex. B. This is nowhere close to demonstrating that the IPRs will meaningfully simplify, let alone "eliminate," any issues in this case.

Second, generalized statistics—in whatever form—say nothing about the specific merits of the '580 patent, and even less about the '243 and '276 patents, neither of which has even reached the institution stage. Such broad PTAB statistics provide no basis for predicting case-specific outcomes. *Entangled Media*, 732 F. Supp. 3d at 1124 ("relying on general statistics about the PTAB's rate of instituting claims and finding claims unpatentable, Dropbox predicts that the PTAB 'is likely to institute some or all of Dropbox's IPR petitions.' … [T]hat general prediction—untethered from the specific facts of this case— provides little guidance.").

Samsara also argues that the '276 petition is likely to be instituted simply because of its "close relationship" to the '580 patent. ECF 147 at 11. But the '580 and '276 patents *necessarily* claim different inventions. *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1556 (Fed. Cir. 1996) ("each patent, by law, covers a[n] independent and distinct invention"). Indeed, every *claim* in a patent represents a different invention. *Gould, Inc. v. United States*, 579 F.2d 571, 576 (Ct. Cl. 1978) ("It is also important to keep in mind that each claim of a patent is a separate and distinct invention."). The fact that the USPTO instituted IPR on the '580 patent says nothing about whether it will institute review on the '276 patent. If anything, because they claim different inventions, the fact that IPR on one patent was instituted based on a particular reference makes it **less** likely—as a matter of logic—that the same reference would invalidate a different invention.

Samsara's argument regarding the '243 petition likewise fails. ECF 147 at 11. Samsara asserts that shared inventors and "similar subject matter" increase the likelihood of institution. But patents having the same inventor or general subject matter does not make them the same invention; each was examined independently by the USPTO and issued only after a complete and separate review. Samsara's speculation is insufficient to warrant a stay.

Samsara further claims that "even if any asserted claims ultimately survive, the IPRs will still narrow the issues" and potentially add to the prosecution history. ECF 147 at 12-13. But the former argument presumes—without any basis—that all petitions will be instituted and that at least some claims will be

canceled. And the specter that failed IPRs may nonetheless generate additional prosecution history that can be considered when the parties and the Court have to redo discovery, claim construction proceedings, pretrial proceedings, and trial only highlights the downside of the requested stay.

Finally, although by law the instituted '580 IPR will estop Samsara from raising with the Court challenges it could have raised in the IPR, Samsara has not stipulated to a similar estoppel for the '243 and '276 patents. *See* ECF 147 at 13. Samsara's failure to expressly affirm to the Court that it will accept estoppel for these petitions—instituted or not—weighs against a stay. *See Realtime Adaptive Streaming LLC v. Google LLC*, 2019 WL 13039329, at \*3 (C.D. Cal. May 6, 2019) ("the fact that Adobe … does not agree to be bound by the full statutory estoppel provisions … against the asserted patents, strongly warrants against a stay.").

### c.    Motive Will Face Undue Prejudice If the Court Stays Motive's Patent Claims

When evaluating whether a stay would prejudice or create a clear tactical disadvantage to the patentee, courts consider "(1) the timing of the petition for review; (2) the timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of the parties." *Entangled Media,* 732 F. Supp. 3d at 1124. All of these factors weigh against a stay here.

### i.    Samsara's Belated IPR Filing Demonstrates Tactical Delay

Samsara's late IPR filings suggest an attempt to gain a tactical advantage in this litigation. The '580 patent—the only patent for which an IPR has been instituted—was asserted on February 15, 2024. Yet Samsara waited until February 14, 2025, the eve of the statutory deadline, to file its IPR petition. *See* IPR2025-00574.

Courts routinely deny stays in the face of such delays because "[c]ourts expect accused infringers to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them." *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, 2017 WL 1316549, at \*3 (N.D. Cal. Apr. 10, 2017) (internal quotations omitted); *accord*, *Affinity Labs of Texas v. Apple Inc.*, 2010 WL 1753206, at \*2 (N.D. Cal. Apr. 29, 2010) ("Affinity sued Apple in March, 2009 … Apple then waited until November, 2009 to file its request for an *inter partes* reexamination and, once that request was granted in February, 2010, it waited another seven weeks to file the instant motion to stay. Overall, these significant delays weigh heavily against granting the stay."); *Nike*, 2020 WL 8512299, at \*1 ("Defendant waited almost

9

a year after it was served with the Complaint to file its IPR petitions. ... Defendant's delay in filing its IPR petitions also weighs against granting a stay"); *Ellison Educ. Equip., Inc. v. Stephanie Barnard Designs, Inc.,* 2020 WL 2084674 (C.D. Cal. Jan. 13, 2020), at *2 ("The timing of the request for review—eleven months after the parties and the Court set dates for this action—and the fact that IPR has not yet been instituted both strongly suggest that a stay should not be granted. As such, the Court is unwilling to disturb its own calendar or subject Plaintiff to additional, perhaps extensive delays by staying this case."); *Jiaxing Super Lighting Elec. Appliance Co. v. MaxLite, Inc.*, 2020 WL 5079051, at *4 (C.D. Cal. June 17, 2020) ("Because Defendant initiated IPR proceedings relatively recently, granting a stay pending those proceedings would create a lengthy delay.").

