GIBSON, DUNN & CRUTCHER LLP
JOSH KREVITT (SBN 208552)
JKrevitt@gibsondunn.com
STUART M. ROSENBERG (SBN 239926)
SRosenberg@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone:    650.849.5300
Facsimile:    650.849.5333

BRIAN A. ROSENTHAL (*pro hac vice*)
BRosenthal@gibsondunn.com
KATHERINE Q. DOMINGUEZ (*pro hac vice*)
KDominguez@gibsondunn.com
ALLEN KATHIR (*pro hac vice*)
AKathir@gibsondunn.com
ALLYSON PARKS (*pro hac vice*)
AParks@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    212.351.4000
Facsimile:    212.351.4035

GIBSON, DUNN & CRUTCHER LLP
JAYSEN S. CHUNG (SBN 280708)
JSChung@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    415.393.8200
Facsimile:    415.393.8306

NATHANIEL R. SCHARN (SBN 305836)
NScharn@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone:    949.451.3800
Facsimile:    949.451.4220

HANNAH L. BEDARD (*pro hac vice*)
HBedard@gibsondunn.com
WENDY W. CAI (*pro hac vice*)
WCai@gibsondunn.com
1700 M STREET, NW
Washington, DC 20036
Telephone:    202.955.8500
Facsimile:    202.467.0539

*Attorneys for Defendant and Counterclaim
Plaintiff Samsara Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTIVE TECHNOLOGIES, INC.,<br><br>    *Plaintiff and Counterclaim Defendant,*<br><br>    v.<br><br>SAMSARA INC.,<br><br>    *Defendant and Counterclaim Plaintiff.* | CASE NO. 3:24-CV-00902-JD<br><br>**DEFENDANT AND COUNTERCLAIM PLAINTIFF SAMSARA INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge: The Honorable James Donato<br>Hearing Date: May 21, 2026<br>Time: 11:00 a.m. |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on May 21, 2026 at 11:00 am, or as soon thereafter as it may be heard, in the courtroom of the Honorable James Donato, San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant and Counterclaim Plaintiff Samsara Inc. ("Samsara") respectfully moves pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings on Motive's claims for patent infringement.  Samsara's motion is supported by the Memorandum of Points and Authorities contained herein, the Declaration of Jaysen S. Chung and supporting exhibits submitted herewith, and other referenced pleadings and papers filed in this action.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Motive's claims for patent infringement should be dismissed with prejudice because the claims of Motive's Asserted Patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   LEGAL STANDARD ......................................................................................................... 2

III.  THE '580 AND '276 PATENT CLAIMS ARE NOT PATENT ELIGIBLE ............................. 2

    1.    Background .................................................................................................................. 2

    2.    *Alice* Step One:  The Claims Are Directed to an Abstract Idea .................................... 3

    3.    *Alice* Step Two:  The Claims Lack an Inventive Concept ............................................ 6

IV.   THE '243 PATENT CLAIMS ARE NOT PATENT ELIGIBLE ............................................. 9

    1.    Background .................................................................................................................. 9

    2.    *Alice* Step One:  The Claims Are Directed to an Abstract Idea .................................. 10

    3.    *Alice* Step Two:  The Claims Lack an Inventive Concept .......................................... 13

V.    DISMISSAL WITH PREJUDICE IS APPROPRIATE .......................................................... 15

VI.   CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Tex., LLC v. DirecTV, LLC,*
838 F.3d 1253 (Fed. Cir. 2016)................................................................................................3

*Alice Corp. v. CLS Bank Int'l,*
573 U.S. 208 (2014) ..............................................................................................2, 6, 7, 11

*All Terminal Servs., LLC v. Roboflow, Inc.,*
2025 WL 2576394 (D. Del. Sept. 5, 2025) ...........................................................................11

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
967 F.3d 1285 (Fed. Cir. 2020)....................................................................................6, 14, 15

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
788 F.3d 1371 (Fed. Cir. 2015)................................................................................................6

*Beteiro v. DraftKings, Inc.,*
104 F.4th 1350 (Fed. Cir. 2024).......................................................................................11, 15

*Bilski v. Kappos,*
561 U.S. 593 (2010) ..................................................................................................................2

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018)......................................................................................7, 8, 9

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,*
778 F. App'x 882 (Fed. Cir. 2019) .................................................................................4, 13

*CareDX, Inc. v. Natera, Inc.,*
40 F.4th 1371 (Fed. Cir. 2022)..........................................................................................8, 9, 15

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019)....................................................................................2, 6, 7, 8

*In re ChromaCode Litig.,*
2025 WL 2052306 (N.D. Cal. July 22, 2025).......................................................................14

*Cisco Sys., Inc. v. Uniloc 2017 LLC,*
813 F. App'x 495 (Fed. Cir. 2020) .......................................................................................2

*Contour IP Holding LLC v. GoPro, Inc.,*
113 F.4th 1373 (Fed. Cir. 2024)..............................................................................................5

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
880 F.3d 1356 (Fed. Cir. 2018)................................................................................................5

*Dental Monitoring SAS v. Align Technology, Inc.,*
2024 WL 2261931 (N.D. Cal. May 16, 2024) ..............................................................1, 12, 13

*Elec. Power Grp., LLC v. ALSTOM SA,*
830 F.3d 1350 (Fed. Cir. 2016)......................................................................................1, 4, 6, 7

iii

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)...................................................................................................5

*In re Gale*,
   856 F. App'x 887 (Fed. Cir. 2021) ...........................................................................................4

