GIBSON, DUNN & CRUTCHER LLP
JOSH KREVITT (SBN 208552)
JKrevitt@gibsondunn.com
STUART M. ROSENBERG (SBN 239926)
SRosenberg@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone:    650.849.5300
Facsimile:    650.849.5333

BRIAN A. ROSENTHAL (*pro hac vice*)
BRosenthal@gibsondunn.com
KATHERINE Q. DOMINGUEZ (*pro hac vice*)
KDominguez@gibsondunn.com
ALLEN KATHIR (*pro hac vice*)
AKathir@gibsondunn.com
ALLYSON PARKS (*pro hac vice*)
AParks@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    212.351.4000
Facsimile:    212.351.4035

GIBSON, DUNN & CRUTCHER LLP
JAYSEN S. CHUNG (SBN 280708)
JSChung@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    415.393.8200
Facsimile:    415.393.8306

NATHANIEL R. SCHARN (SBN 305836)
NScharn@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone:    949.451.3800
Facsimile:    949.451.4220

HANNAH L. BEDARD (*pro hac vice*)
HBedard@gibsondunn.com
WENDY W. CAI (*pro hac vice*)
WCai@gibsondunn.com
1700 M STREET, NW
Washington, DC 20036
Telephone:    202.955.8500
Facsimile:    202.467.0539

*Attorneys for Defendant Samsara Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTIVE TECHNOLOGIES, INC., <br><br>     *Plaintiff and Counterclaim Defendant*, <br><br>   v. <br><br> SAMSARA INC., <br><br>     *Defendant and Counterclaim Plaintiff*. | Case No. 3:24-CV-00902-JD <br><br> **SAMSARA INC.'S ANSWER TO MOTIVE TECHNOLOGIES, INC.'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS** <br><br> **JURY TRIAL DEMANDED** |

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | https://gomotive.com/products/ai-dashcam/ |
| 2 | Motive's Form S-1 |
| 3 | Initial Determination on Violation of Section 337 (Public Version), *In re Certain Vehicle Telematics, Fleet Management, & Video-Based Safety Systems, Devices, & Components Thereof*, Inv. No. 337-TA-1393 (ITC Sept. 8, 2025) |
| 4 | Motive vs Samsara Lawsuit, https://www.truthandsafety.com/ |
| 5 | U.S. Patent No. 11,975,685 |
| 6 | U.S. Patent No. 10,033,706 |
| 7 | U.S. Patent No. 12,069,041 |
| 8 | U.S. Patent No. 11,975,685 Infringement Chart |
| 9 | U.S. Patent No. 10,033,706 Infringement Chart |
| 10 | U.S. Patent No. 12,069,041 Infringement Chart |
| 11 | https://www.businesswire.com/news/home/20220913005304/en/Samsara-Announces-200th-Partner-Integration-with-its-Connected-Operations-Cloud-Becoming-System-of-Record-for-Physical-Operations |
| 12 | https://www.samsara.com/blog/samsara-recognized-as-a-best-workplace-for-innovators |
| 13 | https://www.samsara.com/blog/introducing-the-solar-powered-ag24-gateway-for-trailers-mobile-assets |
| 14 | https://kb.samsara.com/hc/en-us/articles/360042694572-Asset-Gateways-AGs-for-Powered-Assets |
| 15 | https://kb.samsara.com/hc/en-us/articles/360043174711-Unpowered-Asset-Gateway-AG-Installations |
| 16 | https://kb.samsara.com/hc/en-us/articles/360043022052-Environmental-Monitor-EM-Sensors |
| 17 | https://kb.samsara.com/hc/en-us/articles/360042725792-Pair-a-Samsara-Sensor-to-an-Asset-Gateway |
| 18 | https://www.samsara.com/pdf/docs/em-datasheet-vg34.pdf |
| 19 | https://www.samsara.com/blog/4-new-releases-spring-2023 |
| 20 | https://www.samsara.com/products/models/engine-immobilizer |
| 21 | https://www.samsara.com/pdf/EI21_Datasheet.pdf |
| 22 | U.S. Patent No. 11,975,685 File History Excerpt |
| 23 | U.S. Patent No. 10,033,706 File History Excerpt |
| 24 | U.S. Patent No. 12,069,041 File History Excerpt |
| 25 | https://gomotive.com/content-library/guides/system-overview/ |
| 26 | https://helpcenter.gomotive.com/hc/en-us/articles/6162472353053-What-is-Safety-Hub |
| 27 | https://helpcenter.gomotive.com/hc/en-us/articles/6177150001565-How-to-log-in-and-log-out-of-Motive-website-Fleet-Dashboard |
| 28 | https://helpcenter.gomotive.com/hc/en-us/articles/6189410468509-How-to-view-safety-events-on-Fleet-Dashboard |

| Exhibit | Description |
|---|---|
| 29 | https://helpcenter.gomotive.com/hc/en-us/articles/6160873196573-How-to-download-the-Motive-Driver-App-and-sign-up-for-a-new-account |
| 30 | https://gomotive.com/blog/trailer-tracking-and-dual-facing-dash-cam-introducing/ |
| 31 | https://gomotive.com/wp-content/uploads/2023/11/Spec-Sheet_Asset-Gateway.pdf |
| 32 | https://gomotive.com/blog/motive-new-cold-chain-management-solution/ |
| 33 | https://gomotive.com/blog/motive-introduces-reefer-monitoring-for-cold-chain-logistics/ |
| 34 | https://gomotive.com/content-library/spec-sheet/environmental-sensor/ |
| 35 | https://gomotive.com/wp-content/uploads/2024/06/Motive_Spring_Product_Showcase_2024.pdf |
| 36 | https://gomotive.com/content-library/spec-sheet/engine-immobilizer/ |
| 37 | https://gomotive.com/content-library/spec-sheet/vehicle-gateway/ |
| 38 | https://gomotive.com/blog/fall-product-showcase-25/ |
| 39 | https://gomotive.com/content-library/spec-sheet/door-and-environmental-sensor/ |
| 40 | April 8, 2025 Notice Letter |
| 41 | https://helpcenter.gomotive.com/hc/en-us/articles/19840062447005-Installation-Guide-Engine-Immobilizer |

Subject to and without waiving any arguments, Defendant Samsara Inc. ("Samsara"), by and through its undersigned counsel, hereby submits its Answer, Affirmative Defenses, and Counterclaims in response to the Second Amended Complaint (Dkt. 107, the "SAC") filed by Plaintiff Motive Technologies, Inc. ("Motive") on July 9, 2025, as follows:

**PRELIMINARY STATEMENT**

Since its founding in 2015, Samsara has been the pioneering leader in the field of data-driven operations powered by Internet-of-Things ("IoT") device connectivity. Its mission is to increase the safety, efficiency, and sustainability of physical operations that power the global economy. Samsara discovered and solved substantial problems associated with the inability to obtain real-time updates and actionable information effectively and accurately about vehicles while they were in transit. Its innovative fleet management and safety platform includes on-vehicle hardware with AI capability to record physical data, detect driving events, and communicate that information to Samsara's Connected Operations Cloud™, where smart analytics further process vehicle information and provide real-time, actionable analysis and data to drivers and vehicle fleet managers, increasing operational safety, sustainability, and efficiency.

Samsara's rise has been nothing less than meteoric, propelled in no small part by industry leading, best-in-class innovative products. Its groundbreaking research and development, intense focus on customer needs, and hard work have elevated Samsara's success. In 2019, only four years after its founding, Samsara reached unicorn status, surpassing $1 billion in valuation. By late 2022, it surpassed 1,600 employees worldwide and became the largest open ecosystem for physical operations with more than 200 integration partners on the Samsara platform.

Motive Technologies has taken a very different approach to grow its business. For years, Motive has been competing with Samsara through unfair and unlawful practices, including covertly accessing Samsara's platform using false names, fraudulent business entities, and improperly obtained security credentials to disguise itself as a Samsara customer. Motive's competitive mission has been to siphon Samsara's leading innovations and copy them into its own products; grossly misrepresent the capabilities of Samsara's products in Motive's advertisements and in Motive's paid, manipulated benchmarking "studies" that were anything but "independent"; and

infringe multiple Samsara patents.  When confronted, rather than end its unlawful activities Motive responded with bad-faith accusations and baseless retaliation.  To put a stop to Motive's misconduct, after giving Motive clear notice and a substantial opportunity to change its behavior, Samsara was forced to file a lawsuit in United States District Court and seek a formal investigation into Motive's unfair acts before the U.S. International Trade Commission (ITC).

Motive remains unwilling to admit what it did or provide Samsara with any reasonable remedy despite the undeniable evidence proving Motive's unlawful behavior.  That includes the countless instances when multiple Motive executives and product development personnel accessed and used Samsara's products and systems, and were caught on video engaging in that misconduct—actions that Motive has never denied undertaking.  Instead, after Samsara filed its litigation against Motive, Motive launched the present retaliatory lawsuit that effectively was a mirror image of Samsara's claims against Motive to change the narrative, distract and mislead the public from the undisputed evidence regarding Motive's undeniable misconduct and culture of copying, and falsely portray Samsara in a negative light.  But the serious problem for Motive is that—as confirmed in a related arbitration between the parties—Motive actually engaged in the alleged misconduct and Samsara did not.  *See, e.g.*, Ex. 1, AI Dashcam, Motive, https://gomotive.com/products/ai-dashcam/ (last accessed April 24, 2026) ("Statements by Motive on its website, in email messages, sales material and advertisements that benchmark tests conducted by Strategy Analytics and Virginia Tech Transportation Institute that the Motive Technologies, Inc., AI dash cam is three-to-four times more successful, accurate and speedy in detecting unsafe driving than Samsara Inc.'s AI dash cam has been ruled by a duly authorized Arbitrator to be literally false in violation of the Lanham Act 15 U.S.C. § 1125(a).").  The Arbitration involved claims related to false statements made by Motive based on Motive-commissioned benchmarking studies and Motive's fraudulent access of Samsara's platform, including false advertising under the Lanham Act, breach of contract, violation of law, and unfair competition claims.  *See, e.g.*, Ex. 2, Motive Techs., Inc., Registration Statement (Form S-1) at F-27 (Dec. 23, 2025).  The Partial Final Award has now issued.  The Partial Final Award directly impacts and will have preclusive effect on Motive's claims in this case.  Samsara has since filed a petition to confirm the arbitration award.  *See Samsara Inc. v. Motive Techs., Inc.*,

No. CPF-26-519615, Trans. ID # 78731595 (Cal. Super. Ct. S.F. Cnty Mar. 13, 2026). While Samsara believes the arbitration award should be fully available to the public for purposes of transparency, Motive seeks to seal the award in its entirety on the state court docket. *Id.*, Trans. ID # 78945742.

Similarly, in a proceeding before the International Trade Commission between the parties, an administrative law judge found that "Samsara ha[d] presented compelling evidence that it was Motive's *intent to copy* Samsara's products." Ex. 3, Certain Vehicle Telematics, Fleet Management, and Video-based Safety Systems, Devices, and Components Thereof, Inv. No. 337-TA-1393, Public Initial Determination at 242 (Sep. 8, 2025) (emphasis added). The administrative law judge likewise made clear that this "compelling evidence" shows Motive "did not simply identify features in Samsara's products that its own products lacked," but that "its employees went much further," going beyond "collecting competitive intelligence" and that Motive was "pursu[ing] this copying." *Id.* at 240–42. As to Motive's commissioned studies, the administrative law judge similarly found that "evidence supports that Motive commissioned, set parameters for, and had regular involvement in the VTTI study"; "determined which products and unsafe behaviors VTTI would test"; and that Strategy Analytics "undertook its study 'on behalf of Motive' and sought to 'benchmark[] performance across . . . four criteria, which Motive [ha]d identified.'" *Id.* at 277, 280.

As these determinations confirm, and as Samsara will demonstrate in this case, Motive's claims lack merit. At the same time, because Motive's deliberate infringement of Samsara's intellectual property has only escalated, Samsara asserts counterclaims against Motive for infringement of three Samsara patents.

**NATURE OF THE ACTION**

1.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the SAC and thus denies the allegations on that basis.

2.    Samsara states that the allegations contained in Paragraph 2 of the SAC are conclusions of law or characterization as to which no response is necessary. To the extent any response is required, Samsara admits that Motive brought the present lawsuit and otherwise denies

the allegations.

3.      Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the SAC and thus denies the allegations on that basis.

4.      Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the SAC and thus denies the allegations on that basis.

5.      Samsara denies the allegations contained in Paragraph 5 of the SAC, except it admits that the Samsara Vehicle Gateway was released in 2016.

6.      Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the SAC and thus denies the allegations on that basis.

7.      Samsara denies the allegations contained in Paragraph 7 of the SAC, except it admits that Motive commissioned at least two benchmarking studies on Samsara's products without Samsara's consent or authorization.

8.      Samsara denies the allegations contained in Paragraph 8 of the SAC, including because the administrative law judge in the ITC proceedings found through review of the evidence that "it was *Motive's* intent to copy *Samsara's* products."  Ex. 3, Public Initial Determination at 242.

9.      Samsara denies the allegations contained in Paragraph 9 of the SAC, including because if any such behavior occurred during the employee's term of employment with Samsara, the behavior was not recurring or used for product development purposes, Samsara has never condoned its employees accessing Motive's platform, and many of the individuals identified as having accessed Motive's platform no longer work at Samsara.  Samsara also states that the allegations concerning "fraud," "unfair competition," and "federal fraud and identity theft statutes" are conclusions of law or characterization as to which no response is required.

10.     Samsara denies the allegations contained in Paragraph 10 of the SAC, except it admits that Samsara's Code of Conduct states that Samsara "does not seek competitive advantages through illegal or unethical business practices."

11.     Samsara states that the allegations contained in Paragraph 11 of the SAC are conclusions of law or characterization as to which no response is necessary.  To the extent any

response is required, Samsara denies the allegations contained in Paragraph 11 of the SAC, except it admits that Samsara is a public company and states that its public SEC filings speak for themselves.

12.   Samsara states that the allegations contained in Paragraph 12 of the SAC are conclusions of law or characterization as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 12 of the SAC, except it admits that it has offered for sale and has sold the CM31 and CM32 dash cams.

13.   Samsara denies the allegations contained in Paragraph 13 of the SAC, except it admits that Motive paid Strategy Analytics, Inc. ("Strategy Analytics") to benchmark Motive's and Samsara's dash cams in a study that Motive directed and designed to benefit Motive and to Samsara's detriment, and that Motive published Strategy Analytics' report in April 2022.

14.   Samsara denies the allegations contained in Paragraph 14 of the SAC, except it admits that Samsara never consented to or authorized Motive's commission of the Strategy Analytics Report.

15.   Samsara denies the allegations contained in Paragraph 15 of the SAC, except it admits that the Strategy Analytics test results were designed to favor Motive over Samsara and, that Samsara demanded that Motive cease distributing the false conclusions of the Strategy Analytics study, including through Motive's website.

16.   Samsara denies the allegations contained in Paragraph 16 of the SAC, except it admits that Samsara never consented to or authorized Motive's commissioning of any benchmarking studies on Samsara's products, including any joint commission by the parties.

17.   Samsara denies the allegations contained in Paragraph 17 of the SAC, except it admits that Motive paid the Virginia Tech Transportation Institute ("VTTI") to benchmark Motive's and Samsara's dash cams in 2023 based on a study design that Motive manipulated to benefit Motive, to Samsara's detriment.

18.   Samsara denies the allegations in Paragraph 18 of the SAC, including because certain of Motive's statements about the results of Strategy Analytics' and VTTI's reports were ruled by an arbitrator to be literally false in violation of the Lanham Act and Motive was forced to

state this finding on its website (https://gomotive.com/products/ai-dashcam/ (Ex. 1)) and reproduced below:



19.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the SAC and thus denies the allegations on that basis.

20.    Samsara denies the allegations contained in Paragraph 20 of the SAC, except it admits that Samsara filed a complaint against Motive in the District Court of Delaware to put a stop to Motive's fraudulent access of Samsara's platform, false advertising, and unfair competition, and that Samsara also filed a complaint against Motive in the U.S. International Trade Commission to put a stop to Motive's patent infringement.

21.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the SAC and thus denies the allegations on that basis, except it admits that Motive filed the present lawsuit and that both companies have their principal places of business in California.

**PARTIES**

22.    Samsara admits that Motive is a Delaware corporation, with its principal place of business at 55 Hawthorne Street, Suite 400, San Francisco, CA 94105.

23.     Samsara admits that Samsara is a Delaware corporation, with its principal place of business at 1 De Haro Street, San Francisco, CA 94107.

## JURISDICTION AND VENUE

24.     Samsara states that the allegations contained in Paragraph 24 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara admits that Motive asserts claims under 35 U.S.C. § 271, 15 U.S.C. § 1125(a), and California state law, and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367.

25.     Samsara states that the allegations contained in Paragraph 25 of the SAC are conclusions of law to which no response is necessary. To the extent any response is required, Samsara admits that this Court has personal jurisdiction over the parties to this litigation.

26.     Samsara states that the allegations contained in Paragraph 26 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara admits that venue is proper in this District for only the purposes of the present case.