Here, nearly 22 months have passed since the '580 patent was asserted. Had Samsara acted expeditiously, the PTAB would likely have issued a Final Written Decision by now. This is precisely the type of delay that weighs against a stay. *See, e.g., Netlist, Inc. v. Smart Storage Sys., Inc*., 2014 WL 4145412, at *3 (N.D. Cal. Aug. 21, 2014) ("The Court [] notes that Defendants have not explained adequately their delay in seeking inter partes review. This action has been pending for over a year. Had Defendants acted expeditiously in seeking review, the Court would have received an indication by now as to whether the PTO would institute the review process. The timing of Defendants' requests raises concerns that the delay was for strategic purposes only.").

Samsara attempts to shift blame to Motive for later adding the '276 and '243 patents in July 2025. But Motive's amendment was timely under the parties' stipulation, and the Court found good cause to permit it. *See* ECF 90 at 2; ECF 106. Motive's proper amendment had no bearing on Samsara's delay in pursuing an IPR. And even with respect to the '243 and '276 patents, Samsara waited 3-4 months before filing its IPR petitions and then several more weeks after that to file its stay request.

### ii.    Samsara's Tardiness in Moving to Stay Substantially Prejudices Motive

As discussed above, Samsara's motion comes nearly 22 months into this litigation—after the parties consolidated their claims, after the Court set a unified schedule covering all patent and non-patent claims, after the exchange of tens of thousands of documents and the service of patent contentions, and squarely in the middle of claim construction. Delaying trial or bifurcating after the case has progressed through pleadings, amendments, discovery, claim construction, and scheduling is inconsistent with Motive's right

1    to prompt enforcement of its IP rights. *See Samsung Elecs. Co. v. Blaze Mobile, Inc*., 2022 WL 103552, at

2    *4 (N.D. Cal. Jan. 11, 2022) (a patentee "has an interest in the timely enforcement of its patent rights").

3                    **iii.        Only One Out of Six Asserted Patents Has Been Instituted for IPR**

4              The parties collectively assert six patents in this litigation. Motive chose to challenge Samsara's

5    patents in this Court, whereas Samsara—late in the litigation—chose to initiate parallel proceedings before

6    the PTAB against Motive's patents. Of the three IPR petitions Samsara filed, only one has been instituted,

7    and that institution occurred in August 2025.  As such, a Final Written Decision on the '580 patent IPR is

8    not expected until August 2026, unless the PTAB chooses to extend that deadline by an additional six

9    months to February 2027. 35 U.S.C. §§ 313-314, 316(a)(11). And even then, the decision will not be final

10   until completion of the appeals process. See *JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*, 2020 WL

11   6203555, at *8 (C.D. Cal. Oct. 19, 2020) (*citing  Evolutionary Intelligence, LLC v. Sprint Nextel Corp.,*

12   2014 WL 4802426, at *4 (N.D. Cal. Sept. 26, 2014)) ("determinations made by the PTAB

13   during IPR review will not become binding on this Court until the parties have exhausted

14   the appeals process before the Federal Circuit.").

15            The '276 and '243 petitions are still in their early stages. Institution decisions will not be rendered

16   until April or May 2026, and institution is far from certain. If the PTAB institutes review, Final Written

17   Decisions would not issue until as late as November 2027, followed again by a prolonged appellate process.

18            But by November 2027, this case will have already been pending for more than 3 years and 8

19   months, and the PTAB proceedings—if they proceed at all—will still be far from final. Granting a stay now

20   would postpone resolution of Motive's patent rights far beyond the current trial date. Such an outcome

21   would be highly prejudicial to Motive, which is entitled to timely enforcement of its patent rights and has

22   diligently prosecuted this case according to the schedule set by the Court.

23                    **iv.        Motive Will be Harmed If Its Direct Competitor is Allowed to Delay the Case**

24                                **While Continuing to Infringe**

25            "Court have often found prejudice where, as here, the non-moving party is a direct competitor of

26   the movant." *TPK Touch Sols., Inc v. Wintek Electro-Optics Corportation*, 2013 WL 5289015, at *3 (N.D.

27   Cal. Sept. 18, 2013).  Motive and Samsara are direct competitors in the AI dashcam and fleet-management

28   markets. Motive's complaint alleges that Samsara sells products that directly compete with—and infringe—

Motive's patented technology as part of a broader pattern of unfair competition described in Motive's Second Amended Complaint. ECF 107. Courts consistently recognize that "when the parties are direct competitors, the risk of prejudice is higher to the non-moving party than it would be otherwise." *Asetek Holdings, Inc v. Cooler. Master Co*., 2014 WL 1350813, at *5 (N.D. Cal. Apr. 3, 2014) (collecting cases).