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
   60 F.4th 1349 (Fed. Cir. 2023)..............................................................................................4, 8

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018)................................................................................................13

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019)..................................................................................................5

*Mentor Graphics Corp. v. Eve-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017)................................................................................................15

*Optis Cellular Tech., LLC v. Apple Inc.*,
   139 F.4th 1363 (Fed. Cir. 2025)...............................................................................................14

*PersonalWeb, Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021).....................................................................................................6

*PUREPREDICTIVE, Inc. v. H2O.AI, Inc.*,
   2017 WL 3721480 (N.D. Cal. Aug. 29, 2017), *aff'd*, 741 F. App'x 802 (Fed. Cir. 2018) ..............4

*Realtime Data LLC v. Array Networks Inc.*,
   2023 WL 4924814 (Fed. Cir. Aug. 2, 2023) ...............................................................................5

*Recentive Analytics, Inc. v. Fox Corp.*,
   134 F.4th 1205 (Fed. Cir. 2025).............................................................................1, 5, 11, 12, 13

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)..................................................................................................2

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017).....................................................................................................2

*Software Rts. Archive, LLC v. Facebook*,
   485 F. Supp. 3d 1096 (N.D. Cal. 2020) .....................................................................................2

*Synopsys, Inc. v. Avatar Integrated Sys., Inc.*,
   2020 WL 6684853 (N.D. Cal. Dec. 22, 2020) ..........................................................................14

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)..................................................................................................6

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016).....................................................................................................5

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
   874 F.3d 1329 (Fed. Cir. 2017)...............................................................................................5, 6

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019)..................................................................................................4

iv

*V-Formation, Inc. v. Benetton Grp. SpA*,
  401 F.3d 1307 (Fed. Cir. 2005).................................................................................................13, 14

*WhitServe LLC v. Dropbox, Inc.*,
  854 F. App'x 367 (Fed. Cir. 2021) ......................................................................................13, 14, 15

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021)....................................................................................................3, 5, 10

**Statutes**

35 U.S.C. § 101 .......................................................................................................................................1, 2

v

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Asserted Patents | U.S. Patent Nos. 11,875,580; 12,062,243; and 12,136,276 |
| '580 patent | U.S. Patent No. 11,875,580 |
| '243 patent | U.S. Patent No. 12,062,243 |
| '276 patent | U.S. Patent No. 12,136,276 |
| SAC | Second Amended Complaint (D.I. 107) |

DEF. AND COUNTERCL. PL. SAMSARA INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS

CASE NO. 3:24-CV-00902-JD

## I.    INTRODUCTION

Judgment on the pleadings should be granted because the asserted patent claims are ineligible under 35 U.S.C. § 101.  The claims fail both steps of the two-step *Alice* patent-eligibility inquiry.

***'580 and '276 Patents.***  At Step One, the claims of these two related patents are directed to the abstract idea of calculating a parameter of a camera (*e.g.*, viewing angle) based on a horizon line in a video or image received by the camera.  To implement this idea, the claims employ functions that the Federal Circuit has made clear are fundamental "abstract processes," *e.g.*, collecting information, using it to perform an analysis or calculation, and presenting the results.  *Elec. Power Grp., LLC v. ALSTOM SA*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016).  The claim language and specification confirm the claims require no specific technological improvements and fail to specify *how* to perform those functions, *e.g.*, "receiving" and "computing," in a non-abstract way.  At Step Two, the claims lack any inventive concept that could amount to "significantly more" than the abstract idea because they require only conventional components, *e.g.*, a "predictive model" that can be practically any generic "deep learning or other AI model," functioning in its routine manner.  '580 patent, 5:25–28.

***'243 Patent.***  At Step One, the claims of '243 patent are directed to the abstract idea of applying a generic machine learning technique (*i.e.*, a neural network) in a particular field of use (*i.e.*, distracted driving detection).  The claims share the same focus of claims that the Federal Circuit and other courts, including in this District, have held ineligible.  *See, e.g.*, *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1208 (Fed. Cir. 2025) (holding ineligible claims that were "directed to the abstract idea of using a generic machine learning technique in a particular environment"); *Dental Monitoring SAS v. Align Technology, Inc.*, 2024 WL 2261931, at *4–5 (N.D. Cal. May 16, 2024) ("*DM*") (holding a claim ineligible where its "method of training merely describe[d] how a generic" neural network "is applied (or limited) to a particular field of use").  The claim language and specification establish that the claims require no specific technological improvements.  The claims instead employ purely functional language, such as "inputting" and "minimizing," without offering any concrete details limiting *how* to perform those functions.  At Step Two, the claims lack any inventive concept beyond this abstract idea because they employ only conventional components, such as a generic "neural network" that is trained using conventional techniques, functioning in their routine manner.  '243 patent, 4:66–5:17, 10:26–39.

## II.    LEGAL STANDARD

***Judgment on the Pleadings.***[1]  Judgment on the pleadings should be granted where "there are no factual allegations that, taken as true, prevent resolving the [patent] eligibility question as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019) (cleaned up). Patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion," "before claim construction or significant discovery," and "based on intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'" *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017).  "[C]onclusory statements regarding eligibility" need not be accepted and "d[o] not preclude dismissal." *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498–99 (Fed. Cir. 2020). "[A] court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." *Secured Mail*, 873 F.3d at 905, 913.

***Patent Eligibility.***  The legal question of patent eligibility under Section 101 involves a two-step "threshold test." *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  Step One asks whether the claims are directed to an ineligible "concept[]," such as an "abstract idea." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  If so, Step Two asks whether the claims involve a specific "inventive concept" that "amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* at 217–18.  These steps of the test are further detailed below.