## DIVISIONAL ASSIGNMENT

27.     Samsara states that the allegations contained in Paragraph 27 of the SAC are conclusions of law as to which no response is necessary.

28.     Samsara states the allegations contained in Paragraph 28 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations in Paragraph 28 of the SAC.

## FACTS

29.     Samsara denies the allegations in Paragraph 29 of the SAC.

30.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the SAC and thus denies the allegations on that basis, except it admits that Motive was founded as "KeepTruckin."

31.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the SAC and thus denies the allegations on that basis.

32. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the SAC and thus denies the allegations on that basis.

33. Samsara denies the allegations contained in Paragraph 33 of the SAC, except it admits that Samsara was incorporated in 2015.

34. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning Motive's Driver App contained in Paragraph 34 of the SAC and thus denies the allegations on that basis. Samsara further denies the remaining allegations in Paragraph 34 of the SAC, except it admits that Samsara's Driver App was released in July 2016.

35. Samsara denies the allegations contained in Paragraph 35 of the SAC.

36. Samsara denies the allegations contained in Paragraph 36 of the SAC.

37. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the SAC and thus denies the allegations on that basis.

38. Samsara denies the allegations contained in Paragraph 38 of the SAC, except it admits that Samsara began offering in 2019 AI Dash Cams that can, among other things, detect tailgating, cell phone use, and driver distraction, and that Samsara has used the phrase "prevent accidents before they happen" in its advertisements.

39. Samsara denies the allegations contained in Paragraph 39 of the SAC, except it admits that Samsara continues to offer AI Dash Cams as of the date of this Answer.

40. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the SAC and thus denies the allegations on that basis.

41. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the SAC and thus denies the allegations on that basis.

42. Samsara states that the allegations contained in Paragraph 42 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 42 of the SAC.

43. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the SAC and thus denies the allegations on that basis.

44. Samsara denies the allegations contained in Paragraph 44 of the SAC, except it

admits that to the extent Mr. Billy Waldman or Ms. Lauren Roberts signed up for access to a Motive website, or to receive marketing communications from Motive, or anything else that Motive contends constitute an "access" of Motive's platform, at least some of such activities occurred before their employment with Samsara, and Samsara did not condone any such "access."

45.     Samsara denies the allegations contained in Paragraph 45 of the SAC, except it admits that to the extent that any Samsara employee signed up for access to a Motive website, or to receive marketing communications from Motive, or anything else that Motive contends constitute an "access" of Motive's platform, Samsara did not condone any such "access."

46.     Samsara denies the allegations contained in Paragraph 46 of the SAC, except it admits that Mr. Kiren Sekar was the Chief Product Officer and Chief Strategy Officer of Samsara, and that Mr. Sekar was a Samsara employee at the company's founding.  Samsara further states that its website speaks for itself.

47.     Samsara denies the allegations contained in Paragraph 47 of the SAC, except it admits that to the extent that Mr. Sekar created an account in relation to Motive or its website, or to receive marketing communications from Motive, Mr. Sekar did not review Motive's platform or gather any information that he or Samsara used for Samsara product development or business strategy or for any other improper purpose.

48.     Samsara denies the allegations contained in Paragraph 48 of the SAC, except it admits that Mr. Sean McGee is the Vice President of Product, Platform & Infrastructure at Samsara, and that Mr. McGee leads Samsara's product development and strategy, including as those relate to Samsara's platform. Samsara further admits that Mr. Michael Ross stopped working at Samsara in October 2020, and that to the extent Mr. McGee and Mr. Ross signed up for access to a Motive website, or to receive marketing communications from Motive, or anything else that Motive contends constitute an "access" of Motive's platform, Samsara did not condone any such access.

49.     Samsara denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 49 of the SAC to the extent that the named individuals are no longer employed at Samsara and thus denies the allegations on that basis. To the extent the individuals are still employed at Samsara, Samsara denies the allegations contained in Paragraph

49 of the SAC, including because if any such behavior occurred during the employee's term of employment with Samsara, the behavior was not recurring or used for product development purposes and Samsara has never condoned its employees accessing Motive's platform.

50.    Samsara denies the allegations contained in Paragraph 50 of the SAC, except it admits that competitors may, in certain circumstances, use one another's products, within the scope of the relevant terms of service and applicable law, and that Samsara may commission third-party studies on such products, including its own, within this scope. Samsara further admits that Samsara never consented to Motive's commissioning of benchmarking studies on Samsara's products, including a joint commission by the parties. Samsara denies the remaining allegations in Paragraph 50 of the SAC.

51.    Samsara denies the allegations contained in Paragraph 51 of the SAC.

52.    Samsara states that the allegations contained in Paragraph 52 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 52 of the SAC, except it admits that Motive sent a letter to Samsara on July 29, 2022, and that the letter speaks for itself.

53.    Samsara denies the allegations contained in Paragraph 53 of the SAC, except it admits that, on its face, U.S. Patent No. 11,875,580 ("the '580 patent") indicates that it issued on January 16, 2024 and is entitled "Camera Initialization for Lane Detection and Distance Estimation Using Single-View Geometry." Samsara also admits that SAC Exhibit A purports to be a copy of the '580 patent.

54.    Samsara denies the allegations contained in Paragraph 54 of the SAC.

55.    Samsara denies the allegations contained in Paragraph 55 of the SAC.

56.    Samsara denies Motive's characterization of claim 1 as alleged in Paragraph 56 of the SAC. For example, claim 1 recites a method and not a system. As another example, the claim requires "identifying one or more lines in the video using a predictive model, the one or more lines including a horizon line," and therefore "horizon line" is a required, not optional, element of the claim.

57.    Samsara denies the allegations contained in Paragraph 57 of the SAC.

58.     Samsara denies the allegations contained in Paragraph 58 of the SAC, except it admits that, on its face, U.S. Patent No. 12,136,276 ("the '276 patent") indicates that it issued on November 5, 2024 and is entitled "Camera Initialization for Lane Detection and Distance Estimation Using Single-View Geometry." Samsara also admits that SAC Exhibit C purports to be a copy of the '276 patent.

59.     Samsara denies the allegations contained in Paragraph 59 of the SAC, except it admits that, on its face, U.S. Patent No. 12,062,243 ("the '243 patent") indicates that it issued on August 13, 2024 and is entitled "Distracted Driving Detection using a Multi-Task Training Process." Samsara also admits that SAC Exhibit E purports to be a copy of the '243 patent.

60.     Samsara denies the allegations contained in Paragraph 60 of the SAC.

61.     Samsara denies the allegations contained in Paragraph 61 of the SAC.

62.     Samsara denies the allegations contained in Paragraph 62 of the SAC.

63.     Samsara denies the allegations contained in Paragraph 63 of the SAC, except it admits that Samsara currently supports the CM31 and CM32 Dash Cams.

64.     Samsara states that the allegations contained in Paragraph 64 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 64 of the SAC, except it admits that Samsara's Connected Operations™ Cloud platform ("Samsara Cloud") receives data collected from dash cams (including the CM31 and CM32 Dash Cams).

65.     Samsara states that the allegations contained in Paragraph 65 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 65 of the SAC.

66.     Samsara states that the allegations contained in Paragraph 66 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 66 of the SAC.

67.     Samsara denies the allegations contained in Paragraph 67 of the SAC, except it admits that one or more of its current or past employees may have formerly been employed by Motive.

68. Samsara states that the allegations contained in Paragraph 68 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 68 of the SAC.

69. Samsara states that the allegations contained in Paragraph 69 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 69 of the SAC and thus denies the allegations on that basis.

70. Samsara states that the allegations contained in Paragraph 70 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 70 of the SAC, except it admits that one or more of its current or past employees may have formerly been employed by Motive.

71. Samsara states that the allegations contained in Paragraph 71 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 71 of the SAC.

72. Samsara states that the allegations contained in Paragraph 72 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 72 of the SAC.

73. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 of the SAC, including the identity of Former Employee 1, and thus denies the allegations on that basis.

74. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the SAC and therefore denies the allegations on that basis.

75. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the SAC and therefore denies the allegations on that basis.

76. Samsara denies the allegations contained in Paragraph 76 of the SAC.

77. Samsara denies knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Paragraph 77 of the SAC and therefore denies the allegations on that basis.

78. Samsara denies the allegations contained in Paragraph 78 of the SAC.

79. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 of the SAC and therefore denies the allegations on that basis.

80. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 of the SAC and therefore denies the allegations on that basis.

81. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the SAC and therefore denies the allegations on that basis.

82. Samsara denies the allegations contained in Paragraph 82 of the SAC.

83. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the SAC and thus denies the allegations on that basis, except that it admits that Samsara's dash cams have used the Qualcomm chip platform. Samsara further denies that Motive currently "remains the only major fleet management dashcam provider using an Ambarella chip," including because Samsara's CM33 and CM34 Dash Cams use the publicly available Ambarella CV22 System-on-Chip ("SoC").

84. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84 of the SAC and thus denies the allegations on that basis, except it admits that it was publicly known in 2021 that Motive was using a publicly available Ambarella chip for its AI Dashcam.

85. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 of the SAC and thus denies the allegations on that basis, except it admits that Samsara hired Mr. Olivier Boireau in October 2019.

86. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 of the SAC and therefore denies them on that basis.

87. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 87 of the SAC and therefore denies them on that basis.

88. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 88 of the SAC and therefore denies them on that basis.

89. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 89 of the SAC and thus denies the allegations on that basis, except it admits that Samsara hired Ms. Pearl Lai in September 2021.

90. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 of the SAC and therefore denies them on that basis.

91. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91 of the SAC and therefore denies them on that basis.

92. Samsara denies the allegations contained in Paragraph 92 of the SAC.

93. Samsara denies the allegations contained in Paragraph 93 of the SAC, except admits that its CM33 and CM34 Dash Cams use the publicly available Ambarella CV22 SoC.

94. Samsara denies the allegations contained in Paragraph 94 of the SAC.

95. Samsara denies the allegations contained in Paragraph 95 of the SAC.

96. Samsara denies the allegations contained in Paragraph 96 of the SAC.

97. Samsara denies the allegations contained in Paragraph 97 of the SAC.

98. Samsara denies the allegations contained in Paragraph 98 of the SAC.

99. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 99 of the SAC and thus denies the allegations on that basis.

100. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 100 of the SAC and thus denies the allegations on that basis.

101. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 101 of the SAC and thus denies the allegations on that basis.

102.    Samsara states that the allegations contained in Paragraph 102 of the SAC are conclusions of law as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 102 of the SAC.

103.    Samsara states that the allegations contained in Paragraph 103 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 103 of the SAC, except it admits that Motive sent a letter to Samsara on July 29, 2022, that Samsara sent a letter to Motive on September 15, 2022, and that there was subsequent written correspondence between the parties, and further states that the letters speak for themselves.

104.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 104 of the SAC and thus denies the allegations on that basis.

105.    Samsara denies the allegations contained in Paragraph 105 of the SAC and further states that the alleged advertisements speak for themselves.

106.    Samsara denies the allegations contained in Paragraph 106 of the SAC and further states that the alleged advertisements speak for themselves.

107.    Samsara denies the allegations contained in Paragraph 107 of the SAC and further states that the alleged advertisements speak for themselves.

108.    Samsara denies the allegations contained in Paragraph 108 of the SAC, and further states that the alleged advertisements speak for themselves.

109.    Samsara denies the allegations contained in Paragraph 109 of the SAC and further states that the alleged advertisements speak for themselves.

110.    Samsara admits that in December 2021 Motive sent a letter to Samsara stating that Motive believed Samsara had made false statements about Motive's products.  Samsara denies the remaining allegations contained in Paragraph 110 of the SAC.

111.    No response to these allegations is necessary after the Court's Order on Samsara's motion to dismiss, which held that only Motive's Lanham Act claims from 2021 will go forward in this case.  Dkt. 177.  To the extent any response is required, however, Samsara denies the

allegations contained in Paragraph 111 of the SAC, except it admits that Samsara sent potential customers video footage of Samsara's dash cam in or around April 2020.

112. No response to these allegations is necessary after the Court's Order on Samsara's motion to dismiss, which held that only Motive's Lanham Act claims from 2021 will go forward in this case. Dkt. 177. To the extent any response is required, however, Samsara denies the allegations contained in Paragraph 112 of the SAC, except it admits that Samsara has posted videos online about Samsara's products, including on Samsara's website and on YouTube.

113. No response to these allegations is necessary after the Court's Order on Samsara's motion to dismiss, which held that only Motive's Lanham Act claims from 2021 will go forward in this case. Dkt. 177. Samsara also states that the allegations contained in Paragraph 113 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, however, Samsara denies the allegations contained in Paragraph 113 of the SAC, except it admits that Samsara posted a video online in February 2019 and further states that the video speaks for itself.

114. Samsara denies the allegations contained in Paragraph 114 of the SAC.

115. Samsara states that the allegations contained in Paragraph 115 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 115 of the SAC.

116. Samsara denies the allegations contained in Paragraph 116 of the SAC, except it admits that in 2021, Motive commissioned Strategy Analytics, now known as TechInsights, to compare the dashcams sold by Motive, Samsara, and Lytx in a study that Motive directed.

117. Samsara denies the allegations contained in Paragraph 117 of the SAC, except it admits that companies in the fleet management industry may commission third-party studies within the scope of the relevant terms of service and applicable law, and that truthful and objective studies that have not been manipulated by Motive to falsely portray the features, functionality, or performance of the products may aid current and prospective customers.

118. Samsara denies the allegations contained in Paragraph 118 of the SAC and further states that the Strategy Analytics report speaks for itself.

119.    Samsara denies the allegations contained in Paragraph 119 of the SAC and further states that the Strategy Analytics report speaks for itself.

120.    Samsara denies the allegations contained in Paragraph 120 of the SAC and further states that the Strategy Analytics report speaks for itself.

121.    Samsara denies the allegations contained in Paragraph 121 of the SAC, including because Motive's statements about the results of Strategy Analytics' report, *e.g.*, the Motive AI dash cam is three to four times more successful, accurate and speedy in detecting unsafe driving than Samsara's AI dash cam, were ruled by an arbitrator to be literally false in violation of the Lanham Act and Motive was forced to state this finding on its website (https://gomotive.com/products/ai-dashcam/ (Ex. 1)).

122.    Samsara denies the allegations contained in Paragraph 122 of the SAC, including because Motive's statements about the results of Strategy Analytics' report, *e.g.*, the Motive AI dash cam is three to four times more successful, accurate and speedy in detecting unsafe driving than Samsara's AI dash cam, were ruled by an arbitrator to be literally false in violation of the Lanham Act and Motive was forced to state this finding on its website (https://gomotive.com/products/ai-dashcam/ (Ex. 1)).

123.    Samsara denies the allegations contained in Paragraph 123 of the SAC, including because Motive's statements about the results of Strategy Analytics' report, *e.g.*, the Motive AI dash cam is three to four times more successful, accurate and speedy in detecting unsafe driving than Samsara's AI dash cam, were ruled by an arbitrator to be literally false in violation of the Lanham Act and Motive was forced to state this finding on its website (https://gomotive.com/products/ai-dashcam/ (Ex. 1)).

124.    Samsara denies the allegations contained in Paragraph 124 of the SAC, except it admits that Motive posted the Strategy Analytics report on Motive's website in April 2022.

125.    Samsara denies the allegations contained in Paragraph 125 of the SAC, except it admits that Samsara has sued Motive alleging, among other things, false advertising claims based on Motive's commissioning and advertising of the Strategy Analytics report, and that Samsara never consented to Motive's commissioning of benchmarking studies on Samsara's products,

including a joint commission by the parties.

126. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 126 of the SAC and thus denies those allegations on that basis, except it admits that Motive paid VTTI to perform a study comparing the Motive DC-54, Samsara HW-CM32, and Lytx DriveCam SF400 dashcams based on a study design that Motive manipulated.

127. Samsara denies the allegations contained in Paragraph 127 of the SAC, including because Motive's statements about the results of VTTI's report, *e.g.*, the Motive AI dash cam is three to four times more successful, accurate and speedy in detecting unsafe driving than Samsara's AI dash cam, were ruled by an arbitrator to be literally false in violation of the Lanham Act and Motive was forced to state this finding on its website (https://gomotive.com/products/ai-dashcam/ (Ex. 1)).

128. Samsara denies the allegations contained in Paragraph 128 of the SAC and further states that the VTTI study speaks for itself.

129. Samsara denies the allegations contained in Paragraph 129 of the SAC and further states that the VTTI study speaks for itself.

130. Samsara denies the allegations contained in Paragraph 130 of the SAC and further states that the VTTI study speaks for itself.

131. Samsara denies the allegations contained in Paragraph 131 of the SAC including because Motive's statements about the results of Strategy Analytics' report, *e.g.*, the Motive AI dash cam is three to four times more successful, accurate and speedy in detecting unsafe driving than Samsara's AI dash cam, were ruled by an arbitrator to be literally false in violation of the Lanham Act and Motive was forced to state this finding on its website (https://gomotive.com/products/ai-dashcam/ (Ex. 1)).