If Motive's patent claims are stayed, Motive will suffer substantial and continuing harm. Delaying adjudication of Motive's patent claims—while Samsara continues to sell the accused products for years during the pendency of IPR and subsequent appeals—would deprive Motive of the "prompt resolution" it is entitled to as a patent owner seeking to stop ongoing infringement. *Bd. of Trs. of Leland Stanford Junior Univ. v. Stanford Fin. Grp. Co.*, 2009 WL 10700035, at *2 (N.D. Cal. Feb. 3, 2009) ("litigants seeking to halt infringement … are entitled to prompt resolution."); *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc*., 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude").

This prejudice is especially pronounced because—along with Motive's non-patent claims—Samsara's own patent claims against Motive will move forward under the Court's schedule and can be adjudicated by August 2027. Motive should not be punished for choosing to enforce its patents in court rather than through parallel USPTO proceedings; nor should Samsara be rewarded for failing to diligently file its IPRs or seek a stay earlier.

Because Motive and Samsara compete head-to-head and Motive seeks injunctive relief, monetary damages cannot adequately compensate Motive for the competitive harm it would suffer if its claims are stayed for several years. A stay would also significantly increase Motive's litigation costs: Motive would be forced to litigate its non-patent claims and Samsara's patent counterclaims now, and then litigate its own patent claims in a separate proceeding years later. This duplication of effort is the type of inefficiency courts seek to avoid.  *See e.g., Space Data Corp.* 2019 WL 1131420, at *7-8 ("staying the '706 patent also poses a risk of wasted resources as the Court would have to reconvene the parties and witnesses at a later date if the asserted claims of the '706 patent survive IPR."); *Tech. Licensing Corp. v. Thomson, Inc.,* 684 F. Supp. 2d 1206, 1208 (E.D. Cal. 2010) ("movants' desire to stay only parts of the patent litigation … would necessarily bifurcate the patent infringement litigation … This could result in duplicative discovery later"); *IMAX*, 385 F. Supp. 2d at 1032-33 (denying motion to stay because of the "myriad" of non-patent claims

and counterclaims that would remain unresolved if patent at issue was reexamined); *Fulfillium*, 2018 WL 9848044, at *2 ("courts have found stay unwarranted in cases involving several claims unrelated to patent infringement.") (vacated on other grounds).

## V.    **CONCLUSION**

For all of these reasons—the advanced stage of this case, the speculative and limited impact of Samsara's IPRs, and the prejudice to Motive as a direct competitor—Samsara has not carried its burden to justify a stay. Motive respectfully requests that the Court deny Samsara's Motion in its entirety.


GREENBERG TRAURIG, LLP


DATED:  December 9, 2025         By:      /s/*David S. Bloch*
                                          David S. Bloch (SBN CA 184530)
                                          Ray C. Huang (SBN CA 361135)
                                          GREENBERG TRAURIG, LLP
                                          101 Second Street, Suite 2200
                                          San Francisco, California 94105-3668
                                          Telephone: 415.590.5110
                                          Facsimile: 415.707.2010
                                          david.bloch@gtlaw.com
                                          ray.huang@gtlaw.com

                                          Kyle D. Chen (SBN CA 239501)
                                          Yang Liu (SBN CA 319390)
                                          GREENBERG TRAURIG, LLP
                                          1900 University Avenue, 5th Floor
                                          East Palo Alto, California, 94303
                                          Telephone: 650.328.8500
                                          Facsimile: 650.328.8508
                                          kchen@gtlaw.com
                                          yang.liu@gtlaw.com

                                          George D. Zalepa (pro hac vice)
                                          James J. DeCarlo (pro hac vice)
                                          GREENBERG TRAURIG, LLP
                                          500 Campus Dr Ste 400
                                          Florham Park, NJ 07932
                                          973-360-7900
                                          george.zalepa@gtlaw.com
                                          decarloj@gtlaw.com

                                          Joseph G. Petrosinelli (*pro hac vice*)
                                          C. Bryan Wilson (*pro hac vice*)
                                          Jack H. Danon (*pro hac vice*)
                                          WILLIAMS & CONNOLLY LLP
                                          680 Maine Avenue, S.W.
                                          Washington, D.C. 20024

13

Telephone: 202.434.5547
Facsimile: 202.434.5029
jpetrosinelli@wc.com
bwilson@wc.com
jdanon@wc.com

Attorneys for Plaintiff
MOTIVE TECHNOLOGIES, INC.

PLAINTIFF MOTIVE'S OPPOSITION TO DEFENDANT SAMSARA'S MOTION FOR PARTIAL STAY
CASE NO. 3:24-cv-00902-JD