## III.    THE '580 AND '276 PATENT CLAIMS ARE NOT PATENT ELIGIBLE

### 1.    Background

The '580 and '276 patents are related and share a common specification.[2]  The patents generally relate to calculating a parameter of a camera that is "onboard a vehicle." '580 patent, 1:21–32.  The "camera may be installed in various positions," and a parameter of the camera may include its height or "the viewing angle of the camera relative to the roadway." *Id.* at 1:29–31.  Claim 1 of the '580

---

[1] The Court permitted Samsara to file "a Rule 12(c) motion" on patent-eligibility.  D.I. 177.  Under either Rules 12(c) or 12(b), Motive's patents at issue here are ineligible.  "'Rule 12(c) is functionally identical to Rule 12(b)(6),'" and "'the same standard of review applies to motions brought under either rule.'" *Software Rts. Archive, LLC v. Facebook*, 485 F. Supp. 3d 1096, 1102 (N.D. Cal. 2020).

[2] Thus, for purposes of this motion and ease of reference, Samsara will cite only the '580 patent.

2

patent, which is representative of both patents for purposes of the eligibility inquiry, recites a method for calculating a "camera parameter" based on a horizon line in a video received by a camera. *First*, the claim recites "identifying one or more lines in [a] video" "receiv[ed]" "from a camera device," where a "predictive model" is used to identify "one or more lines including a horizon line." '580 patent, 20:3–7. *Second*, the claim recites "computing" a "camera parameter" "based on the" horizon line. *Id.* at 20:8–9. *Third*, the claim recites "overlaying" the horizon line "on the video to generate an overlaid video," which will be "manual[ly] review[ed]" to "confirm[]" the horizon line is "accurate" (*e.g.*, whether the overlaid horizon line matches the horizon line in the video). *Id.* at 20:10–16. *Fourth*, the claim recites "transmitting data representing" the "camera parameter to the camera device." *Id.* at 20:18–19. Thus, claim 1 is focused on identifying a horizon line in a video received by a camera, computing a "camera parameter" based on the line, and manually reviewing the line for accuracy.

### 2. *Alice* Step One:  The Claims Are Directed to an Abstract Idea

The Step One "directed to" inquiry "ask[s] what the patent asserts to be the focus of the claimed advance over the prior art," and whether that focus is on ineligible subject matter, such as an abstract idea. *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021); *see also Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). This inquiry "must focus on the language of the [a]sserted [c]laims themselves, considered in light of the specification." *Yu*, 1 F.4th at 1043.

Here, the asserted claims are focused on the abstract idea of calculating a parameter of a camera (*e.g.*, viewing angle) based on a horizon line in a video or image received by the camera. The claim language supports that the claims are directed to this abstract idea. The claims recite "identifying one or more lines in [a] video" "receiv[ed]" "from a camera device," where the "one or more lines includ[es] a horizon line," and then "computing" a "camera parameter based on" the horizon line. '580 patent, 20:3–9. The claims recite other ancillary functions relating to this concept of calculating the "camera parameter," *e.g.*, "transmitting data representing" the "camera parameter" to the "camera device" after it has been "confirm[ed]" that the horizon line, which has been "overl[aid]" on the video, is "accurate." *Id.* at 20:10–18. The specification also confirms this abstract idea is the claims' focus. For example, in its "Brief Summary" of the invention, the patent describes "receiv[ing] a video," "identif[ying]" a "horizon line" in the video, and "comput[ing] some camera parameters (e.g., height,

viewing angle, road plane normal, etc.) based on the horizon line." *Id.* at 1:37–44.

***Controlling Authority Establishes the Claims Are Abstract.*** The asserted claims fall squarely within the category of claims that the Federal Circuit has held ineligible; namely, claims focused on "collecting information," "analyzing [the] information," and "presenting the results" of the analysis—all are fundamental "abstract processes." *Elec. Power*, 830 F.3d at 1353–54. The Federal Circuit and other courts repeatedly have held ineligible claims focused on collecting information and using it to make a calculation. *See, e.g.*, *In re Gale*, 856 F. App'x 887, 889 (Fed. Cir. 2021) (ineligible claims "directed to the abstract idea of" "collecting information," "analyzing the information," and "reporting the results"); *PUREPREDICTIVE, Inc. v. H2O.AI, Inc.*, 2017 WL 3721480, at *5 (N.D. Cal. Aug. 29, 2017), *aff'd*, 741 F. App'x 802 (Fed. Cir. 2018) (ineligible claims directed to "the abstract concept of using mathematical algorithms to perform predictive analytics"). It is also well settled that modifying or manipulating data itself is abstract. *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (holding ineligible claims directed to the "abstract idea of 'collecting, analyzing, manipulating, and displaying data'"); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) (ineligible claims that "at most recite[d] abstract data manipulation").

Here, at the core of the asserted claims is no more than these fundamental "abstract processes," which are used to implement the abstract idea of calculating a parameter of a camera based on a horizon line in a video or image received by the camera: collecting information (*i.e.*, receiving a video or image); modifying it (*i.e.*, overlaying a horizon line on the video or image, or modifying that line ('276 patent)); conducting an analysis with that information (*i.e.*, computing a "camera parameter"); and sending the results of the analysis (*i.e.*, transmitting the "camera parameter").