132. Samsara denies the allegations contained in Paragraph 132 of the SAC, except it admits that Samsara has brought suit against Motive alleging, among other things, false advertising claims based on Motive's commissioning and advertising of the VTTI, and that Samsara never consented to Motive's commissioning of benchmarking studies on Samsara's products, including

a joint commission by the parties. Samsara further denies the allegations contained in paragraph 132 of the SAC because Motive's statements about the results of Strategy Analytics' and VTTI's reports, including that the Motive AI dash cam is three to four times more successful, accurate and speedy in detecting unsafe driving than Samsara's AI dash cam, were ruled by an arbitrator to be literally false in violation of the Lanham Act and Motive was forced to state this finding on its website (https://gomotive.com/products/ai-dashcam/ (Ex. 1)).

133.    Samsara states that the allegations contained in Paragraph 133 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 133 of the SAC and thus denies the allegations on that basis.

134.    Samsara states that the allegations contained in Paragraph 134 of the SAC are conclusions of law as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 134 of the SAC.

135.    Samsara denies the allegations contained in Paragraph 135 of the SAC, except it admits that it filed a lawsuit against Motive in federal court in Delaware on January 24, 2024, that Motive denied the allegations therein, and that the Delaware action was transferred to this Court on August 14, 2024.

136.    Samsara states that the allegations contained in Paragraph 136 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 136 of the SAC, except it admits that Samsara launched a website (www.innovationprotection.com), which speaks for itself.

137.    Samsara states that the allegations contained in Paragraph 137 are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 137 and further states that the website (www.innovationprotection.com) speaks for itself.

138.    Samsara states that the allegations contained in Paragraph 138 are conclusions of law and characterizations as to which no response is necessary. To the extent any response is

required, Samsara denies the allegations contained in Paragraph 138 and further states that the website (www.innovationprotection.com) speaks for itself.

139. Samsara states that the allegations contained in Paragraph 139 are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 139 of the SAC, including because as the administrative law judge found in the ITC proceedings between the parties, there is evidence that "it was *Motive's* intent to copy *Samsara's* products." Ex. 3, Public Initial Determination at 242.

140. Samsara states that the allegations contained in Paragraph 140 are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 140 of the SAC.

141. Samsara states that the allegations contained in Paragraph 141 are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 141 of the SAC, except it admits that Samsara filed a lawsuit against Motive in federal court in Delaware on January 24, 2024.

142. Samsara denies the allegations contained in Paragraph 142 of the SAC.

143. Samsara denies the allegations contained in Paragraph 143 of the SAC.

144. Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding "Company 1" contained in Paragraph 144 of the SAC and thus denies the allegations on that basis.

145. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding "Company 2" contained in Paragraph 145 of the SAC and thus denies the allegations on that basis.

146. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding "Company 3" contained in Paragraph 146 of the SAC and thus denies the allegations on that basis.

147. Samsara states that the allegations contained in Paragraph 147 of the SAC are conclusions of law as to which no response is required. To the extent any response is required,

Samsara denies the allegations contained in Paragraph 147 of the SAC.

148. Samsara denies the allegations in Paragraph 148 of the SAC, including to the extent Samsara denies the allegations in Paragraphs 1–21 and 43–52 of the SAC.

149. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 149 of the SAC and thus denies the allegations on that basis.

150. Samsara denies the allegations contained in Paragraph 150 of the SAC and further states that to the extent that any Samsara employees accessed Motive's platform, Samsara did not condone such access.

151. Samsara states that the allegations contained in Paragraph 151 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 151 of the SAC.

152. Samsara states that the allegations contained in Paragraph 152 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 152 of the SAC.

153. Samsara states that the allegations contained in Paragraph 153 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 153 of the SAC.

154. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 154 of the SAC and thus denies the allegations on that basis.

155. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 155 of the SAC and thus denies the allegations on that basis.

156. Samsara states that the allegations contained in Paragraph 156 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 156 of the SAC.

**FIRST CAUSE OF ACTION**

**(Alleged Infringement of the '580 patent)**

157.    Samsara denies Paragraph 157 of the SAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 53–65 of the SAC.

158.    Samsara admits that Motive Technologies, Inc. is listed as the assignee on the face of the '580 patent.  Samsara lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 158 of the SAC and thus denies the allegations on that basis.

159.    Samsara denies the allegations contained in Paragraph 159 of the SAC.

160.    Samsara denies the allegations contained in Paragraph 160 of the SAC, except it admits that claim 1 of the '580 patent recites: "A method comprising: receiving, over a network from a camera device, a video comprising a set of image frames; identifying one or more lines in the video using a predictive model, the one or more lines including a horizon line; computing at least one camera parameter based on the one or more lines; overlaying the one or more lines on the video to generate an overlaid video; transmitting the overlaid video to an annotator device for manual review; receiving a confirmation from the annotator device, the confirmation indicating that the one or more lines are accurate; and transmitting data representing the at least one camera parameter to the camera device."

161.    Samsara denies the allegations contained in Paragraph 161 of the SAC, except it admits that the Samsara Cloud receives image and video data from dashcams.

162.    Samsara denies the allegations contained in Paragraph 162 and SAC Exhibit B. Initially, claim 1 of the '580 patent recites a method that is performed not by or on a "camera device."  Therefore, the accused Samsara Dash Cams (including the CM 31 and 32 models) do not practice any limitation of claim 1.  Further, the accused Samsara products do not meet the limitations of claim 1 of the '580 patent.  Although Samsara has provided Motive with adequate opportunity to review the source code for the accused Samsara functionality and to confirm Samsara's non-infringement, Motive maintains its patent infringement allegations.

163.    Samsara states that the allegations contained in Paragraph 163 of the SAC are

conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations in Paragraph 163 of the SAC, including because Samsara does not infringe claim 1 of the '580 patent.

164. Samsara states that the allegations contained in Paragraph 164 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations in Paragraph 164, including because Samsara does not infringe claim 1 of the '580 patent.

165. Samsara states that the allegations contained in Paragraph 165 are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 165, including because Samsara does not infringe claim 1 of the '580 patent. Samsara also denies Paragraph 165 of the SAC to the extent it alleges that Samsara "has sold and offered for sale, and continues to sell and offer for sale," the Samsara Cloud.

166. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 166 of the SAC and thus denies the allegations on that basis, except it admits that it has "not sought or obtained from Motive a license under the '580 Patent."

167. Samsara denies the allegations contained in Paragraph 167 of the SAC.

168. Samsara denies the allegations contained in Paragraph 168 of the SAC.

169. Samsara denies that Motive is entitled to a judgment as set forth in the Prayer for Relief in the SAC.

## SECOND CAUSE OF ACTION

### (Alleged Violation of Lanham Act, 15 U.S.C. § 1125(a))

170. No response to these allegations is necessary to the extent that Paragraph 170 of the SAC incorporates 111–113 after the Court's Order on Samsara's motion to dismiss, which held that only Motive's Lanham Act claims from 2021 will go forward in this case. Dkt. 177. However, to the extent any response is required, and with respect to the remainder of Paragraph 170 of the SAC, Samsara denies Paragraph 170 of the SAC to the extent Samsara denies the allegations contained

in Paragraphs 1–21 and 102–114 of the SAC.

171.   Samsara admits that the parties are direct competitors, including in the vehicle fleet management industry.

172.   Samsara denies the allegations contained in Paragraph 172 of the SAC.

173.   To the extent Paragraph 173 of the SAC refers to statements not based on alleged events in 2021, no response to the allegations is necessary in view of the Court's Order on Samsara's motion to dismiss, which held that only Motive's Lanham Act claims from 2021 will go forward in this case.  Dkt. 177.  To the extent any response is required, however, Samsara denies the allegations contained in Paragraph 173 of the SAC.

174.   Samsara states that the allegations contained in Paragraph 174 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 174 of the SAC.

175.   Samsara states that the allegations contained in Paragraph 175 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 175 of the SAC.

176.   Samsara states that the allegations contained in Paragraph 176 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 176 of the SAC.

177.   Samsara states that the allegations contained in Paragraph 177 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 177 of the SAC and thus denies the allegations on that basis.

178.   Samsara states that the allegations contained in Paragraph 178 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 178 of the SAC and thus denies the allegations on that basis.

179.    Samsara states that the allegations contained in Paragraph 179 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 179 of the SAC and thus denies the allegations on that basis.

180.    Samsara states that the allegations contained in Paragraph 180 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 180 of the SAC.

181.    Samsara states that the allegations contained in Paragraph 181 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 181 of the SAC.

182.    Samsara denies that Motive is entitled to injunctive relief and recovery of any damages, treble damages, attorneys' fees, costs, and Samsara's profits.

## THIRD CAUSE OF ACTION

### (Fraud)

183.    Samsara denies Paragraph 183 of the SAC to the extent Samsara denies the allegations in Paragraphs 1–21 and 43–52 of the SAC.

184.    Samsara denies the allegations contained in Paragraph 184 of the SAC.

185.    Samsara denies the allegations contained in Paragraph 185 of the SAC.

186.    Samsara denies the allegations contained in Paragraph 186 of the SAC.

187.    Samsara denies the allegations contained in Paragraph 187 of the SAC.

188.    Samsara denies the allegations contained in Paragraph 188 of the SAC.

189.    Samsara states that the allegations contained in Paragraph 189 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 189 of the SAC.

190.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 190 of the SAC and thus denies the allegations on that basis.

191.    Samsara states that the allegations contained in Paragraph 191 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 191 of the SAC and thus denies the allegations on that basis.

192.    Samsara denies that Motive is entitled to compensatory damages under Cal. Civ. Code § 1709 et seq. or under California common law.

193.    Samsara denies that Motive is entitled to recover any damages, including damages for conduct beyond three years before the filing of the present lawsuit.  Samsara lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 193 of the SAC and thus denies those allegations on that basis.

## FOURTH CAUSE OF ACTION

**(Alleged Violation of California Unfair Competition Law, Cal. Civ. Code § 17200)**

194.    Samsara denies Paragraph 194 of the SAC to the extent Samsara denies the allegations contained in Paragraphs 1–21, 43–52, 98–114, and 134–146 of the SAC.

195.    Samsara states that the allegations contained in Paragraph 195 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 195 of the SAC.

196.    Samsara denies the allegations contained in Paragraph 196 of the SAC.

197.    Samsara denies the allegations contained in Paragraph 197 of the SAC.

198.    Samsara states that the allegations contained in Paragraph 198 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 198 of the SAC and thus denies the allegations on that basis.

199.    Samsara denies that Motive is entitled to (1) recover any restitution and (2) any injunction.

200.    Samsara denies that Motive is entitled to recover any damages, including damages for conduct beyond four years before the filing of the present lawsuit.  Samsara lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 200 of the SAC and thus denies those allegations on that basis.

## FIFTH CAUSE OF ACTION

**(Alleged Violation of California's Uniform Trade Secrets Act,
Cal. Civ. Code §§ 3426 to 3426.11)**

201.    Samsara denies Paragraph 201 of the SAC to the extent Samsara denies the allegations in Paragraphs 1–21 and 66–97 of the SAC.

202.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 202 of the SAC and thus denies the allegations on that basis.

203.    Samsara states that the allegations contained in Paragraph 203 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 203 of the SAC and thus denies the allegations on that basis.

204.    Samsara states that the allegations contained in Paragraph 204 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 204 of the SAC and thus denies the allegations on that basis.

205.    Samsara states that the allegations contained in Paragraph 205 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegation in Paragraph 205 of the SAC.  Samsara denies the allegation that "[i]n violation of Motive's rights, Samsara misappropriated Motive's confidential, proprietary, and trade secret information through the improper and unlawful means alleged [in the SAC]."  As to the allegations that Samsara "recruit[ed]" "Motive employees" with

"detailed knowledge of proprietary information to re-create Motive's dashcam, fleet management solutions, and other products" and "detailed knowledge of proprietary customer information," Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the extent of such knowledge possessed by any Motive employee who worked for Samsara and thus denies the allegation on that basis; Samsara also denies the allegation to the extent it asserts that Samsara hired any individual with an intention to "re-create Motive's dashcam, fleet management solutions, and other products."

206. Samsara states that the allegations contained in Paragraph 206 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations in Paragraph 206 of the SAC.

207. Samsara states that the allegations contained in Paragraph 207 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 207 of the SAC.

208. Samsara denies the allegations contained in Paragraph 208 of the SAC, including to the extent it alleges (a) that Samsara had or has possession, custody, or control of Motive trade secrets or confidential information and/or (b) that Samsara "is retaining and using Motive's trade secrets and confidential information."

209. Samsara states that the allegations contained in Paragraph 209 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 209 of the SAC.

210. Samsara states that the allegations contained in Paragraph 210 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 210 of the SAC and denies that Motive is entitled to any remedy or judgment as set forth in the Prayer for Relief in the SAC.

211. Samsara denies the allegations contained in Paragraph 211 of the SAC.

**SIXTH CAUSE OF ACTION**

**(Alleged Violation of Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*)**

212.     Samsara denies Paragraph 212 of the SAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 66–97 of the SAC.

213.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 213 of the SAC and thus denies the allegations on that basis.

214.     Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 214 of the SAC and thus denies the allegations on that basis, except it admits that Motive's dashcam and fleet management solutions are used, sold, shipped, or ordered in, or intended to be used, sold, shipped, or ordered in interstate or foreign commerce.

215.     Samsara states that the allegations contained in Paragraph 215 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 215 of the SAC and thus denies the allegations on that basis.

216.     Samsara states that the allegations contained in Paragraph 216 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies that "Motive has made reasonable efforts to maintain the confidentiality and secrecy of its [alleged] proprietary information."  Samsara denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 216 of the SAC and thus denies the allegations on that basis.

217.     Samsara states that the allegations contained in Paragraph 217 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegation contained in Paragraph 217 of the SAC.  Samsara denies the allegation that "[i]n violation of Motive's rights, Samsara misappropriated Motive's confidential, proprietary, and trade secret information through the improper and unlawful

means alleged [in the SAC]." As to the allegations that Samsara "recruit[ed]" "Motive employees" with "detailed knowledge of proprietary information to re-create Motive's dashcam, fleet management solutions, and other products" and "detailed knowledge of proprietary customer information," Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations about the extent of such knowledge possessed by any Motive employee who worked for Samsara and thus denies the allegations on that basis; Samsara also denies the allegations to the extent they assert that Samsara hired any individual with an intention to "re-create Motive's dashcam, fleet management solutions, and other products."

218.   Samsara states that the allegations contained in Paragraph 218 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations in Paragraph 218 of the SAC.

219.   Samsara states that the allegations contained in Paragraph 219 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 219 of the SAC.

220.   Samsara denies the allegations contained in Paragraph 220 of the SAC, including to the extent it alleges (a) that Samsara had or has possession, custody, or control of Motive trade secrets or confidential information and/or (b) that Samsara "is retaining and using Motive's trade secrets and confidential information."

221.   Samsara states that the allegations contained in Paragraph 221 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 221 of the SAC.

222.   Samsara states that the allegations contained in Paragraph 222 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 222 of the SAC and denies that Motive is entitled to any remedy or judgment as set forth in the Prayer for Relief in the SAC.

223.   Samsara denies the allegations contained in Paragraph 223 of the SAC.

**SEVENTH CAUSE OF ACTION**

**(Alleged Defamation)**

224. Samsara denies Paragraph 224 of the SAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 134–140 of the SAC.

225. Samsara states that the allegations contained in Paragraph 225 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations contained in Paragraph 225 of the SAC, and further states that the website (www.innovationprotection.com) speaks for itself.

226. Samsara denies the allegations in Paragraph 226 of the SAC and further states that the website (www.innovationprotection.com) speaks for itself.

227. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding what third parties "reasonably understood" contained in Paragraph 227 of the SAC and thus denies the allegations on that basis. Samsara denies the remainder of the allegations contained in Paragraph 227 of the SAC.

228. Samsara states that the allegations contained in Paragraph 228 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 228 of the SAC.

229. Samsara states that the allegations contained in Paragraph 229 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 229 of the SAC.

230. Samsara states that the allegations contained in Paragraph 230 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 230 of the SAC.

231. Samsara denies the allegations contained in Paragraph 231 of the SAC.

232. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 232 of the SAC and thus denies the allegations on that basis.

233. Samsara states that the allegations contained in Paragraph 233 of the SAC are

conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 233 of the SAC and thus denies the allegations on that basis.

234. Samsara states that the allegations contained in Paragraph 234 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the allegations contained in Paragraph 234 of the SAC.

235. Samsara denies that Motive is entitled to reputational and punitive damages. Samsara states that the remaining allegations contained in Paragraph 235 of the SAC are conclusions of law and characterizations as to which no response is required. To the extent any response is required, Samsara denies the remaining allegations contained in Paragraph 235 of the SAC.

236. Samsara states that the allegations contained in Paragraph 236 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 236 of the SAC and thus denies the allegations on that basis.

237. Samsara denies that Motive is entitled to any injunctive relief or recovery of damages, including presumed, general, specific, and punitive damages. Samsara denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 237 of the SAC and thus denies those allegations on that basis.