***Nothing in the Claims Can Save Them at Step One.*** There are additional indications that the claims are ineligible at Step One. For instance, the Federal Circuit has explained that for a claim to pass Step One, its focus must be on "specific," "non-abstract," and "concrete" "improvements to existing technological processes" and "the functioning of [a] computer itself," rather than reciting "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *See Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 890 (Fed. Cir. 2019); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019); *Enfish, LLC v. Microsoft Corp.*, 822

4

F.3d 1327, 1335–36 (Fed. Cir. 2016); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361–62 (Fed. Cir. 2018) (cleaned up).  Here, however, the asserted claims require no specific technological improvements.  To the extent the claims require any components, the specification concedes they are preexisting technology.  For instance, the specification states that the claimed "predictive model" can be a generic "CNN ([convolutional neural network]) or other type of deep learning model," or "other AI model."  '580 patent, 5:28–32.  The claims also recite a "camera device" and "annotator device," but the specification admits they can be no more than a generic "dash-mounted camera device" and "workstation or web-based application," respectively.  *Id.* at 20:2–18, 3:18–20, 5:65–67.  The claims require no specific improvements to this technology.  Thus, in this regard, the asserted claims are akin to the claims that this Court held ineligible in *Yu*, which employed "[o]nly conventional camera components" to implement the abstract idea of "using multiple pictures to enhance each other."  1 F.4th at 1043.  And they are distinct from the eligible claims in *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024), which required a "specific means that improve[d]" a "POV camera" so that it could operate in an entirely new way to perform "parallel data stream recording with the low-quality recording wirelessly transferred to a remote device."

Furthermore, the Federal Circuit has explained that "[a]llowing a claim that functionally describes a mere concept without disclosing *how* to implement that concept risks defeating the very purpose of the patent system."[3]  *Recentive Analytics*, 134 F.4th at 1208, 1213.  The court thus has "'repeatedly' held [that], to avoid ineligibility," a claim must "disclose the '*how*'"; that is, "a claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it."  *Realtime Data LLC v. Array Networks Inc.*, 2023 WL 4924814, at *7–8 (Fed. Cir. Aug. 2, 2023).  Accordingly, for patent eligibility, claims must employ more than "purely functional terms" and must "sufficiently describe *how* to achieve [the] results in a non-abstract way."  *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).

Here, the claims fail to specify precisely *how* to achieve the intended result.  The claims instead employ "purely functional terms," *e.g.*, "receiving," "identifying," "overlaying," "computing," and

---

[3] All emphases in this brief have been added and internal quotations omitted unless otherwise noted.

"transmitting," without any concrete detail about how they must be performed. As a result, nothing in the claims requires performing these functions any differently from how a human could do so in their mind or with pen and paper. The Federal Circuit has explained that it is a "telltale sign of abstraction" where, as here, claims merely recite steps that "can be performed in the human mind, or by a human using a pen and paper." *PersonalWeb, Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316–17 (Fed. Cir. 2021). In fact, the '580 patent expressly contemplates that a human takes part in the claimed method, *e.g.*, manually reviewing the horizon line to confirm it is "accurate," and refers to a "human annotator" who performs that function. '580 patent, 20:12–16, 5:65–6:8. Thus, the claims are focused on the result of implementing the abstract idea discussed above, rather than a specific manner of achieving it.

### 3. *Alice* Step Two: The Claims Lack an Inventive Concept

The asserted claims recite no inventive concept that could save them from ineligibility. If at Step One the claims are directed to a patent-ineligible abstract idea, then at Step Two the claims must supply an "inventive concept" by reciting elements that amount to "significantly more than a patent upon the [abstract idea] itself," such that they "transform th[e] abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 217–18, 221. "[C]onventional, routine and well understood applications in the art" are insufficient. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1378 (Fed. Cir. 2015). Even "adding novel or non-routine components is not necessarily enough to survive a § 101 challenge." *ChargePoint*, 920 F.3d at 773. The Federal Circuit has "repeatedly held" that mere "invocations of computers and networks that are not even arguably inventive are 'insufficient'" for an inventive concept, and thus the Step Two inquiry assesses whether the claims "require[] anything other than conventional computer and network components operating according to their ordinary functions." *See Elec. Power*, 830 F.3d at 1355; *Two-Way Media*, 874 F.3d at 1341. Finally, as with Step One, Step Two "must focus on the language of the [a]sserted [c]laims." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). Thus, any features not recited in the claims "are irrelevant" to the analysis. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020).

#### a. The Asserted '580 Patent Claims

***Independent Claim 1.*** Claim 1 lacks any inventive concept that could amount to "significantly more" than the abstract idea of calculating a parameter of a camera based on a horizon line in a video

6

received by the camera.  The claim employs only conventional technology functioning in its routine manner.  *Supra* § III.2.  For example, the specification concedes the claim's "predictive model" that is used to "identify[]" a horizon line in the video can simply be a generic "CNN ([convolutional neural network]) or other type of deep learning model," or "other AI model."  '580 patent, 5:28–32.  The specification also concedes the claimed "camera device" and "annotator device" can be, respectively, a generic "dash-mounted camera device" and a "workstation or web-based application."  *Id.* at 20:2–18, 3:18–20, 5:65–67.  The specification even broadly states that "the scope of the present disclosure covers *conventionally* known manners for carrying out" the claimed method.  *Id.* at 19:43–45.

**The Dependent Claims.**  The dependent claims fare no better, as they focus on the same abstract idea of calculating a parameter of a camera based on a horizon line in a video or, at most, variations of that idea.  But "[i]t has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed" at Step One "cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept" at Step Two.  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).  In addition, "[a]s a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it" for an inventive concept.  *Id.* at 1291.