## EIGHTH CAUSE OF ACTION

### (Alleged Intentional Interference with Prospective Economic Relations)

238. Samsara denies Paragraph 238 of the SAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 141–146 of the SAC.

239. Samsara denies the allegations contained in Paragraph 239 of the SAC.

240. Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding Company 1, Company 2, and Company 3 contained in Paragraph 240

of the SAC and thus denies the allegations on that basis.  Samsara denies the remaining allegations in Paragraph 240 of the SAC.

241.   Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 241 of the SAC and thus denies the allegations on that basis.

242.   Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 242 of the SAC and thus denies the allegations on that basis.

243.   Samsara states that the allegations contained in Paragraph 243 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 243 of the SAC.

244.   Samsara states that the allegations contained in Paragraph 244 of the SAC are conclusions of law and characterizations as to which no response is required.  To the extent any response is required, Samsara denies the allegations contained in Paragraph 244 of the SAC.

245.   Samsara denies the allegations contained in Paragraph 245 of the SAC.

246.   Samsara lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 246 of the SAC and thus denies the allegations on that basis.

247.   Samsara denies that Motive is entitled to any recovery of damages.  Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 247 of the SAC and thus denies the allegations on that basis.

248.   Samsara denies that Motive is entitled to any injunctive relief.  Samsara denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 248 of the SAC and thus denies those allegations on that basis.

**NINTH CAUSE OF ACTION**

**(Infringement of the '276 Patent)**

249.   Samsara denies Paragraph 249 of the SAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 53–65 of the SAC.

250.   Samsara admits that Motive Technologies, Inc. is listed as the assignee on the face

of the '276 patent. Samsara lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 250 of the SAC and thus denies the allegations on that basis.

251. Samsara denies the allegations contained in Paragraph 251 of the SAC.

252. Samsara denies the allegations contained in Paragraph 252 of the SAC, except it admits that claim 1 of the '276 patent recites: "A method comprising: receiving an image of a roadway recorded by a camera device installed within a vehicle; detecting a horizon line in the image; overlaying a line on the image to generate an overlaid image; transmitting the overlaid image to a computing device over a network; receiving a modification of the line from the computing device, the modification comprising a new line at a second position; computing a camera parameter based on the new line; and transmitting data representing the camera parameter to the camera device."

253. Samsara denies the allegations contained in Paragraph 253 of the SAC, except it admits that the Samsara Cloud receives image and video data from dashcams.

254. Samsara denies the allegations contained in Paragraph 254 of the SAC.

255. Samsara states that the allegations contained in Paragraph 255 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations in Paragraph 255 of the SAC, including because Samsara does not infringe claim 1 of the '276 patent.

256. Samsara states that the allegations contained in Paragraph 256 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations in Paragraph 256 of the SAC, including because Samsara does not infringe claim 1 of the '276 patent.

257. Samsara states that the allegations contained in Paragraph 257 of the SAC are conclusions of law and characterizations as to which no response is necessary. To the extent any response is required, Samsara denies the allegations in Paragraph 257 of the SAC, including because Samsara does not infringe claim 1 of the '276 patent. Samsara also denies Paragraph 257 of the SAC to the extent it alleges that Samsara "has sold and offered for sale, and continues to sell

and offer for sale," the Samsara Cloud.

258.    Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 258 of the SAC and thus denies the allegations on that basis, except it admits that it has "not sought or obtained from Motive a license under the '276 Patent."

259.    Samsara denies the allegations contained in Paragraph 259 of the SAC.

260.    Samsara denies the allegations contained in Paragraph 260 of the SAC.

261.    Samsara denies that Motive is entitled to a judgment as set forth in the Prayer for Relief in the SAC.

**TENTH CAUSE OF ACTION**

**(Infringement of the '243 Patent)**

262.    Samsara denies Paragraph 262 of the SAC to the extent Samsara denies the allegations contained in Paragraphs 1–21 and 53–65 of the SAC.

263.    Samsara admits that Motive Technologies, Inc. is listed as the assignee on the face of the '243 patent.  Samsara lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 263 of the SAC and thus denies the allegations on that basis.

264.    Samsara denies the allegations contained in Paragraph 264 of the SAC.

265.    Samsara denies the allegations contained in Paragraph 265 of the SAC, except it admits that claim 1 of the '243 patent recites:  "A method comprising: inputting labeled examples into a neural network, the neural network comprising: a backbone network, and one or more prediction heads coupled to the backbone network, the one or more prediction heads comprising one or more of a distraction classification prediction head, object detection prediction head, and a pose estimation prediction head; minimizing a loss based on outputs of the one or more prediction heads causing a change in parameters of the backbone network; and storing a distraction classification model after minimizing the loss, the distraction classification model comprising the parameters of the backbone network and parameters of at least one of the one or more prediction heads."

266.   Samsara denies the allegations contained in Paragraph 266 of the SAC.

267.   Samsara denies the allegations contained in Paragraph 267 and SAC Exhibit F.

268.   Samsara states that the allegations contained in Paragraph 268 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations in Paragraph 268 of the SAC, including because Samsara does not infringe claim 1 of the '243 patent.

269.   Samsara states that the allegations contained in Paragraph 269 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations in Paragraph 269 of the SAC, including because Samsara does not infringe claim 1 of the '243 patent.

270.   Samsara states that the allegations contained in Paragraph 270 of the SAC are conclusions of law and characterizations as to which no response is necessary.  To the extent any response is required, Samsara denies the allegations in Paragraph 270 of the SAC, including because Samsara does not infringe claim 1 of the '243 patent.  Samsara also denies Paragraph 270 of the SAC to the extent it alleges that Samsara "has sold and offered for sale, and continues to sell and offer for sale," the Samsara Cloud.

271.   Samsara denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 271 of the SAC and thus denies the allegations on that basis, except it admits that it has "not sought or obtained from Motive a license under the '243 Patent."

272.   Samsara denies the allegations contained in Paragraph 272 of the SAC.

273.   Samsara denies the allegations contained in Paragraph 273 of the SAC.

274.   Samsara denies that Motive is entitled to a judgment as set forth in the Prayer for Relief in the SAC.

## **AFFIRMATIVE DEFENSES**

275.   Samsara incorporates the foregoing responses as though fully set forth in each of the affirmative defenses listed below.  Further, Samsara reserves the right to further amend this answer and assert any other affirmative defenses available to it at any time in the future.  Without conceding

that any of the following must be pled as affirmative defenses or that Samsara has the burden of proof on any of them, Samsara alleges the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

276.   The SAC fails to state any claim upon which relief may be granted.  For example, as the Court decided in its Order, Motive failed to state a claim upon which relief could be granted for its Lanham Act claims outside of events from 2021.  *See* Dkt. 177.

## SECOND AFFIRMATIVE DEFENSE

### (No Infringement of the Motive Asserted Patents)

277.   Samsara has not infringed and does not currently infringe any asserted claim of the Motive Asserted Patents, literally or under the doctrine of equivalents, directly or indirectly.

## THIRD AFFIRMATIVE DEFENSE

### (No DOE Due to Prosecution History Estoppel, Claim Vitiation, and/or Ensnarement)

278.   To the extent Motive alleges infringement under the doctrine of equivalents, the relief sought by Motive is barred under prosecution history estoppel, claim vitiation, and/or ensnarement.

## FOURTH AFFIRMATIVE DEFENSE

### (Prosecution History Disclaimer)

279.   Motive is estopped from construing the asserted claims of the Motive Asserted Patents to cover or include products manufactured, used, imported, sold, or offered for sale by Samsara or methods used by Samsara because of amendments, admissions, representations, or statements made before the United States Patent and Trademark Office ("USPTO") during the prosecution of the application leading to the issuance of the Motive Asserted Patents or applications related thereto, because of disclosures or language in the specification of the Motive Asserted Patents, and/or because of limitations in the claims of the Motive Asserted Patents.

## FIFTH AFFIRMATIVE DEFENSE

### (Invalidity of the Motive Asserted Patents)

280.   The asserted claims of the Motive Asserted Patents, as properly construed, are

ineligible, invalid, void, and/or unenforceable for failure to comply with one or more of the statutory requirements of or conditions for patentability specified by Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112, and/or the doctrine of non-statutory double-patenting.

## SIXTH AFFIRMATIVE DEFENSE

### (Limitations on Recovery for Alleged Patent Infringement)

281. Motive's claim for damages and other remedies due to alleged patent infringement are limited by 35 U.S.C. §§ 287 and/or 288. Motive is barred by 35 U.S.C. § 288 from recovering costs associated with this action.

## SEVENTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

282. Motive is not entitled to injunctive relief against Samsara because any alleged injury (for any of Motive's asserted causes of action) is not irreparable, there is an adequate remedy at law for any such alleged injury, the balance of hardships and equities does not favor an injunction, and the public interest would be disserved by an injunction.

## EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Identify Alleged Trade Secrets)

283. Motive's claims for trade secret misappropriation are barred in whole or in part due to Motive's failure to identify its alleged trade secrets with the requisite level of particularity in order to distinguish them from non-trade secret information.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Protect Alleged Trade Secrets)

284. Motive's claims for trade secret misappropriation are barred in whole or in part because Motive did not take reasonable efforts to safeguard the alleged trade secrets.

## TENTH AFFIRMATIVE DEFENSE

### (Alleged Trade Secrets Were Readily Ascertainable and/or Publicly Available)

285. Motive's claims for trade secret misappropriation are barred in whole or in part because the alleged trade secrets, including "specifications, designs, and customer lists" identified

in SAC ¶¶ 84–85, 203, and 214, were publicly known and/or readily ascertainable by proper means, including via reverse engineering of lawfully obtained products, at least as of the time that Motive alleges they were misappropriated by Samsara.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Lack of Independent Economic Value)

286. Motive's claims for trade secret misappropriation are barred in whole or in part because the alleged trade secrets lacked independent economic value.

## TWELFTH AFFIRMATIVE DEFENSE

### (Independent Development of Alleged Trade Secrets)

287. Motive's claims for trade secret misappropriation are barred in whole or in part because Samsara independently developed its Ambarella-based designs, specification, and platform, and independently developed its business strategies including as related to customers and pricing lists.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands as to Motive's Trade Secret Causes of Action)

288. Motive's claims for trade secret misappropriation are barred, in whole or in part, by Motive's unclean hands. For example, Motive has hired former Samsara employees with the intention of stealing confidential and proprietary information related to Samsara's business and products. As a further example, Motive engaged in a fraudulent scheme to steal Samsara's proprietary and confidential information and reverse engineer its products by creating fake accounts to access Samsara's platform and procure Samsara's products, and then stealing Samsara's proprietary information and reverse engineering Samsara's products based on its unauthorized access.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (No Exceptional Case)

289. Samsara has not engaged in any conduct that would make this an exceptional case under 15 U.S.C. § 1117.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Opinion)

290.    Motive's Lanham Act claim, and more specifically its claim based on the alleged 2021 events, the only grounds for its Lanham Act claim remaining in this case, *see* D.I. 177, is barred, in whole or in part, because any alleged false statements allegedly made by Samsara were statements of opinion rather than statements of fact and, as such, are subjective and not quantifiable, specific, and/or measurable.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands as to the Lanham Act Claim)

291.    Motive's Lanham Act claim, and more specifically its claim based on the alleged 2021 events, the only grounds for its Lanham Act claim remaining in this case, *see* D.I. 177, is barred, in whole or in part, by Motive's unclean hands.  For example, Motive commissioned and published the Strategy Analytics and VTTI studies and otherwise made false and misleading statements about Samsara's products and their relative performance against Motive's products. Motive has admitted to such false advertising conduct in violation of the Lanham Act through a statement on its website, https://gomotive.com/products/ai-dashcam/ (Ex. 1):

> Statements by Motive on its website, in email messages, sales material and advertisements that benchmark tests conducted by Strategy Analytics and Virginia Tech Transportation Institute that the Motive Technologies, Inc., AI dash cam is three-to-four times more successful, accurate and speedy in detecting unsafe driving than Samsara, Inc.'s AI dash cam has been ruled by a duly authorized Arbitrator to be literally false in violation of the Lanham Act 15 U.S.C. § 1125(a).

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No False or Material Statements)

292.    Motive's Lanham Act claim, and more specifically its claim based on the alleged 2021 events, the only grounds for its Lanham Act claim remaining in this case, *see* D.I. 177, is barred, in whole or in part, because the Samsara statements on which Motive relies were not false or misleading.

293.    Moreover, any allegedly false statements or omissions allegedly made by Samsara were not material to the decision by consumers as to which company's products to buy or use and therefore were not the proximate cause of any injury allegedly suffered by Motive.  Motive's Lanham Act claim is also barred, in whole or in part, to the extent any allegedly false or deceptive statements constitute puffery, and no reasonable consumer would have reasonably or justifiably relied on them or misunderstood the representations by such statements.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands as to the Fraud Claim)

294.    Motive's fraud claim is barred, in whole or in part, by Motive's unclean hands.  For example, under direction by Motive, Motive's employees orchestrated a scheme to access Samsara's platform under false pretenses, and executed that scheme over several years.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Truth and/or Opinion)

295.    Motive's defamation claim is barred, in whole or in part, because the allegedly defamatory statements were factually true or were opinions.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Public Figure)

296.    Motive's defamation claim is barred, in whole or in part, because at all relevant times Motive was a limited purpose "public figure" and cannot prove that Samsara acted with reckless disregard for the truth or actual malice against Motive's reputation.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Litigation Privilege and other First Amendment Defenses)

297.    Motive's defamation claim is barred, in whole or in part, by the litigation privilege, because the statements were made in connection with a judicial proceeding.

298.    Motive's defamation claim is also barred, in whole or in part, because at all relevant times a public controversy existed, including the subject of Samsara's lawsuit against Motive, Motive had a central role in the controversy, and Samsara's statements related to Motive's role in the public controversy. As such, the allegedly defamatory Samsara statements are protected under

the First Amendment of the United States Constitution.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands as to the Defamation Claim)

299.    Motive's defamation claim is barred, in whole or in part, by Motive's unclean hands. For example, after initiation of the parties' litigation, Motive created a new website publishing false, misleading, and defamatory statements about Samsara, including that "For years, Samsara has engaged in unlawful and deceptive business practices to copy Motive's products and technology and to steal its intellectual property."  Ex. 4, Motive, Motive vs Samsara Lawsuit, https://www.truthandsafety.com/ (last accessed April 24, 2026).

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Waiver, Acquiescence, Laches, and/or Estoppel)

300.    Motive's claims, including its requests for damages and other relief, are barred, in whole or in part, by the doctrines of waiver, acquiescence, laches, and/or estoppel.  For example, Motive's fraud and Cal. Civ. Code § 17200 claims are barred under these doctrines to the extent Motive knew of the alleged acts by Samsara and did not take significant or meaningful action.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

301.    To the extent Motive incurred any damages, its damages claim(s) is(are) barred, in whole or in part, because Motive failed to exercise reasonable care to avoid and/or mitigate those damages.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (No Causation and/or Proximate Causation)

302.    Motive's claims are barred, in whole or in part, because Motive's purported damages were not caused by, or proximately caused by, any conduct or inaction by Samsara, and/or were not foreseeable.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (No Unauthorized Acquisition of Alleged Trade Secrets)

303.    Motive's claims for trade secret misappropriation are barred in whole or in part because Samsara did not engage in unauthorized acquisition of the alleged trade secrets.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (No Unauthorized Use/Disclosure of Alleged Trade Secrets)

304.    Motive's claims for trade secret misappropriation are barred in whole or in part because Samsara did not engage in unauthorized use or disclosure of the alleged trade secrets.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Lack of Knowledge that Alleged Trade Secrets Had Been Misappropriated)

305.    Motive's claims for trade secret misappropriation are barred in whole or in part because, to the extent that Samsara did acquire or used the alleged trade secrets, Samsara lacked knowledge that the alleged trade secrets had been misappropriated.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Preemption Under Cal. Civ. Code § 3426 et seq.)

306.    Motive's claims for defamation, fraud, false advertising, intentional interference with prospective economic relations, and unfair competition, to the extent that they arise from or are based on the same nucleus of facts as Motive's claims for trade secret misappropriation, are barred in whole or in part because they are preempted by California's Uniform Trade Secrets Act.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Res Judicata)

307.    Motive's claims, including its claims for defamation, fraud, false advertising, intentional interference with prospective economic relations, and unfair competition, are barred in whole or in part by the doctrine of res judicata, including based on claim preclusion and issue preclusion.