Claim 2 merely recites that the "one or more lines" identified in the video is a "lane line of a roadway," and thus at most "narrow[s]" the abstract idea.  *Id.*  Claims 3 and 4 use the generic "predictive model" to "comput[e]" the "camera parameter" without any other detail, and thus do no more than add the instruction of "apply it with a computer," which is insufficient at Step Two.  *Alice*, 573 U.S. at 223 (cleaned up).  Claim 5, at best, simply describes the "camera parameter" is "a camera height and road plane normal."  But "limit[ing]" a claim to "particular content" does not remove a claim from "the realm of abstract ideas."  *Elec. Power*, 830 F.3d at 1353.  Finally, claims 6 and 7 merely recite receiving a "second video" and computing another "camera parameter" based on a horizon line in that video.  Thus, these claims simply require performing the same abstract idea a second time, which is insufficient as a matter of law to provide an inventive concept.  *ChargePoint*, 920 F.3d at 771.

**Ordered Combination.**  Finally, even considered in combination, the elements of the '580 patent claims fail to provide an inventive concept because they merely represent the application of "well-known techniques in a logical combination" using conventional components to implement the

DEF. AND COUNTERCL. PL. SAMSARA INC.'S                    CASE NO. 3:24-CV-00902-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

abstract idea. *CareDX, Inc. v. Natera, Inc.*, 40 F.4th 1371, 1380 (Fed. Cir. 2022). The claims follow a logical workflow using conventional components: receive a video, identify a line, compute a parameter, display the line for human confirmation, receive the confirmation, and send the parameter.

### b.    The Asserted '276 Patent Claims

***The Independent Claims.*** Claims 1, 8, and 15 of the '276 patent recite materially the same method as the '580 patent claims, and require only conventional components. The '276 patent claims offer minor variations to the same abstract idea and thus offer no inventive concept: (a) receiving an "image" rather than a "video"; (b) requiring "detecting" but without a "predictive model"; (c) stating that the camera is "installed within a vehicle" and the image depicts a "roadway." *See BSG*, 899 F.3d at 1291. The claims also differ in that they require receiving a "modification" comprising "a new line at a second position" on the image, rather than a "confirmation" that the line is "accurate." *Id.* But this amounts to no more than the abstract idea of modifying data and requires no specific technological improvement to implement. *Hawk*, 60 F.4th at 1358; *ChargePoint*, 920 F.3d at 771. Claims 8 and 15 require only generic technology, *e.g.*, a "computer program," "processor," or "storage medium." Accordingly, these claims at most "narrow[] or reformulat[e]" the abstract idea or add another abstract idea—none is sufficient for an inventive concept. *BSG*, 899 F.3d at 1290–91.

***The Dependent Claims.*** The dependent claims also fail Step Two. Claims 2 and 9 state that the "camera parameter" is "one of camera height, viewing angle, and road plane normal," and thus at best "narrow" the abstract idea. *BSG*, 899 F.3d at 1290–91. Claims 3–4, 10–11, and 16–17 recite that the image is received from the camera "while the vehicle is moving" or when the vehicle is "traveling above a pre-defined speed or for a pre-defined duration," but to perform this function the claims merely require using a generic "camera device" for its known purpose. Claims 5, 12, and 18 recite sending the overlaid image to a "web-based application," which the specification concedes is a conventional process requiring conventional technology. '580 patent, 5:65–67. Claims 6, 13, and 19 recite that the "modification" is "an identification of a new horizon line *by a user*." Simply receiving input from a human user requires no specific technological improvement. Claims 7, 14, and 20 recite "recomputing the camera parameter based on the modification"; thus, these claims merely involve implementing the same abstract process of computing a parameter but with different data. The claims merely

8

"reformulat[e]" the abstract idea, which is insufficient at Step Two.  *BSG*, 899 F.3d at 1290–91.

***Ordered Combination.***   The elements of the '276 patent claims fail to provide an inventive concept even considered in combination, because they merely represent the application of "well-known techniques in a logical combination."  *CareDX*, 40 F.4th at 1380.  The claims follow a predictable workflow using conventional components:  receive an image, detect a line in it, display it for human review, receive a user correction, compute a camera parameter, and send the parameter.

## IV.     THE '243 PATENT CLAIMS ARE NOT PATENT ELIGIBLE

### 1.     Background

The '243 patent relates to the use of machine learning for "driver distraction detection."  '243 patent, 1:16–18.  The specification states there were already "[e]xisting solutions for driver distraction detection" that used machine learning, *e.g.*, a "neural network"—a generic machine learning model, or set of algorithms.  *Id.* at 1:35–37, 3:12–16, 6:49–52, 6:55–63, 7:2–7; *infra* § IV.3.

The specification describes the purported invention as training a neural network to "detect distracted driving by utilizing a multi-task model," *i.e.*, detecting multiple features, such as "distraction" (*e.g.*, "cell phone usage"), an "object" (*e.g.*, "food and drink items"), and a "pose" (*e.g.*, the position of a driver's body part).  '243 patent, 1:42–51, 8:11–17, 9:67–10:2.  The claims, however, do not require a "multi-task model." *E.g.*, *id.* at 17:5–20.  Instead, the claims merely require training the neural network to detect *at least* one feature.  *Id.* at 17:9–13.  Claim 1, which is representative of the other '243 patent claims for purposes of the patent-eligibility inquiry, recites three basic steps.