308.    The Arbitrator in the related Arbitration issued findings on defenses raised by Motive, which Motive now raises as claims in the present case, including issues central to the claims raised by Motive and defenses raised by Samsara in the present case. For example, findings made by the Arbitrator demonstrate the truth of Samsara's statements about the flawed VTTI and Strategy Analytics studies and Motive's copying of Samsara's products. *See, e.g.*, Ex. 1,

https://gomotive.com/products/ai-dashcam/. Motive had a full and fair opportunity to litigate, and actually litigated, identical claims and issues in the Arbitration. Samsara has filed a petition to confirm the Partial Final Award and reduce it to an enforceable judgment. *See* No. CPF-26-519615, Trans. ID # 78731595. These preclusive findings were further confirmed by an Administrative Law Judge. Ex. 3, Certain Vehicle Telematics, Fleet Management, and Video-based Safety Systems, Devices, and Components Thereof, Inv. No. 337-TA-1393, Public Initial Determination at 242 (Sep. 8, 2025) ("Samsara ha[d] presented compelling evidence that it was Motive's *intent to copy* Samsara's products.") (emphasis added); *id.* at 240–42, 277–81.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Unclean Hands as to the Intentional Interference with Prospective Economic Relations Claim)

309. Motive's intentional interference with prospective economic relations claim is barred, in whole or in part, by Motive's unclean hands.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands as to the Unfair Competition Claim)

310. Motive's unfair competition claim is barred, in whole or in part, by Motive's unclean hands. Motive's unfair competition claim is based on its claims of fraud, false advertising, defamation, and interference with prospective economic relations and is therefore barred by the same misconduct that bars those claims.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (No Damages)

311. Without admitting that the Complaint states a claim, there has been no damage in any amount or manner to Motive by reason of any act alleged against Samsara in the Complaint and the relief prayed for in the Complaint therefore cannot be granted.

## RESERVATION OF RIGHTS AS TO ADDITIONAL AFFIRMATIVE DEFENSES

312. Samsara is presently investigating the facts relating to Motive's allegations in the SAC, including the issuance of the Motive Asserted Patents, the ownership and prosecution history of the Motive Asserted Patents, and Motive's assertion of infringement against Samsara. Samsara

will continue its investigation throughout the discovery process. To the extent that this investigation reveals any additional affirmative defenses in connection with such matters, Samsara reserves the right to seek leave to amend to assert such allegations and/or defenses that may be appropriate.

313. In addition to the defenses described above, Samsara reserves all defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, which may now exist or in the future become available based on discovery and further factual investigation in this case.

**COUNTERCLAIMS**

1.      Pursuant to Federal Rule of Civil Procedure 13, Samsara (also, "Counterclaim-Plaintiff") states the following counterclaims against Motive (also, "Counterclaim-Defendant") and alleges as follows:

**NATURE OF THE ACTION**

2.      Samsara is the owner of all right, title, and interest in and to: (i) U.S. Patent No. 11,975,685 ("the '685 Patent"), titled "Remote Vehicle Immobilizer"; (ii) U.S. Patent No. 10,033,706 ("the '706 Patent"), titled "Secure Offline Data Offload in a Sensor Network"; and (iii) U.S. Patent No. 12,069,041 ("the '041 Patent"), titled "Authentication of a Gateway Device in a Sensor Network."  The '685, '706, and '041 Patents are collectively referred to herein as the "Asserted Samsara Patents."

3.      Motive imports, offers for sale, sells, distributes, and/or uses in the United States infringing products (the "Accused Motive Products"), and induces others, including customers and end users, to use the Accused Motive Products in an infringing manner.  The Accused Motive Products include Motive's cloud infrastructure (the "Motive Cloud"), the Motive Vehicle Gateway, the Motive Asset Gateway, the Motive Environmental Sensor, the Motive Driver ID, the Motive AI Dashcam, the Motive Door and Environmental Sensor, and the Motive Engine Immobilizer.

4.      Samsara seeks past and future damages as well as pre-judgment and post-judgment interest for Motive's infringement of the Asserted Samsara Patents.  Samsara also seeks an injunction against further infringement of the Asserted Samsara Patents by Motive through Motive's importation, offer for sale, sale, distribution, and/or use of the Accused Motive Products in the United States.

**THE PARTIES**

5.      Counterclaim-Plaintiff Samsara is a Delaware corporation with its headquarters and principal place of business located in this District at the address: 1 De Haro Street, San Francisco, CA 94107.

6.      Counterclaim-Defendant Motive is a Delaware corporation with its headquarters and principal place of business located in this District at the address: 55 Hawthorne Street, Suite

400, San Francisco, CA 94105.

7. Motive was founded as KeepTruckin in 2013. KeepTruckin rebranded itself as Motive in 2022.

## JURISDICTION

8. These counterclaims arise under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

9. This Court has personal jurisdiction over Motive. Personal jurisdiction exists generally and specifically over Motive because Motive directly and/or indirectly (through its subsidiaries, divisions, groups, and/or distributors) has sufficient minimum contacts with the Northern District of California, at least because: (i) Motive maintains a regular and established place of business in this District; (ii) Motive conducts substantial business in this District, including by importation, offer for sale, sale, and use of one or more of the Accused Products; and (iii) Motive filed suit against Samsara in this District.

10. Motive has been involved in importing one or more of the Accused Motive Products into the United States through ports in California, including at least Oakland, which is located in this District.

11. Motive maintains a regular and established place of business within this District at 55 Hawthorne Street, Suite 400, San Francisco, CA 94105. Motive employs individuals in this District and in the state of California as part of maintaining a regular and established place of business in this District.

12. Personal jurisdiction also exists specifically over Motive because it has committed acts of patent infringement in this District and the state of California, including at least because Motive (directly and/or through its subsidiaries, divisions, groups, or distributors) imports, advertises, markets, offers for sale, distributes, sells, and/or uses the Accused Motive Products in this District and the state of California. Accordingly, Motive has committed and continues to commit tortious acts in this District and the state of California; has expressly aimed and continues to aim its actions at this District and the state of California with the knowledge that those actions would cause harm and substantial injury to Samsara in this District and the state of California; and

Samsara's claims relate to Motive's products containing technology advertised, marketed, used, offered for sale, imported, and/or sold in this District and in the state of California.

13.    In addition, Motive has consented to personal jurisdiction by this Court over Motive at least by commencing its action against Samsara in this Court.

## VENUE

14.    Venue properly lies in this District under 28 U.S.C. §§ 1391(c) and 1400(b).  Motive maintains a regular and established place of business in this District at 55 Hawthorne Street, Suite 400, San Francisco, CA 94105.  Motive has also committed acts of infringement in this District.

## BACKGROUND

### Samsara Pioneered the Field of IOT Data-Driven Operations

15.    Samsara is a pioneer and leader in the field of data-driven operations powered by IoT device connectivity.  Founded in 2015, Samsara has been on a mission to increase the safety, efficiency, and sustainability of physical operations that power the global economy.  Its Connected Operations™ Cloud platform is a cloud-based solution that allows customers with physical operations in broad-based industries to obtain information about their devices, equipment, and operations using IoT devices and to manage and analyze this information with advanced AI tools, allowing them to operate more safely, efficiently, and sustainably—in a word, more intelligently.

16.    Samsara was founded by Sanjit Biswas and John Bicket.  The two met as graduate students at the Computer Science and Artificial Intelligence Laboratory at the Massachusetts Institute of Technology ("MIT").  Mr. Biswas, who is Samsara's Chief Executive Officer, has been recognized as an MIT Technology Review "Innovator Under 35" honoree, a Technology Pioneer by the World Economic Forum, Glassdoor's 2018 Top CEO, one of Goldman Sachs's 100 Most Intriguing Entrepreneurs, and one of The Software Report's top 50 SaaS CEOs.  He holds a B.S. in Computer Systems Engineering from Stanford and an S.M. in Electrical Engineering and Computer Science from MIT.  Mr. Bicket, Samsara's Chief Technology Officer, is responsible for Samsara's ground-breaking technology that makes operating thousands of sensors simple and secure.  He holds a B.S. in Computer Science from Cornell University and an M.S. in Computer Science from MIT.

17.     Messrs. Biswas and Bicket formed Samsara to create integrated IoT solutions that bring the benefits of data to the operations that power our economy.  Since its founding, Samsara's growth, propelled by its groundbreaking research and development, intense focus on customer feedback, and the hard work of its employees, has been meteoric.  By late 2022, Samsara surpassed 1,600 employees worldwide and became the largest open ecosystem for physical operations with more than 200 integration partners on the Samsara platform.[1]  Samsara's strong commitment to innovation earned it a spot on *Fast Company's* 2023 Best Workplaces for Innovators list, a list "which honors organizations and businesses that demonstrate an inspiring commitment to encourage and develop innovation at all levels."[2]

18.     Presently, Samsara serves tens of thousands of customers across a wide range of industries, including transportation, wholesale and retail trade, construction, field services, logistics, utilities and energy, government, healthcare and education, manufacturing, and food and beverage.  Businesses in these industries operate critical infrastructure and are the foundation of the global economy.  They operate high-value assets, coordinate large field workforces, manage complex logistics and distribution sites, and face environmental, safety, and other regulatory requirements.  Historically, these businesses relied on error-prone, deficient, and inefficient manual processes and legacy systems that were siloed and lacked cloud connectivity as well as computational and operational capability to obtain real-time and actionable information and analysis.  Without connected digital tools, and innovative improvements to the operation of such tools, physical-operations businesses struggled to access real-time data, making it nearly impossible to achieve complete operational visibility or drive meaningful improvements in productivity.

**Samsara's Groundbreaking Solutions for IOT Data-Driven Vehicle Fleet Management**

19.     Samsara began its journey by creating innovative digital solutions, including those to monitor and manage the physical operations of connected fleets of vehicles.  Commercial vehicle fleets are the backbone of many physical operations and are required to deliver and transport

---

[1] Ex. 11, https://www.businesswire.com/news/home/20220913005304/en/Samsara-Announces-200th-Partner-Integration-with-its-Connected-Operations-Cloud-Becoming-System-of-Record-for-Physical-Operations.
[2] Ex. 12, https://www.samsara.com/blog/samsara-recognized-as-a-best-workplace-for-innovators.

services, goods, and people in virtually all industries. Businesses with commercial vehicle fleets face continued pressure to reduce costs and improve services, while simultaneously finding ways to overcome high accident rates, inefficient fuel consumption, and compliance burdens.

20. Samsara discovered substantial problems in the industry associated with the inability to obtain real-time updates and actionable information effectively and accurately about vehicles while they were in transit. One of Samsara's initial products was a vehicle telematics solution based on its Vehicle Gateway. This hardware device is mounted on a vehicle and connects to the vehicle's Engine Control Unit (ECU) to receive vehicle data, including diagnostic information, speed, and support temperature monitoring. The Vehicle Gateway also includes onboard sensors, such as a GPS sensor. The Vehicle Gateway wirelessly transmits vehicle and other information to the Samsara Cloud. The Samsara Cloud performs various analytics functions on data received from the vehicle fleet and provides customer-facing information to the Samsara Dashboard, a customer-facing online platform where a customer can see data for assets across their organization all in one place. The Samsara system gave customers operational visibility and actionable data insights to drive meaningful improvements in their operations like never before.

21. Samsara's technology offers an end-to-end solution, connecting physical operations data from IoT devices to its Connected Operations™ Cloud. The Connected Operations™ Cloud consists of Samsara's Data Platform and Applications, as shown below. The Data Platform ingests, aggregates, and enriches data both from Samsara's IoT devices and a growing ecosystem of connected assets and third-party systems, and makes the data available for use by the Applications. The Applications provide analyses that customers can use to make their operations safer and more efficient.



22.     As Samsara continued to innovate, it introduced various other IoT devices and features over the years.

23.     For example, in November 2017, Samsara introduced its AG24 Asset Gateway, which enabled real-time visibility and location tracking of a customer's assets.[3]  The AG24 Asset Gateway worked with Samsara's "wireless sensors and analog, digital, and reefer data inputs."[4] Samsara's current Asset Gateway offerings include both powered[5] and unpowered[6] options.

---

[3]  Ex. 13, https://www.samsara.com/blog/introducing-the-solar-powered-ag24-gateway-for-trailers-mobile-assets.
[4]  *Id.*
[5]  Ex. 14, https://kb.samsara.com/hc/en-us/articles/360042694572-Asset-Gateways-AGs-for-Powered-Assets.
[6]  Ex. 15, https://kb.samsara.com/hc/en-us/articles/360043174711-Unpowered-Asset-Gateway-AG-Installations

SAMSARA'S ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS                     6                     CASE NO. 3:24-CV-00902-JD



Samsara's Powered Asset Gateways[7]



Samsara's Unpowered Asset Gateways[8]

24.     Samsara also introduced Environmental Monitor (EM) Sensors that can monitor temperature and/or humidity for applications that rely on monitoring environmental data, such as food safety during transportation.[9]  Samsara's EM Sensors can automatically connect with Samsara's Asset Gateways to help provide a comprehensive view of the state of an asset.[10]



Samsara's Environmental Monitor (EM) Series Sensors[11]

---

[7] Ex. 14, https://kb.samsara.com/hc/en-us/articles/360042694572-Asset-Gateways-AGs-for-Powered-Assets.
[8] Ex. 15, https://kb.samsara.com/hc/en-us/articles/360043174711-Unpowered-Asset-Gateway-AG-Installations.
[9] Ex. 16, https://kb.samsara.com/hc/en-us/articles/360043022052-Environmental-Monitor-EM-Sensors.
[10] Ex. 17, https://kb.samsara.com/hc/en-us/articles/360042725792-Pair-a-Samsara-Sensor-to-an-Asset-Gateway.
[11] Ex. 18, https://www.samsara.com/pdf/docs/em-datasheet-vg34.pdf.

SAMSARA'S ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS          7          CASE NO. 3:24-CV-00902-JD

25. Furthermore, in February 2023, Samsara updated its Engine Immobilizer.[12]  The Engine Immobilizer allows fleet managers to remotely enable or disable the movement of vehicles from the Samsara Dashboard, for example, in the event of an emergency, thereby preventing vehicle theft and facilitating vehicle management.[13]



Samsara Engine Immobilizer.[14]

**THE ASSERTED SAMSARA PATENTS**

26. Samsara's products incorporate numerous patented technologies developed and owned by Samsara.  Three examples of Samsara's patented technologies are described below. These patented technologies represent important developments and innovations in fleet telematics and driver safety products.

**U.S. PATENT NO. 11,975,685**

27. U.S. Patent No. 11,975,685 ("the '685 Patent"), titled "Remote Vehicle Immobilizer," issued on May 7, 2024 to Michael Luis Innocenzi, Elias Ray Dykaar, Maxwell Anton Dergosits, and Ingo Gerhard Wiegand.  A true and correct copy of the '685 Patent is attached as Ex. 5.

28. Samsara owns the full right, title, and interest in the '685 Patent and is entitled to sue for future and past infringement of the '685 Patent.

29. The '685 Patent is valid and enforceable.

30. The '685 Patent is generally directed to a remote vehicle immobilizer system and

---

[12] Ex. 19, https://www.samsara.com/blog/4-new-releases-spring-2023.
[13] Ex. 20, https://www.samsara.com/products/models/engine-immobilizer.
[14] Ex. 21, https://www.samsara.com/pdf/EI21_Datasheet.pdf.

methods of using the same. As the '685 Patent explains, restricting use of a vehicle can be difficult because "monitoring and controlling use of a vehicle is often not possible once the vehicle has left the control of the party implementing restrictions. For example, a vehicle rental service or fleet manager cannot control how a vehicle is operated once the vehicle has been rented or assigned to a driver. Accordingly, improvements are needed." Ex. 5, '685 Patent at 1:27–34.

31.    To this end, the '685 Patent discloses "systems, methods, and non-transitory computer-readable media for a remote vehicle immobilizer" that "allows for a vehicle to be immobilized remotely to restrict use of the vehicle." *Id.* at 2:32–35; *see also id.* at 1:13–15, Abstract. "For example, the remote vehicle immobilizer includes an electronic switch (e.g., relay) positioned within a conducting path between the starter motor ('starter') and battery of the vehicle." *Id.* at 2:35–39. "The electronic switch is connected to a network gateway device (e.g., vehicle gateway) of the vehicle that allows for remote communication between the vehicle and one or more remote computing devices of a remote vehicle immobilization system." *Id.* at 2:50–54. "The electronic switch can be controlled remotely to cause the switch to open or close. Opening the electronic switch causes the conducting path between the starter and the battery to be interrupted. As a result, the starter cannot draw power from the battery to ignite the engine of the vehicle and the vehicle is immobilized (e.g., cannot be started using the starter). Conversely, when the electronic switch is closed, the conducting path between the starter and the battery is uninterrupted and the starter may pull power from the battery to ignite the engine of the vehicle and the vehicle is mobilized (e.g., can be started using the starter)." *Id.* at 2:39–49.

32.    Systems that predated the '685 Patent did not enable a client device to remotely modify the configuration of an electronic switch positioned within the vehicle in a conducting path between a vehicle's starter motor and a battery, from a closed configuration creating an uninterrupted conducting path to an open configuration creating an interrupted conducting path. "[M]onitoring and controlling use of a vehicle" was "often not possible once the vehicle ha[d] left the control of the party implementing restrictions." *Id.* at 1:29–31. The specific technical approach claimed in the '685 Patent, a system and method in which a remote command from a client device causes a vehicle to modify the configuration of a specifically positioned electronic switch to alter

SAMSARA'S ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS | 9 | CASE NO. 3:24-CV-00902-JD

the flow of electrical current between the vehicle's battery and starter motor, was not well-understood, routine, or conventional in the art. *E.g.*, *id.* at 1:19–34, 2:32–54, 3:5–16, Figs. 9–10.