*First*, the claim recites "inputting labeled examples" into a "neural network" comprising a "backbone network" and "one or more prediction heads."  '243 patent, 17:6–13.  A neural network is a generic machine learning model, or set of algorithms, that can receive inputs (*e.g.*, images) and generate outputs (*e.g.*, classifications of those images).  *Id.* at 3:56–61, 3:64–67, 12:13–23.  A "backbone network" is a neural network that processes an image input and generates information about features in the image (*e.g.*, the outline of a cell phone).  *Id.* at 2:53–55, 3:61–64, 12:20–21.  The specification states that the backbone network may be one of many types of conventional networks.  *Id.* at 3:60–63, 4:64–5:17.  A "prediction head" is a neural network that receives the image feature information from the backbone network and generates classifications of those features (*e.g.*, classifying

9

the image as depicting "cell phone usage"). *Id.* at 1:65–2:2, 3:63–67, 12:21–23. The specification likewise states that the prediction head can be one of many types of conventional neural networks. *Id.* at 10:21–25. The specification describes training the neural network by "inputting labeled examples" into the neural network. *Id.* at 10:46–50. The "examples" are images of drivers and are analogous to practice questions for the neural network, *e.g.*, "is the driver distracted?" The "labels" on the examples are analogous to answers corresponding to those questions, *e.g.*, "undistracted," "mobile usage," or "other distracted." The next step of training measures how well the neural network answers these questions and then adjusting the neural network's parameters accordingly. *Id.* at 10:46–50.

*Second*, the claim recites "minimizing a loss" based on the outputs of a prediction head. '243 patent, 17:14–16. Minimizing a loss is a mathematical technique for training neural networks; namely, using a mathematical formula (*e.g.*, "loss function") that measures the difference between the neural network's classification of a feature in an image and what the correct feature classification should be according to the labeled examples. *Id.* at 10:44–52. The specification identifies a known mathematical function that can be used for this purpose (*e.g.*, a "Huber loss function"). *Id.* at 5:61–6:5, 10:66–11:25. The parameters of the network can then be adjusted to minimize that difference. *Id.* at 9:24–26.

*Third*, the claim recites "storing" the trained neural network, or "distraction classification model," which includes saving its learned parameters. '243 patent, 17:17–20, 3:27–30, 12:4–12. Generic storage technology, *e.g.*, RAM and ROM, can be used for this "storing" step. *Id.* at 16:52–61.

### 2.     *Alice* Step One: The Claims Are Directed to an Abstract Idea

The focus of the '243 patent claims is the abstract idea of applying a generic machine learning technique (*i.e.*, a neural network) to a particular field of use (*i.e.*, distracted driving detection). *See Yu*, 1 F.4th at 1043 (stating that the Step One inquiry "ask[s] what the patent asserts to be the focus of the claimed advance over the prior art"). Here, the claims themselves confirm their core focus is this abstract idea. *Id.* (stating that the Step One inquiry "must focus on the language of the [a]sserted [c]laims themselves, considered in light of the specification"). For instance, the claims first recite training a neural network by "inputting labeled examples" into it—*e.g.*, images of drivers labeled as "undistracted," "mobile usage," or "other distracted." The claims then recite "minimizing a loss" to measure the difference between what the trained neural network classifies the image as, and what the

10

correct answer should be according to the labeled training examples—*e.g.*, if the neural network classifies the image as "undistracted" but the correct label is "mobile usage," the loss function measures that error and adjusts the parameters of the neural network to minimize that error. The claims then require the ancillary step of storing that trained neural network model. Thus, at their core, the claims recite no more than these basic, conventional steps for training any generic neural network: inputting training data, minimizing error using a mathematical loss function, and storing the trained model.

*Controlling Authority Establishes the Claims Are Abstract.* The '243 patent claims share the same focus as claims that previously have been held ineligible.[4] *Beteiro v. DraftKings, Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (patent eligibility applies a "decisional mechanism" of examining and following earlier cases with similar subject matter). The courts in those cases applied the Supreme Court's holding that merely "limiting the use of an abstract idea to a particular technological environment" is "not enough for patent eligibility." *Alice*, 573 U.S. at 223 (cleaned up).

For instance, in *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1208, 1213 (Fed. Cir. 2025), the Federal Circuit held ineligible claims that applied a generic machine learning technique in a "new environment" to "optimize the scheduling of live events" and "optimize 'network maps.'" The court held that the claims were "directed to the abstract idea of using a generic machine learning technique in a particular environment." *Id.* at 1208. The court rejected the patentee's argument that the claims were eligible "because they apply machine learning to this new field of use," holding that "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment." *Id.* at 1213. The court also reasoned that the claims required no technological improvement and instead "rel[ied] on the use of generic machine learning technology," *e.g.*, a "neural network," "in carrying out the claimed methods." *Id.* at 1209, 1212 (cleaned up). The court further held that the claims' "requirements that the machine learning model be 'iteratively trained' or dynamically adjusted," including to "improve[] the accuracy of the" trained model, also "d[id] not represent a technological improvement," as training a machine learning model in this way was

---

[4] *See also, e.g.*, *All Terminal Servs., LLC v. Roboflow, Inc.*, 2025 WL 2576394, at *10 (D. Del. Sept. 5, 2025) ("[T]he patent does not explain how to implement [machine learning] algorithms, much less claim technological improvements to those machine learning algorithms.").

"incident to the very nature of machine learning." *Id.* at 1209 n.2, 1212.