33. The '685 Patent's specification discloses detailed software and hardware architectures implementing the claimed immobilization system, confirming that the claims are tied to specific physical structures and components that were not previously known in the art. *See, e.g.*, *id.* The claimed system and method improve the functioning of vehicle immobilization technology by enabling remote, real-time control over a vehicle's ability to start through the specific mechanism of modifying the configuration of an electronic switch positioned in the conducting path between the vehicle's starter motor and battery. This specific mechanism for remotely altering the flow of electrical current between a vehicle's battery and motor was not a well-understood, routine, or conventional approach to vehicle immobilization at the time of the invention. *See id.* at 1:62–2:2, 13:34–17:34.

34. The claims provide an unconventional solution to the problem of ensuring "that the vehicle is not operated under unsafe conditions, such as by an unknown, intoxicated, or otherwise unfit operator," and that ensuring that "the vehicle is not operated in an unsafe, unauthorized or otherwise unwanted geographic location." *Id.* at 1:21–27. The advance is reflected in the claims themselves. For example, claim 1 provides receiving the "command to cause a change in a configuration" "from a client device and by one or more processors," and to "caus[e] the vehicle to modify the configuration of an electronic switch" as a result, which is unconventional functionality for a vehicle immobilizer. Claim 2 further provides "receiving sensor data that indicates an occurrence of a trigger condition" and "causing the client device to generate the command responsive to the trigger condition." Claim 2 thus requires an unconventional configuration and interoperability of hardware products, including sensors and a vehicle immobilizer that is capable of receiving commands from a client device. Claim 3 provides further unconventionality, requiring that the "sensor data" was "captured by a computing controller device connected to the electronic switch." Claim 3 thus requires an unconventional configuration of hardware, including the additional computing controller device connected to the electronic switch.

35. Claim 4 adds that the "sensor data includes geolocation data provided by a location

sensor of the vehicle." Claim 4 thus provides an unconventional configuration of particular sensors and an unconventional method of using such data as part of immobilizing a vehicle based on a command from a client device. Claim 5 requires that "the trigger condition includes a determination that a current geographic location of the vehicle is outside of an authorized geographic location," and thus requires an unconventional arrangement of hardware components and unconventional use of particular data and data structures to address the problems identified in the '685 Patent. Claim 6 provides that "the sensor data includes data identifying a current operator of the vehicle," and claim 7 provides that the "trigger condition includes a determination that a current operator of the vehicle is not an authorized operator." These claims thus likewise require an unconventional arrangement of hardware components and unconventional use of particular data and data structures to address the problems identified in the '685 Patent. Claim 8 requires that "receiving the sensor data includes[] receiving the sensor data via a Radio-Frequency Identification (RFID) sensor," marking another unconventional arrangement of hardware components and unconventional use of data in the specific context of immobilizing a vehicle based on a command from a client device. The claims thus provide specific technical steps resulting in an unconventional bidirectional flow of data made possible by particular configurations of hardware and highly context-specific uses of data for immobilizing vehicles under particular circumstances.

36. The elements of the asserted claims of the '685 Patent, individually or in combination, provide specific benefits, including the ability to remotely immobilize a vehicle to avoid unwanted scenarios, such as operation by an unknown, intoxicated, or otherwise unfit operator, or operation in an unsafe, unauthorized or otherwise unwanted geographic location. *Id.* at 3:5–16, 5:23–45, cl. 1–8. The elements of the asserted claims of the '685 Patent, individually or in combination, likewise provide the benefit of intelligently detecting specific trigger conditions, such as geolocation, determination that a current geographic location of the vehicle is outside of an authorized geographic location (i.e., geofencing), the identity of the operator, a determination of whether the operator is authorized to operate the vehicle, or a radio frequency identification. *See, e.g., id.* at cl. 1–8, 3:17–28, 10:51–11:12, 16:1–67, Fig. 10.

37. Whether considered individually or collectively, the claims of the '685 Patent

provide an unconventional method in which an immobilizer functions as a sophisticated, connected IoT device, and thus allows an advanced technological solution with specific technical improvements in the context of fleet management.

38.     The claims of the '685 Patent recite significant improvements to computer and/or device functionality and significantly more than well-understood, routine, and conventional steps or systems previously known in the art.  For example, in claim 1, at least the following limitations that recite "receiving, from a client device …, a command to cause a change in a configuration associated with a vehicle," and "in response to the command, causing the vehicle to modify the configuration of an electronic switch from a first configuration to a second configuration …," enable remote control of an electronic switch to facilitate remote immobilization of a vehicle at desired times and circumstances more flexibly than was well-understood, routine, and conventional in the art.  *See, e.g., id.* at 1:27–34, 2:32–54, 3:5–16, cl. 1.

1.  A method comprising:

> receiving, from a client device and by one or more processors, a command to cause a change in a configuration associated with a vehicle; and
>
> in response to the command, causing the vehicle to modify the configuration of an electronic switch from a first configuration to a second configuration, the electronic switch positioned within the vehicle in a conducting path between a starter motor of the vehicle and a battery of the vehicle, wherein the first configuration of the electronic switch is a closed configuration creating an uninterrupted conducting path, and the second configuration of the electronic switch is an open configuration creating an interrupted conducting path.

Ex. 5, '685 Patent at cl. 1.

39.     The '685 Patent claims recite systems and methods that embody specific improvements to vehicle immobilizer functionality, including improvements in remote functionality of such systems, such as the specific improvement of causing a vehicle to modify the configuration of an electronic switch in response to receiving a command from a client device.  The claims recite significantly more than the performance of well-understood, routine, and conventional steps previously known in the art.

40.     The '685 Patent overcame a § 101 rejection during prosecution.  *See* Ex. 22, '685

Patent File History at 10/24/2023 Non-Final Rejection at 3–6, 12/20/2023 Notice of Allowance. The Examiner withdrew the rejection and allowed the claims, concluding that "the claim taken as a whole combination is deemed new and unobvious." Ex. 22, '685 Patent File History, at 12/20/2023 Notice of Allowance.

41. The ordered combination of steps recited in the '685 Patent claims was not well understood, routine, or conventional in the art. Prior to the '685 Patent, the art did not disclose a system or method that receives a command from a client device to cause a change in a vehicle's configuration, and in response causes the vehicle to modify the configuration of an electronic switch from a first, closed configuration creating an uninterrupted conducting path to a second, open configuration creating an interrupted conducting path, where the electronic switch is positioned in a conducting path between the vehicle's starter motor and battery. This combination of elements, including the specific positioning of the electronic switch, the specific switching between closed and open configurations to alter the flow of electrical current, and the reception of a remote command from a client device, did not previously exist and was developed by the '685 Patent's inventors to address the need for remote vehicle immobilization. *E.g.*, Ex. 5, '685 Patent at 1:19–34, 2:32–54, 3:5–16.

42. The dependent claims recite additional elements that were not well-understood, routine, or conventional in the art. For example, claims 2–8, which depend from claim 1, recite using specific types of sensor data to automatically trigger the device to change the configuration of the conducting path. The use of specific sensor data to trigger automatic configuration changes to the electronic switch in the claimed system was not well-understood, routine, or conventional in the art, either individually or in ordered combination with the other claim elements.

## U.S. PATENT NO. 10,033,706

43. The '706 Patent, titled "Secure Offline Data Offload in a Sensor Network," issued on July 24, 2018 to John Bicket, James Michael Rowson, and Chase Phillips. A true and correct copy of the '706 Patent is attached as Ex. 6.

44. Samsara owns the full right, title, and interest in the '706 Patent and is entitled to sue for future and past infringement of the '706 Patent.

45. The '706 Patent is valid and enforceable.

46. The '706 Patent is generally directed to devices, systems, and methods for secure offline data logging in sensor networks, including transmitting sensor measurement data over secure communication channels and generating reconciled sensor measurements in which duplicates have been removed.

47. "A sensor network includes spatially distributed autonomous sensing devices to monitor physical or environmental conditions[] (such as temperature, humidity, pressure, movement, etc.) and to record data about the physical events to deliver the data through the network to a user's location." Ex. 6, '706 Patent at 1:19–23. With the increase in use of sensor networks in industrial and consumer applications, a need arose to facilitate data logging in such networks. *See id*. at 1:26–29. The '706 Patent addresses this problem by "enabling reliable and secure offload of sensor measurements in a sensor network." *Id.* at 5:56–59.

48. The '706 Patent describes how "intermittent connectivity" in sensor networks could be caused by sensors and gateways moving too far away from each other or by a failure in the wireless connection between the two. *Id.* at 1:19–29, 5:56–64, 10:18–13:22, Fig. 3. Systems that predated the '706 Patent did not allow for maintaining sensor data on a device during a period of disconnectivity, securely transmitting the data to a management server after the connection is restored through a different gateway device, and reconciling and de-duplicating the data using data sequence numbers and time stamps. Nor did such systems use sequence numbers and time stamps to reconcile sensor measurement data received from the same wireless sensing device through two different gateway devices following disconnection from an initial gateway device, while tracking organizational associations of the devices. *See id.* at Abstract, 1:19–29, 5:56–64, 10:18–13:22, 19:65–20:25, Figs. 1–3, 5. The claimed devices, systems, and methods improve the functioning of sensor network technology by enabling sensor measurement data to be reliably transmitted and reconciled even in situations of intermittent connectivity. The claims are tied to specific physical structures (a "management server device," a plurality of "wireless sensing devices," a plurality of "gateway devices," and multiple "secure communication channels") that are combined in a specific, non-conventional arrangement. In particular, the claims provide for a wireless sensing device to

transmit data through a first gateway device over a second secure communication channel and, following disconnection of that channel, to transmit additional data through a second gateway device over a fourth secure communication channel, while the management server reconciles data from both gateways using sequence numbers and time stamps and tracks organizational associations of the devices. This specific multi-channel data flow architecture was not well-understood, routine, or conventional technology functioning in its routine manner at the time of the invention. *See id.* at 5:59–64, 10:29–13:22, Fig. 3.

49. The claims thus provide an unconventional solution to the problem of intermittent connectivity between the devices and/or mobility of the sensing devices and the gateway devices, and provide the benefit of enabling reliable and secure offload of sensor measurements while minimizing data loss. *Id.* at 5:56–64. The advance is reflected in and made possible by the claims themselves. For example, claim 1 requires receiving "data indicative of a first plurality of sensor measurements taken over time, a sequence number for each, and a time stamp for each . . . wherein the management server device tracks which of the plurality of gateway devices and which of the plurality of wireless sensing devices is associated with which of a plurality of organizations," as well as, "following disconnection of the second secure communication channel between the first gateway device and the wireless sensing device," receiving "data indicative of a second plurality of sensor measurements taken over time, a sequence number for each, and a time stamp for each," then "reconciling the data indicative of the first plurality of sensor measurements and the data indicative of the second plurality of sensor measurements based on the sequence numbers and the time stamps to generate reconciled sensor measurements in which duplicates have been removed; and providing for display a user interface including a representation of the reconciled sensor measurements over time." *Id.* at cl. 1; *see also id.* at cl. 4–6, 10:33–13:22, 13:23–14:61, Figs. 3, 4. The claims thus require an unconventional configuration of components and features, including wireless sensing devices, gateway devices, a management server, and secure communication channels therebetween, as well as particular metadata, which is especially useful, for example, in the context of fleet management, in which the problem of intermittent connectivity between the devices and/or mobility of the sensing devices and the gateway devices is prominent.

50.     The claims also provide the benefit of a management server that can manage sensor networks made up of numerous IoT devices belonging to multiple organizations. For example, claim 1 provides that "the management server device tracks which of the plurality of gateway devices and which of the plurality of wireless sensing devices is associated with which of a plurality of organizations." *Id.* at cl. 1. Claim 2 further requires that "the management server device associates at least one sensor network with each of a plurality of organizations, and the management server device associates with each of the plurality of organizations a plurality of gateway devices and a plurality of wireless sensing devices." *Id.* at cl. 2; *see also id.* at cl. 3 ("wherein the first gateway device, the second gateway device and the first wireless sensing device are associated with the same organization"), 15:16–20, 16:47–22:32. The claims thus provide a significant advance that makes possible a management server that can manage sensor networks made up of numerous IoT devices belonging to multiple organizations, while still maintaining data security and only providing distinct organizations their own data, and doing so in a highly organized manner despite intermittent connectivity or mobility of the IoT devices. The '706 Patent claims devices, systems, and methods embodying specific improvements to computer functionality, including improving the secure transmission and reconciliation of sensor measurement data. The '706 Patent also claims significantly more than the performance of well-understood, routine, and conventional steps previously known in the art.

51.     For example, according to some embodiments of the '706 Patent, "the system provide[s] secure communication channels between sensing devices and gateway devices of a same sensor network, and allows for intermittent connectivity between the devices and/or mobility of the sensing devices and the gateway devices while minimizing data loss." *Id.* at 5:59–64; *see also id*. at 10:29–32. Further, the management server "reconciles the data received from each WSD [wireless sensing device] through respective gateway devices based on the sequence numbers and the time stamps associated with each sensor measurement to generate reconciled sensor measurements in which duplicates have been removed." *Id*. at 12:53–58.

52.     In addition, at least the following limitations in claim 1 that recite (i) "wherein the data was transmitted to the second gateway device from the wireless sensing device through a fourth

secure communication channel . . . following disconnection of the second secure communication channel," and (ii) "generate reconciled sensor measurements in which duplicates have been removed," enable sensor measurement data to be transmitted and reconciled more securely and effectively (*e.g.,* even in scenarios of mobility and intermittent connectivity) than was well-understood, routine, and conventional in the art. *See, e.g., id*. at 5:56–64, 10:18–13:22, 19:65–20:25.

> 1.  A method in a management server device for supporting secure offline data logging in sensor networks, wherein the sensor networks include a plurality of wireless sensing devices operative to detect physical events and to generate sensor measurements in response to the detection of the physical events, the method comprising:
>
> receiving, upon establishment of a first secure communication channel between a first gateway device of a plurality of gateway devices and the management server device, data indicative of a first plurality of sensor measurements taken over time, a sequence number for each, and a time stamp for each, wherein the data was transmitted to the first gateway device from a first wireless sensing device of the plurality of wireless sensing devices over a second secure communication channel between the first gateway device and the first wireless sensing device, and wherein the management server device tracks which of the plurality of gateway devices and which of the plurality of wireless sensing devices is associated with which of a plurality of organizations,
>
> receiving, upon establishment of a third secure communication channel between a second gateway device of the plurality of gateway devices and the management server device, data indicative of a second plurality of sensor measurements taken over time, a sequence number for each, and a time stamp for each, wherein the data was transmitted to the second gateway device from the wireless sensing device through a fourth secure communication channel between the second gateway device and the wireless sensing device following disconnection of the second secure communication channel between the first gateway device and the wireless sensing device;
>
> reconciling the data indicative of the first plurality of sensor measurements and the data indicative of the second plurality of sensor measurements based on the sequence numbers and the time stamps to generate reconciled sensor measurements in which duplicates have been removed; and
>
> providing for display a user interface including a representation of the reconciled sensor measurements over time.

Ex. 6, '706 Patent at cl. 1.

53.    The ordered combination of elements recited in claim 1 was not well-understood, routine, or conventional in the art.  The specific combination did not previously exist in the art.  The specification expressly teaches that "data received from each [wireless sensing device] through respective gateway devices" is reconciled "based on the sequence numbers and the time stamps associated with each sensor measurement to generate reconciled sensor measurements in which duplicates have been removed."  Ex. 6, '706 Patent at 12:53–58, Figs. 3, 5.

54.    The Examiner allowed the '706 claims on the basis that the prior art failed to disclose "the features reconciling sensor measurement data received from two different gateways, using the sequence numbers and timestamps for the sensor measurement" in combination with the other claim limitations.  *See* Ex. 23, '706 Patent File History, at 4/18/2018 Notice of Allowance.  The Examiner's reasons for allowance confirm that the claimed combination of elements was not previously disclosed in the prior art and was not well-understood, routine, or conventional.

55.    The dependent claims of the '706 Patent recite additional elements that were not well-understood, routine, or conventional in the art.  For example, claims 4 and 5, which depend from claim 1 recite the use of "private and public keys" in establishing secure communication channels between devices.  The use of private and public keys in this specific context, to secure communications between wireless sensing devices and gateway devices in a sensor network that handles intermittent connectivity, was not well-understood, routine, or conventional, either individually or in ordered combination with the other claim elements.

### U.S. PATENT NO. 12,069,041

56.    The '041 Patent, titled "Authentication of a Gateway Device in a Sensor Network," issued on August 20, 2024 to John Bicket, James Michael Rowson, and Chase Phillips.  A true and correct copy of the '041 Patent is attached as Ex. 7.

57.    Samsara owns the full right, title, and interest in the '041 Patent and is entitled to sue for future and past infringement of the '041 Patent.

58.    The '041 Patent is valid and enforceable.

59.    The '041 Patent is directed to devices, systems, and methods for authentication in a sensor network, including a gateway device that receives a certificate generated by a management

server, transmits the certificate to a wireless sensing device, and receives data in response to confirming based on the certificate that the wireless sensing device is authorized to connect with the gateway device.