Similarly, in *DM*, the claim focused on training a neural network to perform a "method for assessing the shape and fit of an orthodontic aligner." 2024 WL 2261931, at *2. A court in this District held that the claim's "method of training merely describes how a generic [neural network] is applied (or limited) to a particular field of use" without requiring any specific technological improvement to existing neural networks. *Id.* at *4–5. The court observed that "[n]eural networks specializ[ing] in the classification of images, as well as the location and detection of objects in an image, were well known in the prior art," and that "[t]hese [neural] networks, by their very nature, must be trained before they are put to a use." *Id.* The court held that, accordingly, even though the claim "provide[d] a great deal of particularity" about the claimed method, the claim's limitations did not represent "*improvements* to the training or operation of" a neural network, but instead were "field-of-use limitations describing the configuration of" a neural network "to perform the abstract idea at issue" (*i.e.*, "collecting, analyzing, and displaying information") "in the field at issue" (*i.e.*, assessing dental aligners). *Id.* at *5.

Here, as with the ineligible *Recentive* and *DM* claims that merely applied generic machine learning techniques to a particular field of use, the '243 patent claims focus on applying a generic machine learning technique (*i.e.*, a neural network) to a particular field of use (*e.g.*, distracted driving detection). The '243 patent concedes the claimed "neural network," including the "backbone network" and "one or more prediction heads" that comprise it, can be a generic neural network. '243 patent, 3:61–64, 4:66–5:17, 10:26–39. This concession is consistent with the *Recentive* and *DM* courts' observations that a neural network is a generic machine learning technique "well known in the prior art." *DM*, 2024 WL 2261931, at *5; *Recentive*, 134 F.4th at 1212. In addition, as with the *Recentive* and *DM* claims, the '243 patent claims' recitation of training a neural network, including to "minimize" error, does not confer eligibility because it is "incident to the very nature of machine learning" (*Recentive*, 134 F.4th at 1209 n.2, 1212); indeed, "[t]hese [neural] networks, by their very nature, must be trained before they are put to a use" (*DM*, 2024 WL 2261931, at *5). Further, the '243 patent claims lack any concrete details about *how* to achieve their intended result (*infra* § IV.3) and thus are even more deficient than the *DM* claims, which "provide[d] a great deal of particularity" about the claimed method but were still ineligible. 2024 WL 2261931, at *4. The '243 patent claims merely employ

known approaches to train a neural network to be used for distracted driving detection. *Infra* § IV.3.

***Nothing in the Claims Can Save Them at Step One.*** There are additional reasons why the claims fail Step One. For example, the claim language and specification confirm the claims require no specific concrete technological improvement. *Bridge*, 778 F. App'x at 890; *supra* § IV.1. The specification concedes the claimed "neural network," as well as the "backbone network" and "prediction heads" that comprise it, can simply be a generic neural network. '243 patent, 3:61–64, 4:66–5:17, 10:26–39. Likewise, the "minimizing a loss" step can be achieved with a known abstract mathematical function called a "Huber loss function." *Id.* at 10:66–11:25, 5:61–6:5. Generic memory technology, such as RAM or ROM, also can be used to store the trained model. *Id.* at 16:52–61.

The claims also fail to specify *how* to perform their recited functions in a "non-abstract way." *Recentive*, 134 F.4th at 1213. They employ "purely functional" claim language—*e.g.*, "inputting," "minimizing," and "storing"—and require no concrete limitations on *how* to perform those functions. Thus, the claims "fail[] to recite a practical way of applying [the] underlying idea" and "[a]re drafted in such a result-oriented way that they amount[] to encompassing 'the principle in the abstract' no matter how implemented." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1343 (Fed. Cir. 2018).

### 3.    *Alice* Step Two:  The Claims Lack an Inventive Concept

The '243 patent claims contain no concrete inventive concept that could amount to "significantly more" to the abstract idea discussed above. *Alice*, 573 U.S. at 217–18.

***Independent Claim 1.*** Claim 1 requires only conventional technology functioning in its routine manner. The patent concedes the claimed "neural network," including its "backbone network" and "one or more prediction heads," can be a generic neural network. '243 patent, 3:61–64, 4:66–5:17, 10:26–39. Indeed, neural networks with a backbone network for generating feature information and prediction heads for classifying those features were already well known. *E.g.*, Ex. 1 (prior art cited in the '243 patent), ¶ 10.[5] The "minimizing" step can be achieved using a known mathematical function called the "Huber loss function," which itself is abstract and thus cannot confer an inventive

---

[5] The Federal Circuit has "established that 'prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence,'" and such intrinsic evidence is properly considered in deciding a Rule 12(c) motion. *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005); *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021).

concept.[6] '243 patent, 10:66–11:25, 5:61–6:5; *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363 (Fed. Cir. 2025) (ineligible claims directed to "the abstract idea of a mathematical formula"); *Synopsys, Inc. v. Avatar Integrated Sys., Inc.*, 2020 WL 6684853, at *8 (N.D. Cal. Dec. 22, 2020) ("Mathematical algorithms and methods of calculation are abstract concepts and are not patent eligible."). The specification also discloses that generic memory technology can store the trained neural network model. '243 patent, 16:52–61. The claim requires no improvements to these generic components.

**The Other Independent Claims.** Claims 13 and 20 are materially the same as claim 1, reciting only generic technology to perform the same functions, *e.g.*, "computer program instructions," a "processor," a "storage medium," and "logic." Claims 26 and 30 also are materially the same as claim 1, and merely add using the trained neural network ("distraction classification model") to provide a classification of an image ("distraction classification tag"), and then "performing" at least one action based on the classification (*e.g.*, "playing" an alarm). '243 patent, 19:31–20:4, 20:15–39. Thus, the claims require no more than the abstract instructions to use the trained neural network for its known purpose and take an action based on its output. The claims require no specific improvements to the existing technology, *e.g.*, a "memory," "sensor," and "processor" recited in claim 30. *Id.* at 20:15–39.