60. Systems that predated the '041 Patent did not provide the specific certificate-based authentication method claimed in the '041 Patent. Ex. 7, '041 Patent at cl. 11, 1:40–3:44, 5:43–45, 20:48–26:19. Such systems did not facilitate a method in a management server in which the management server, in response to determining that a gateway device is associated with a wireless sensing device, generates a certificate; transmits the certificate to the gateway device during an initial connection with the gateway device, where the certificate is to be used for confirming that the wireless sensing device is authorized to connect with the gateway device; and receives data indicative of a plurality of sensor measurements, where the data was transmitted to the gateway device from the wireless sensing device in response to confirming based on the certificate that the wireless sensing device is authorized to connect with the gateway device. This particular method of certificate-based authentication performed by a management server to facilitate authorized communication between gateway devices and wireless sensing devices in a sensor network was not previously known in the art.

61. The claimed devices, systems, and methods improve the functioning of sensor network authentication technology by ensuring that only authorized gateway devices and wireless sensing devices can communicate with each other, using a certificate generated by a management server based on an association determination. The specific mechanism for achieving this, in which the management server generates a certificate based on device association, the gateway device uses that certificate both to confirm its own authorization and to transmit the certificate to the wireless sensing device for the sensing device's own independent confirmation of authorization, was not a well-understood, routine, or conventional approach to wireless sensor network authentication at the time of the invention. This specific bi-directional authentication architecture, in which both the gateway device and the wireless sensing device independently confirm authorization based on the same certificate before data is transmitted, was not previously known in the art. *See id.* at Abstract, 1:40–3:44, 5:43–45, 20:49–26:19, Figs. 1–3, 7A, 7B.

62.    The claims thus provide an unconventional solution for authenticating wireless sensing devices to gateway devices, as well as authenticating wireless sensing devices to organizations. *Id.* at 26:29–27:17.  This unconventional solution provides the benefit of ensuring reliable and secure offload of sensor measurements in a sensor network. *Id.* at 5:39–48.  For example, claim 16 provides that a certificate is "used for confirming that the wireless sensing device is authorized to connect with the gateway device," and that the certificate is generated "in response to determining that a gateway device is associated with a wireless sensing device." *Id.* at cl. 16; *see also id.* at 26:29–27:17, Fig. 10.  As a further example, claim 19 provides that the method further comprises "receiving an indication that the wireless sensing device is to be associated with an organization; and in response to determining that the gateway device is associated with the organization, transmitting an identifier of the wireless sensing device to the gateway device." *Id.* at cl. 19.  Claim 20 further requires that "the determining that a gateway device is associated with the wireless sensing device includes a determination that the wireless sensing device and the gateway device are associated with the organization." *Id.* at cl. 20.  The claims thus require an unconventional configuration of components and features that, individually and in combination, provide a significant advance that makes possible reliable and secure offload of sensor measurements in a sensor network.

63.    The '041 Patent claims devices, systems, and methods embodying specific improvements to computer functionality, including improving authentication based on a certificate in a sensor network. The '041 Patent also claims significantly more than the performance of well-understood, routine, and conventional steps previously known in the art.

64.    For example, according to some embodiments of the '041 Patent, "the system provide[s] secure communication channels between sensing devices and gateway devices of a same sensor network." *Id.* at 5:43–45.  "A certificate that is generated by the management server in response to a determination that the gateway device is associated with a wireless sensing device is received during an initial connection with the management server.  In response to confirming, based on the certificate, that the gateway device is authorized to connect to the wireless sensing device, the certificate is transmitted to the wireless sensing device; and data is received from the wireless

sensing device in response to confirming that the wireless sensing device is authorized to connect with the gateway device based on the certificate." *Id.* at Abstract.

65. In addition, at least the following limitations in claim 16 that recite (i) "in response to determining that a gateway device is associated with a wireless sensing device, generating a certificate" (ii) "transmitting the certificate to the gateway device during an initial connection with the gateway device, wherein the certificate is to be used for confirming that the wireless sensing device is authorized to connect with the gateway device," and (iii) "receiving data indicative of a plurality of sensor measurements, wherein the data was transmitted to the gateway device from the wireless sensing device in response to confirming based on the certificate that the wireless sensing device is authorized to connect with the gateway device," enable authentication based on a certificate in a sensor network to occur more effectively than was well-understood, routine, and conventional in the art. *See, e.g., id*. at Abstract, 1:40–3:44, 5:43–45, 20:49–26:19.

16. A method in a management server, the method comprising:

in response to determining that a gateway device is associated with a wireless sensing device, generating a certificate;

transmitting the certificate to the gateway device during an initial connection with the gateway device, wherein the certificate is to be used for confirming that the wireless sensing device is authorized to connect with the gateway device; and

receiving data indicative of a plurality of sensor measurements, wherein the data was transmitted to the gateway device from the wireless sensing device in response to confirming based on the certificate that the wireless sensing device is authorized to connect with the gateway device.

Ex. 7, '041 Patent at cl. 16.

66. The ordered combination of steps recited in the '041 Patent claims was not well-understood, routine, or conventional in the art. The specific ordered combination of elements: (i) in response to determining that a gateway device is associated with a wireless sensing device, generating a certificate; (ii) transmitting the certificate to the gateway device during an initial connection with the gateway device, wherein the certificate is to be used for confirming that the wireless sensing device is authorized to connect with the gateway device; and (iii) receiving data

indicative of a plurality of sensor measurements, wherein the data was transmitted to the gateway device from the wireless sensing device in response to confirming based on the certificate that the wireless sensing device is authorized to connect with the gateway device, did not previously exist in the art. *See, e.g., id.* at cl. 11, Abstract, 1:40–3:44, 5:43–45, 20:49–26:19, Figs. 1–3, 7A, 7B. The non-conventional and non-generic arrangement of these elements, a method in a management server that generates a certificate, transmits it to a gateway device for use in confirming that a wireless sensing device is authorized to connect with the gateway device, and receives sensor measurement data from the wireless sensing device through the gateway device in response to that confirmation, was not well-understood, routine, or conventional technology functioning in its routine manner.

67. The Examiner relied on the same rationale to allow the '041 Patent over the prior art. The Examiner found that the prior art did not disclose the '041 Patent's claimed limitations, including the specific certificate-based interactions between a management server, gateway device, and wireless sensing device in a sensor network. Ex. 24, '041 Patent File History, at 5/6/2024 Notice of Allowance. The Examiner's reasons for allowance confirm that the claimed combination of elements was not previously disclosed in the prior art.

68. The dependent claims of the '041 Patent recite additional elements that were not well-understood, routine, or conventional in the art. For example, claim 18, which depends from claim 16, recites the use of specific identifiers in the authentication process. These additional limitations were not well-understood, routine, or conventional in the art, either individually or in their ordered combination with the other claim elements.

## THE ACCUSED MOTIVE PRODUCTS

69. The Accused Motive Products generally relate to the field of IoT data-driven operations. The Accused Products include, without limitation, the Motive Cloud, the Motive Vehicle Gateway, the Motive Asset Gateway, the Motive Environmental Sensor, and the Motive Engine Immobilizer.

70. As depicted below, Motive advertises an "integrated platform" with three main layers: "First are the Motive IoT devices which are designed and built from the ground up by

Motive. Second are the broad set of AI-powered applications used to automate the management of physical operations.  Third is our data platform which provides a shared, secure, and scalable foundation for [Motive's] connected IoT devices and AI-powered applications."[15]



71.    Motive's "integrated platform" supports the Motive Safety Hub,[16] Motive Fleet Dashboard,[17] and Motive Driver App[18] through which users can manage and view data collected from Motive's IoT devices.

72.    **The Motive Asset Gateway:** Motive released its Asset Gateway (shown below) in September 2019.[19]

---

[15] Ex. 25, https://gomotive.com/content-library/guides/system-overview/.
[16] Ex. 26, https://helpcenter.gomotive.com/hc/en-us/articles/6162472353053-What-is-Safety-Hub.
[17] Ex. 27, https://helpcenter.gomotive.com/hc/en-us/articles/6177150001565-How-to-log-in-and-log-out-of-Motive-website-Fleet-Dashboard; Ex. 28, https://helpcenter.gomotive.com/hc/en-us/articles/6189410468509-How-to-view-safety-events-on-Fleet-Dashboard.
[18] Ex. 29, https://helpcenter.gomotive.com/hc/en-us/articles/6160873196573-How-to-download-the-Motive-Driver-App-and-sign-up-for-a-new-account.
[19] Ex. 30, https://gomotive.com/blog/trailer-tracking-and-dual-facing-dash-cam-introducing/; Ex. 31, https://gomotive.com/content-library/spec-sheet/asset-gateway/.



73.    Motive advertises its Asset Gateway as "monitor[ing] high value equipment and reefers, with solar power and cabled options for continuous tracking."[20]  According to Motive, the Asset Gateway includes a motion sensor as well as sensors for other data streams, including speed, battery level, and location.[21]    Motive also states that its Asset Gateway supports cellular connectivity and "[s]ecure data communication with server."[22]

74.    **The Motive Environmental Sensor**: Motive's Environmental Sensor (shown below) was released in 2022.[23]



75.    Motive advertises its Environmental Sensor as a "wireless sensor that reports temperature and humidity measurements to a Motive Gateway."[24]  The Environmental Sensor

---

[20] Ex. 31, https://gomotive.com/content-library/spec-sheet/asset-gateway/.
[21] *Id.*
[22] *Id.*
[23] Ex. 32, https://gomotive.com/blog/motive-new-cold-chain-management-solution/; Ex. 33, https://gomotive.com/blog/motive-introduces-reefer-monitoring-for-cold-chain-logistics/; Ex. 34, https://gomotive.com/content-library/spec-sheet/environmental-sensor/.
[24] Ex. 34, https://gomotive.com/content-library/spec-sheet/environmental-sensor/.

"connects to the Motive Asset Gateway via Bluetooth, leveraging cellular connectivity for data transmission to the cloud," and Motive advertises that "customers can create an advanced multi-zone reefer monitoring solution by connecting up to six sensors to one Asset Gateway."[25]

76.    **The Motive Engine Immobilizer**: Motive released its Engine Immobilizer (shown below) in spring/summer 2024.[26]



77.    According to Motive, the Engine Immobilizer supports "remote immobilization" from the Motive Fleet Dashboard[27] and is designed to "[p]revent engine starts in response to an emergency or as part of standard operations to thwart theft and misuse."[28]

78.    According to Motive, the Engine Immobilizer may be used with Motive's Vehicle Gateway.[29]  Motive advertises its Vehicle Gateway as using "built-in cellular connectivity to continuously sync driver and vehicle data with the Motive's Driver App and Fleet Dashboard" and including capabilities such as "live GPS tracking, real-time maintenance monitoring, and up-to-date compliance records."[30]  Motive further advertises its Vehicle Gateway as "one part of Motive's integrated solution."[31]

---

[25] Ex. 33, https://gomotive.com/blog/motive-introduces-reefer-monitoring-for-cold-chain-logistics/.
[26] Ex. 35, https://gomotive.com/wp-content/uploads/2024/06/Motive_Spring_Product_Showcase_2024.pdf; Ex. 36, https://gomotive.com/content-library/spec-sheet/engine-immobilizer/.
[27] Ex. 36, https://gomotive.com/content-library/spec-sheet/engine-immobilizer/.
[28] Ex. 35, https://gomotive.com/wp-content/uploads/2024/06/Motive_Spring_Product_Showcase_2024.pdf.
[29] Ex. 36, https://gomotive.com/content-library/spec-sheet/engine-immobilizer/.
[30] Ex. 37, https://gomotive.com/content-library/spec-sheet/vehicle-gateway/.
[31] *Id.*

79.     **The Motive Door and Environmental Sensor**: Motive's Door and Environmental Sensor (shown below) was released in 2025.[32]

80.     Motive advertises its Door and Environmental Sensor as "[a] wireless sensor that reports door activity and climate measurements to a Motive Gateway."[33]   The Door and Environmental Sensor connects via Bluetooth and Motive advertises that customers can connect up to six sensors to one Motive Asset Gateway.[34]

81.     Motive has infringed and continues to infringe the Asserted Samsara Patents by, *inter alia*, importing, offering for sale, selling, distributing, and/or using at least the above Accused Motive Products in the United States despite the knowledge that they infringe the Asserted Samsara Patents as, for example, set forth below and in Exs. 8–10.

82.     Motive has been on notice that it is infringing the Asserted Samsara Patents.  For example, on April 28, 2025, Samsara's Executive Vice President and Chief Legal Officer informed Motive's Chief Legal Officer that, *inter alia*, Motive was infringing the Samsara Asserted Patents. Ex. 40.  In addition, Motive has received further notice of its infringement of the Asserted Samsara Patents via the instant pleading and claim chart exhibits (Exs. 8–10) and through Samsara's October 2, 2025 infringement contentions, which are incorporated by reference.

---

[32] Ex. 38, https://gomotive.com/blog/fall-product-showcase-25/; Ex. 39, https://gomotive.com/content-library/spec-sheet/door-and-environmental-sensor/.
[33] Ex. 39, https://gomotive.com/content-library/spec-sheet/door-and-environmental-sensor/.
[34] *Id.*

## COUNT 1:  PATENT INFRINGEMENT

### (Infringement of the '685 Patent)

83.    Samsara repeats and re-alleges all of the above paragraphs as if fully set forth herein.

84.    The USPTO duly and legally issued the '685 Patent on May 7, 2024.

85.    Motive has infringed, and continues to infringe, one or more claims of the '685 Patent, including at least claim 1, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, making, and/or using in the United States, a system covered by one or more claims of the '685 Patent.  The system consists at least of the Motive Engine Immobilizer, alone or in combination with the Motive Vehicle Gateway, including their use in combination with Motive's integrated platform.  As shown by illustrative example in the attached claim chart at Ex. 8, the Motive Engine Immobilizer, alone or in combination with Motive's Vehicle Gateway, meets all limitations of at least claim 1 of the '685 Patent.

86.    On September 16, 2024, Samsara alerted Motive of its infringement of the '685 Patent and requested that it cease infringing Samsara's patented technologies.  Motive did not cease its infringing activity(ies).  Samsara again requested that Motive cease its infringement of the '685 Patent on April 28, 2025.  Motive did not respond to that letter.  Motive has therefore had knowledge of the '685 Patent at least as of September 16, 2024, and, in any event, at least as the result of the filing and service of the Counterclaims in this action.

87.    In addition to directly infringing the '685 Patent, Motive has indirectly infringed the '685 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '685 Patent by at least using the infringing Motive Engine Immobilizer, including in conjunction with the Motive Vehicle Gateway. Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induces at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '685 Patent.  *See, e.g.*, Motive Engine Immobilizer Spec Sheet;[35]

---

[35] Ex. 36, https://gomotive.com/content-library/spec-sheet/engine-immobilizer/.

Motive Help Center, *Engine Immobilizer: Installation*;[36] Motive Vehicle Gateway Spec Sheet.[37] Motive performed the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '685 Patent.

88.    Motive has also indirectly infringed the '685 Patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '685 Patent by others, including at least its customers, end users, and service providers that use the Motive Engine Immobilizer, including in conjunction with the Motive Vehicle Gateway.  Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Engine Immobilizer, and offering the Motive Cloud to its customers for use with the Motive Engine Immobilizer, contribute to infringement of the '685 Patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '685 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '685 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

89.    At least based on the notices that Samsara provided to Motive before filing its counterclaims, Motive's infringement of the '685 Patent has been willful and in reckless disregard of the '685 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct. Based on the notice of infringement that Motive received by way of Samsara's Counterclaim, Motive's infringement of the '685 Patent continues to be willful and in reckless disregard of the '685 Patent, without any reasonable basis to believe that it had a right to engage in the infringing conduct.

90.    Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.

91.    Unless enjoined, Motive will continue to infringe the '685 Patent.

92.    Due to Motive's infringing acts, Samsara has been and will be damaged in an

---

[36] Ex. 41, https://helpcenter.gomotive.com/hc/en-us/articles/19840062447005-Installation-Guide-Engine-Immobilizer.
[37] Ex. 37, https://gomotive.com/content-library/spec-sheet/vehicle-gateway/.

amount to be determined at trial.

## COUNT 2:  PATENT INFRINGEMENT

### (Infringement of the '706 Patent)

93.     Samsara repeats and re-alleges all of the above paragraphs as if fully set forth herein.

94.     The USPTO duly and legally issued the '706 Patent on July 24, 2018.

95.     Motive has infringed, and continues to infringe, one or more claims of the '706 Patent, including at least claim 1, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, making and/or using in the United States, a management server device covered by one or more claims of the '706 Patent.  The management server device consists of at least one or more servers or other components on the Motive Cloud that run software developed and/or provided by Motive, including their use in combination with Motive's Asset Gateway(s) and wireless sensing devices (*e.g.,* Motive's Environmental Sensors).  As shown by illustrative example in the attached claim chart at Ex. 9, the aforementioned servers or components, alone or in combination with Motive's Asset Gateway(s) and wireless sensing devices (*e.g.*, Motive's Environmental Sensors), meet all limitations of at least claim 1 of the '706 Patent.

96.     Samsara alerted Motive of its infringement of the '706 Patent and requested that it cease infringing Samsara's patented technologies on April 28, 2025.  Motive did not respond to that letter.  Motive has therefore had knowledge of the '706 Patent at least as of April 28, 2025, and, in any event, at least as the result of the filing and service of the Counterclaims in this action.