**The Dependent Claims.** These claims also fail Step Two. Claims 2–5, 14–17, and 21–23 recite the internal architecture of the prediction heads that is built entirely from generic, preexisting neural network components. '243 patent, 5:13–17; IPR2026-0018, Ex. 1007, ¶¶33–35, 101–03; Ex. 1008, 7–8.[7] Claims 6–8, 18–19, and 24–25 recite using the trained neural network model to classify images and "perform[]" an action based on the classification. Thus, these claims fail Step Two for the same reasons discussed above for claims 26 and 30. Claims 9–11, 27–29, and 31–33 describe the outputs of the prediction heads: an "undistracted, mobile usage, or other distracted label," the "location of an object," and "orientation of one or more body parts." These claims thus describe a result or type of information, but neither is adequate for an inventive concept. Finally, claim 12 recites "storing" the

---

[6] Any assertion by Motive that the claims require minimizing a "joint loss" should be rejected as irrelevant, as the claims are not limited to a "joint loss"; instead, they merely recite "minimizing a loss." *Am. Axle*, 967 F.3d at 1293. Regardless, the specification confirms that even minimizing a "joint loss" requires no more than applying a known mathematical function. '243 patent, 10:66–11:25.

[7] *In re ChromaCode Litig.*, 2025 WL 2052306, at *12 (N.D. Cal. July 22, 2025) ("IPR proceedings are part of patent prosecution history"); *V-Formation*, 401 F.3d at 1311; *WhitServe*, 854 F. App'x at 373.

14

model in another generic device, *i.e.*, a "dash-mounted camera device." '243 patent, 17:63–65.

*Ordered Combination.* The claim elements supply no inventive concept even when considered in combination, as the claims employ conventional machine learning elements in a predictable sequence to carry out the abstract idea of training a neural network. *CareDX, Inc.*, 40 F.4th at 1380.

*Motive's Conclusory SAC Allegations Fail.* Motive contends the claims "overcome limitations of conventional driver distraction detection systems" by "disclos[ing] a multi-task model employing a unified network with a plurality of downstream prediction heads." SAC ¶¶ 61–62. But there is no "unified network" *in the claims*, and thus this unclaimed feature is "irrelevant" to the analysis. *Am. Axle*, 967 F.3d at 1293. Nor are the claims limited to a "multi-task model" that specifically detects *multiple* features. The claims merely require "*one* or more prediction heads." '243 patent, 17:9. Motive makes no allegation that using *one* prediction head to identify a *single* feature provides a specific technological improvement. Nor could it, as the patent concedes a prediction head is a generic neural network. *Id.* at 10:26–39. The Federal Circuit has made clear that if "a claim covers both statutory" (patent eligible) and "non-statutory" (ineligible) "embodiments," "it is not eligible for patenting." *Mentor Graphics Corp. v. Eve-USA, Inc.*, 851 F.3d 1275, 1294–95 (Fed. Cir. 2017).

## V.    DISMISSAL WITH PREJUDICE IS APPROPRIATE

Dismissal with prejudice for ineligibility may be granted based on the "intrinsic record alone," *i.e.*, the patent, its cited prior art, and its file history. *WhitServe*, 854 F. App'x at 373. Here, the intrinsic record of the patents confirm their claims are ineligible. *Supra* §§ III.3 and IV.2. Thus, there are no factual allegations or disputes that preclude deciding the eligibility question now. Indeed, in its SAC, Motive offers only allegations that are either conclusory or untethered to the claims and specification, and thus are insufficient to avoid dismissal with prejudice. *Beteiro*, 104 F.4th at 1358. For example, as to the '580 and '276 patents, Motive perfunctorily concludes that "[t]he recited system was unconventional and not well understood." SAC ¶¶ 57–58. And Motive's bare allegations about the '243 patent fail for the reasons discussed. *Supra* § IV.3. Thus, dismissal with prejudice is appropriate.

## VI.    CONCLUSION

Samsara respectfully asks the Court to grant its motion and dismiss the SAC with prejudice.

15

DATED: April 13, 2026

Respectfully submitted,

/s/ Josh Krevitt
Josh Krevitt (SBN 208552)
Brian A. Rosenthal (*Pro Hac Vice*)
Katherine Q. Dominguez (*Pro Hac Vice*)
Allen Kathir (*Pro Hac Vice*)
Allyson Parks (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
JKrevitt@gibsondunn.com
BRosenthal@gibsondunn.com
KDominguez@gibsondunn.com
AKathir@gibsondunn.com
AParks@gibsondunn.com

Jaysen S. Chung (SBN 280708)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306
JSChung@gibsondunn.com

Stuart M. Rosenberg (SBN 239926)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300
Facsimile: 650.849.5333
SRosenberg@gibsondunn.com

Nathaniel R. Scharn (SBN 305836)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220
NScharn@gibsondunn.com

Hannah L. Bedard (*Pro Hac Vice*)
Wendy Cai (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8500
Facsimile: 202.467.0539
HBedard@gibsondunn.com
WCai@gibsondunn.com

*Attorneys for Defendant and Counterclaim Plaintiff Samsara Inc.*

16

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on April 13, 2026, with a copy of this document via electronic mail.

*/s/ Josh Krevitt*
Josh Krevitt

17