97.     In addition to directly infringing the '706 Patent, Motive has indirectly infringed the '706 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '706 Patent by at least using the Motive Cloud in conjunction with Motive's Asset Gateways and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induces at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '706 Patent.  *See, e.g.*, Asset Gateway

Spec Sheet;[38] Environmental Sensor Spec Sheet.[39]  Motive performed, and continues to perform, the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '706 Patent.

98.    Motive has also indirectly infringed the '706 Patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '706 Patent by others, including at least its customers, end users, and service providers that use the Motive Cloud in conjunction with Motive's Asset Gateways and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Asset Gateway and Motive's Environmental Sensor, and making and offering the Motive Cloud for use by its customers, contribute to infringement of the '706 Patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '706 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '706 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

99.    At least based on the notices that Samsara provided to Motive before filing its Counterclaim, Motive's infringement of the '706 Patent has been willful and in reckless disregard of the '706 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct. Based on the notice of infringement that Motive received by way of Samsara's Counterclaim, Motive's infringement of the '706 Patent continues to be willful and in reckless disregard of the '706 Patent, without any reasonable basis to believe that it had a right to engage in the infringing conduct.

100.    Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.

101.    Unless enjoined, Motive will continue to infringe the '706 Patent.

---

[38] Ex. 31, https://gomotive.com/wp-content/uploads/2023/11/Spec-Sheet_Asset-Gateway.pdf.
[39] Ex. 34, https://gomotive.com/content-library/spec-sheet/environmental-sensor/.

102.   As a consequence of the foregoing infringing activities by Motive, Samsara has been and will be damaged in an amount to be determined at trial.

## COUNT 3:  PATENT INFRINGEMENT

### (Infringement of the '041 Patent)

103.   Samsara repeats and re-alleges all of the above paragraphs as if fully set forth herein.

104.   The USPTO duly and legally issued the '041 Patent on August 20, 2024.

105.   Motive has infringed, and continues to infringe, one or more claims of the '041 Patent, including at least claim 16, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, and/or making or using in the United States, a gateway device covered by one or more claims of the '041 Patent.  The gateway device consists at least of Motive's Asset Gateway, including its use in combination with the Motive Cloud and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  As shown by illustrative example in the attached claim chart at Ex. 10, Motive's Asset Gateway, alone or in combination with the Motive Cloud and wireless sensing devices (*e.g.*, Motive's Environmental Sensors), meets all limitations of at least claim 16 of the '041 Patent.

106.   Samsara alerted Motive of its infringement of the '041 Patent and requested that it cease infringing Samsara's patented technologies on April 28, 2025.  Motive did not respond to that letter.  Thus, Motive has had knowledge of the '041 Patent at least as of April 28, 2025, and, in any event, at least as the result of the filing and service of the Counterclaims in this action.

107.   In addition to directly infringing the '041 Patent, Motive has indirectly infringed the '041 Patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '041 Patent by at least using Motive's Asset Gateway, including in conjunction with the Motive Cloud and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induces at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '041 Patent.  *See,*

*e.g.*, Asset Gateway Spec Sheet;[40] Environmental Sensor Spec Sheet.[41]  Motive performed the acts that constitute inducement with knowledge or at least willful blindness that the induced acts would constitute infringement of the '041 Patent.

108.   Motive has also indirectly infringed the '041 Patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '041 Patent by others, including at least its customers, end users, and service providers that use the Motive Cloud in conjunction with Motive's Asset Gateways and wireless sensing devices (*e.g.*, Motive's Environmental Sensors).  Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Asset Gateway and Motive's Environmental Sensor, and making and offering the Motive Cloud for use by its customers, contribute to infringement of the '041 Patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '041 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '041 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

109.   At least based on the notices that Samsara provided to Motive before filing its Counterclaim, Motive's infringement of the '041 Patent has been willful and in reckless disregard of the '041 Patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.  Based on the notice of infringement that Motive received by way of Samsara's Counterclaim, Motive's infringement of the '041 Patent continues to be willful and in reckless disregard of the '041 Patent, without any reasonable basis to believe that it had a right to engage in the infringing conduct.

110.   Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.

111.   Unless enjoined, Motive will continue to infringe the '041 Patent.

---

[40] Ex. 31, https://gomotive.com/wp-content/uploads/2023/11/Spec-Sheet_Asset-Gateway.pdf.
[41] Ex. 34, https://gomotive.com/content-library/spec-sheet/environmental-sensor/.

112.    As a consequence of the foregoing infringing activities by Motive, Samsara has been and will be damaged in an amount to be determined at trial.

**COUNT 4: DECLARATORY JUDGMENT**

**(Declaratory Judgment of Non-Infringement of the '580 Patent)**

113.    Samsara has not infringed and does not currently infringe claim 1 of the '580 patent, literally or under the doctrine of equivalents, directly or indirectly.

114.    Samsara incorporates herein by reference its forthcoming discovery responses, expert reports, and claim construction brief, which will be served in due course in accordance with the Court's schedule in this matter.

115.    As a result of at least the allegations contained in the SAC, an actual and justiciable controversy exists between Samsara and Motive concerning alleged infringement of the '580 patent by Samsara.

116.    Samsara incorporates by reference herein the allegations stated above in paragraph 277 of Samsara's Second Affirmative Defense regarding no infringement of the '580 patent.

117.    Samsara has not infringed and does not currently infringe any asserted claim of the '580 patent, literally or under the doctrine of equivalents, directly or indirectly. For example, with respect to asserted claim 1, the accused Samsara products do not perform any of the following limitations: (i) "identify[] one or more lines in the video using a predictive model, the one or more lines including a horizon line"; (ii) "comput[e] at least one camera parameter based on the one or more lines"; (iii) "overlay[] the one or more lines on the video to generate an overlaid video"; (iv) "transmit[] the overlaid video to an annotator device for manual review"; (v) "receiv[e] a confirmation from the annotator device, the confirmation indicating that the one or more lines are accurate;" and (vi) "transmit[] data representing the at least one camera parameter to the camera device." In addition, asserted claim 1 recites a method that is performed not by or on a "camera device," and thus the accused Samsara Dash Cams (including the CM 31 and 32 models) cannot possibly practice any limitation of claim 1.

118.    Samsara is entitled to a judgment from this Court that it does not infringe any claim, including claim 1, of the '580 patent.

## COUNT 5:  DECLARATORY JUDGMENT

### (Declaratory Judgment of Invalidity of the '580 Patent)

119.    Due to at least the allegations contained in the SAC, an actual and justiciable controversy exists between Samsara and Motive concerning the validity of the '580 patent.

120.    Claim 1 of the '580 patent is invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112.

121.    Samsara incorporates by reference herein the allegations stated above in paragraph 280 of Samsara's Fifth Affirmative Defense regarding invalidity of the '580 patent.

122.    Samsara is entitled to a judgment from this Court that the claims of the '580 patent, including claim 1, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

## COUNT 6:  DECLARATORY JUDGMENT

### (Declaratory Judgment of Non-Infringement of the '276 Patent)

123.    Samsara has not infringed and does not currently infringe claim 1 of the '276 patent, literally or under the doctrine of equivalents, directly or indirectly.

124.    Samsara incorporates herein by reference its forthcoming discovery responses, expert reports, and claim construction brief, which will be served in due course in accordance with the Court's schedule in this matter.

125.    As a result of at least the allegations contained in the SAC, an actual and justiciable controversy exists between Samsara and Motive concerning alleged infringement of the '276 patent by Samsara.

126.    Samsara incorporates by reference herein the allegations stated above in paragraphs 277 of Samsara's Second Affirmative Defense regarding no infringement of the '276 patent.

127.    Samsara has not infringed and does not currently infringe any asserted claim of the '276 patent, literally or under the doctrine of equivalents, directly or indirectly.  For example, with respect to asserted claim 1, the accused Samsara products do not perform any of the following limitations: (i) "receiv[e] an image of a roadway recorded by a camera device installed within a

vehicle"; (ii) "detect[] a horizon line in the image"; (iii) "overlay[] a line on the image to generate an overlaid image"; "transmitting the overlaid image to a computing device over a network"; (iv) "receiv[e] a modification of the line from the computing device, the modification comprising a new line at a second position"; (v) "comput[e] a camera parameter based on the new line"; and (vi) "transmit[] data representing the camera parameter to the camera device."  In addition, asserted claim 1 recites a method that is performed not by or on a "camera device," and thus the accused Samsara Dash Cams (including the CM 31 and 32 models) cannot possibly practice any limitation of claim 1.

128.    Samsara is entitled to a judgment from this Court that it does not infringe any claim, including claim 1, of the '276 patent.

## COUNT 7:  DECLARATORY JUDGMENT

### (Declaratory Judgment of Invalidity of the '276 Patent)

129.    Due to at least the allegations contained in the SAC, an actual and justiciable controversy exists between Samsara and Motive concerning the validity of the '276 patent.

130.    Claim 1 of the '276 patent is invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112.

131.    Samsara incorporates by reference herein the allegations stated above in paragraph 280 of Samsara's Fifth Affirmative Defense regarding invalidity of the '276 patent.

132.    Samsara is entitled to a judgment from this Court that the claims of the '276 patent, including claim 1, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

## COUNT 8:  DECLARATORY JUDGMENT

### (Declaratory Judgment of Non-Infringement of the '243 Patent)

133.    Samsara has not infringed and does not currently infringe claim 1 of the '243 patent, literally or under the doctrine of equivalents, directly or indirectly.

134.    Samsara incorporates herein by reference its forthcoming discovery responses, expert reports, and claim construction brief, which will be served in due course in accordance with

the Court's schedule in this matter.

135.    As a result of at least the allegations contained in the SAC, an actual and justiciable controversy exists between Samsara and Motive concerning alleged infringement of the '243 patent by Samsara.

136.    Samsara incorporates by reference herein the allegations stated above in paragraph 277 of Samsara's Second Affirmative Defense regarding no infringement of the '243 patent.

137.    Samsara has not infringed and does not currently infringe any asserted claim of the '243 patent, literally or under the doctrine of equivalents, directly or indirectly.  For example, with respect to asserted claim 1, the accused Samsara products do not perform any of the following limitations: (i) "input[] labeled examples into a neural network, the neural network comprising: a backbone network, and one or more prediction heads coupled to the backbone network, the one or more prediction heads comprising one or more of a distraction classification prediction head, object detection prediction head, and a pose estimation prediction head"; (ii) "minimize[e] a loss based on outputs of the one or more prediction heads causing a change in parameters of the backbone network"; and (iii) "stor[e] a distraction classification model after minimizing the loss, the distraction classification model comprising the parameters of the backbone network and parameters of at least one of the one or more prediction heads."  In addition, asserted claim 1 recites a method that is performed not by or on a "camera device," and thus the accused Samsara Dash Cams (including the CM 31 and 32 models) cannot possibly practice any limitation of claim 1.

138.    Samsara is entitled to a judgment from this Court that it does not infringe any claim, including claim 1, of the '243 patent.

**COUNT 9:  DECLARATORY JUDGMENT**

**(Declaratory Judgment of Invalidity of the '243 Patent)**

139.    Due to at least the allegations contained in the SAC, an actual and justiciable controversy exists between Samsara and Motive concerning the validity of the '243 patent.

140.    Claim 1 of the '243 patent is invalid for failure to satisfy one or more conditions of patentability specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and 112.

141. Samsara incorporates by reference herein the allegations stated above in paragraph 280 of Samsara's Fifth Affirmative Defense regarding invalidity of the '243 patent.

142. Samsara is entitled to a judgment from this Court that the claims of the '243 patent, including claim 1, are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112.

## COUNT 10: DECLARATORY JUDGMENT

### (Declaratory Judgment of No Trade Secret Misappropriation)

143. Samsara repeats and re-alleges paragraphs 201–223 of Samsara's Answer as if fully set forth herein.

144. Due to at least the allegations contained in the SAC, an actual and justiciable controversy exists between Samsara and Motive regarding the existence and alleged misappropriation of purported trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 to 3426.11, and the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.

145. Samsara has not engaged in misappropriation of Motive's trade secrets, including because Motive has not identified a protectable trade secret with the requisite level of particularity, Motive has not proven that it owned any trade secret, Motive has failed to take reasonable efforts to safeguard its alleged trade secret information, Motive's alleged trade secrets were publicly known and/or readily ascertainable by proper means, Motive's alleged trade secrets lack independent economic value from not being generally known, Samsara independently developed the Ambarella-based designs, specification and platform, Samsara independently developed its business strategies including as related to customers and pricing lists, Samsara did not engage in unauthorized acquisition, use, or disclosure of any alleged trade secrets, and because, to the extent that Samsara did acquire or use any alleged trade secrets, Samsara lacked knowledge that the alleged trade secrets had been misappropriated.

146. Samsara incorporates by reference herein the allegations stated above in paragraphs 283–288 and 303–305 of Samsara's Eighth through Thirteenth and Twenty-Sixth through Twenty-Eighth Affirmative Defenses.

147.    Samsara is entitled to judgment from this Court of no trade secret misappropriation under the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 to 3426.11, and the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.

## PRAYER FOR RELIEF

148.    Wherefore, Samsara requests entry of judgment in its favor and against Motive on all causes of action alleged herein, including as follows:

(A)    That Samsara has not infringed and does not currently infringe literally or under the doctrine of equivalents, directly or indirectly, any asserted claim of the '580, '276, and '243 patents;

(B)    That the asserted claim(s) of the '580, '276, and '243 patents, including claim 1, is(are) invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 101, 102, 103, and 112;

(C)    That Samsara has not misappropriated and does not currently misappropriate any of Motive's alleged trade secrets under the Defend Trade Secrets Act and/or the California Uniform Trade Secrets Act;

(D)    That the information Motive alleges to be trade secrets do not qualify as trade secrets under the Defend Trade Secrets Act and/or the California Uniform Trade Secrets Act;

(E)    That Samsara has not violated the Lanham Act, 15 U.S.C. § 1125(a);

(F)    That Samsara has not committed fraud;

(G)    That Samsara has not violated the California Unfair Competition Law (Cal. Civ. Code § 17200);

(H)    That Samsara has not committed defamation;

(I)    That Samsara has not committed intentional interference with Motive's prospective economic relations;

(J)    That Motive has infringed one or more claims of each of the Asserted Samsara Patents;

(K)    A permanent injunction restraining and enjoining Motive, and its respective officers,

agents, servants, employees, attorneys, and those persons in active concert or participation with Motive who receive actual notice of the order by personal service or otherwise, from any further importation, offer for sale, sale, and/or use of Motive's infringing products and/or services and any other infringement of the Asserted Samsara Patents, whether direct or indirect;

(L)    An award of damages to compensate Samsara for Motive's patent infringement, including damages pursuant to 35 U.S.C. § 284, including trebling of all damages with respect to Samsara's counterclaims for patent infringement (Counts 1–3 of Samsara's Counterclaims) due to Motive's willful infringement, as well as pre-judgment and post-judgment interest;

(M)    An award of reasonable attorneys' fees and costs, including Samsara's reasonable attorneys' fees pursuant to 35 U.S.C. § 285, the Lanham Act, the Defend Trade Secrets Act (including under 18 U.S.C. § 1836(b)(3)(D)), the California Unfair Competition Law, and the California Uniform Trade Secrets Act (including under Cal. Civ. Code § 3426.4);

(N)    A finding that this is an exceptional case, an award of treble damages due to Motive's deliberate conduct, and an order that Motive pay Samsara's costs of suit and attorneys' fees;

(O)    An award of pre-judgment and post-judgment interest; and

(P)    Such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

DATED: April 24, 2026

Respectfully submitted,

*/s/ Josh Krevitt*
Josh Krevitt (SBN 208552)
Brian A. Rosenthal (*Pro Hac Vice*)
Katherine Q. Dominguez (*Pro Hac Vice*)
Allen Kathir (*Pro Hac Vice*)
Allyson Parks (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
JKrevitt@gibsondunn.com
BRosenthal@gibsondunn.com
KDominguez@gibsondunn.com
AKathir@gibsondunn.com
AParks@gibsondunn.com

Jaysen S. Chung (SBN 280708)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306
JSChung@gibsondunn.com

Stuart M. Rosenberg (SBN 239926)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300
Facsimile: 650.849.5333
SRosenberg@gibsondunn.com

Nathaniel R. Scharn (SBN 305836)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220
NScharn@gibsondunn.com

Hannah L. Bedard (*Pro Hac Vice*)
Wendy Cai (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8500
Facsimile: 202.467.0539
HBedard@gibsondunn.com
WCai@gibsondunn.com

*Attorneys for Defendant and Counterclaim
Plaintiff Samsara Inc.*

SAMSARA'S ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIMS

40

CASE NO. 3:24-CV-00902-JD

## DEMAND FOR JURY TRIAL

Pursuant to Civil Local Rule 3-6 and Federal Rule of Civil Procedure 38(b), Samsara Inc. hereby demands a trial by jury on all issues and claims triable by jury.

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on April 24, 2026, with a copy of this document via electronic mail.

*/s/ Josh Krevitt*
Josh Krevitt