GIBSON, DUNN & CRUTCHER LLP
JOSH KREVITT (SBN 208552)
JKrevitt@gibsondunn.com
STUART M. ROSENBERG (SBN 239926)
SRosenberg@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301
Telephone:    650.849.5300
Facsimile:    650.849.5333

BRIAN A. ROSENTHAL (*pro hac vice*)
BRosenthal@gibsondunn.com
KATHERINE Q. DOMINGUEZ (*pro hac vice*)
KDominguez@gibsondunn.com
ALLEN KATHIR (*pro hac vice*)
AKathir@gibsondunn.com
ALLYSON PARKS (*pro hac vice*)
AParks@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    212.351.4000
Facsimile:    212.351.4035

GIBSON, DUNN & CRUTCHER LLP
JAYSEN S. CHUNG (SBN 280708)
JSChung@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone:    415.393.8200
Facsimile:    415.393.8306

NATHANIEL R. SCHARN (SBN 305836)
NScharn@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612
Telephone:    949.451.3800
Facsimile:    949.451.4220

HANNAH L. BEDARD (*pro hac vice*)
HBedard@gibsondunn.com
WENDY W. CAI (*pro hac vice*)
WCai@gibsondunn.com
1700 M STREET, NW
Washington, DC 20036
Telephone:    202.955.8500
Facsimile:    202.467.0539

*Attorneys for Defendant and Counterclaim
Plaintiff Samsara Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOTIVE TECHNOLOGIES, INC.,<br><br>     *Plaintiff and Counterclaim Defendant*,<br><br>     v.<br><br>SAMSARA INC.,<br><br>     *Defendant and Counterclaim Plaintiff*. | CASE NO. 3:24-CV-00902-JD<br><br>**DEFENDANT AND COUNTERCLAIM PLAINTIFF SAMSARA INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Judge: The Honorable James Donato<br>Hearing Date: May 21, 2026<br>Time: 11:00 a.m. |

# **TABLE OF CONTENTS**

**Page**

I.  THE '580 AND '276 PATENT CLAIMS ARE NOT PATENT ELIGIBLE ............................. 1

    1.  *Alice* Step One:  The Claims Are Directed to an Abstract Idea .................................... 2

        a.  The Claims Do Not Provide a Specific Technological Improvement............... 2

        b.  Motive's Remaining Arguments Fail.................................................................. 3

    2.  *Alice* Step Two:  The Claims Lack an Inventive Concept ........................................... 5

II.  THE '243 PATENT CLAIMS ARE NOT PATENT ELIGIBLE................................................. 6

    1.  *Alice* Step One:  The Claims Are Directed to an Abstract Idea .................................... 6

        a.  The Claims Do Not Provide a Specific Technological Improvement............... 6

        b.  Motive's Remaining Arguments Fail.................................................................. 8

    2.  *Alice* Step Two:  The Claims Lack an Inventive Concept ........................................... 9

III.  DISMISSAL WITH PREJUDICE IS APPROPRIATE ........................................................... 10

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020)..................................................................................1, 2, 8, 10

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)........................................................................................6

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020)........................................................................................9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)..........................................................................................1

*Coho Licensing LLC v. Glam Media, Inc.*,
No. C 14-01576 JSW, 2017 WL 6210882 (N.D. Cal. Jan. 23, 2017), *aff'd sub nom.
Coho Licensing LLC v. Oath Inc.*, 710 F. App'x 892 (Fed. Cir. 2018) ............................................6

*Dental Monitoring SAS v. Align Tech., Inc.*,
No. C 22-07335 WHA, 2024 WL 2261931 (N.D. Cal. May 16, 2024)........................................7, 9

*Elec. Power Grp., LLC v. Alstom SA*,
830 F.3d 1350 (Fed. Cir. 2016)........................................................................................2, 3

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026)........................................................................................5, 9

*IBM v. Zillow Grp., Inc.*,
No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan. 9, 2024) ..................................................1, 2, 8, 10

*Mentor Graphics Corp. v. Eve-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017)........................................................................................5

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024)........................................................................................2, 6

*People.ai, Inc. v. Clari Inc.*,
No. 2022-1364, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ...........................................................7

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205 (Fed. Cir. 2025)........................................................................................7, 8, 9

*RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*,
No. 2025-1044, 2026 WL 1162746 (Fed. Cir. Apr. 29, 2026) ............................................2, 5, 7, 9

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)........................................................................................6

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)........................................................................................1, 10

ii

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)........................................................................................................6

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019)........................................................................................................2

SAMSARA INC.'S REPLY IN SUPPORT OF                                    CASE NO. 3:24-CV-00902-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
| --- | --- |
| Asserted Patents | U.S. Patent Nos. 11,875,580; 12,062,243; and 12,136,276 |
| Br. | Samsara's Notice of Motion and Motion for Judgment on the Pleadings (D.I. 197) |
| Opp. | Motive's Opposition to Samsara's Motion for Judgment on the Pleadings (D.I. 204) |
| PTAB | Patent Trial and Appeal Board |
| SAC | Second Amended Complaint (D.I. 107) |
| '580 patent | U.S. Patent No. 11,875,580 |
| '243 patent | U.S. Patent No. 12,062,243 |
| '276 patent | U.S. Patent No. 12,136,276 |

SAMSARA INC.'S REPLY IN SUPPORT OF                                   CASE NO. 3:24-CV-00902-JD
MOTION FOR JUDGMENT ON THE PLEADINGS

Motive offers no valid basis to hold that the asserted patent claims are eligible under 35 U.S.C. § 101, as its opposition brief relies only on assertions about features found nowhere *in the claims* or entirely conclusory arguments that the claims provide a "specific technological improvement." The eligibility inquiry "must focus on the *language of the Asserted Claims*," and thus "features that are not claimed are irrelevant." *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (emphasis added); *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020). In addition, a "statement that a feature improves the functioning" of the existing technology is "by itself, conclusory," and "conclusory allegations" "unsupported by the patent itself" "have [been] repeatedly found insufficient to survive the pleading stage." *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020); *IBM v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *5 (Fed. Cir. Jan. 9, 2024). The claims' language establishes that they fail both steps of the two-step test for eligibility because they are directed to an abstract idea and lack any inventive concept.

Motive also fails to distinguish the controlling precedent. For the '580 and '276 patents, Motive tries to circumvent *Electric Power* and its progeny altogether, contending the ineligible claims in those cases "d[id] no more than collect data from existing sources, apply a generic analysis to the collected data, and display the results, with no specific technical implementation details and no [technological] improvement." Opp. 6. But at the core of the '580 and '276 patents' claims is the use of those same abstract processes to implement the abstract idea of calculating a parameter of a camera (*e.g.*, a viewing angle) based on a horizon line in a video or image received by the camera. For the '243 patent, Motive misapprehends *Recentive*, *DM*, and other case law in an effort to avoid the precedent's direct application here; namely, that merely applying a generic machine learning technique (*i.e.*, a neural network) to a particular field of use (*i.e.*, distracted driving detection) is ineligible. Opp. 9–12.

Finally, Motive fails to identify a *single* non-conclusory, factual allegation in the SAC that could avoid dismissal, and proposes no additional allegation that would change the eligibility inquiry despite asking for leave to amend a *third* time. Nor does Motive contend any claim construction disputes must be resolved before deciding eligibility. Dismissal with prejudice should be granted.

## I.     THE '580 AND '276 PATENT CLAIMS ARE NOT PATENT ELIGIBLE

The claims are directed to no more than the abstract idea of calculating a parameter of a camera

1

(*e.g.*, viewing angle) based on a horizon line in a video or image received by the camera.  Br. 3–6. Motive argues that the claims are instead directed to a "specific technological improvement."  Opp. 3–5.  But Motive identifies no support for its conclusory assertion and focuses only on *unclaimed* features that are irrelevant to the inquiry.  In addition, the eligibility question can be decided based on representative claim 1 of the '580 patent alone because Motive does not identify in the other asserted claims of the two patents any limitations of "distinctive significance" that would materially affect the analysis.  *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024); *infra* at p. 6.

### 1.    *Alice* Step One:  The Claims Are Directed to an Abstract Idea

#### a.    The Claims Do Not Provide a Specific Technological Improvement

The crux of Motive's Step One argument is that the claims are patent eligible because they provide "a specific technological improvement" to a "technological problem."  Opp. 4.  Motive's argument should be rejected, as it finds no support in the claim language or the patents' specification.

Motive contends the claims solved the "technical problem" of "how to *automatically* and accurately calibrate a camera's *physical* parameters."[1]  Opp. 1; *id.* at 4–5.  But Motive's assertion is "insufficient" to avoid ineligibility because it is an entirely "conclusory" argument.  *Zillow*, 2024 WL 89642, at *5.  Motive's argument also fails because it relies on *unclaimed* features that are "irrelevant" to the analysis.  *See Am. Axle*, 967 F.3d at 1293.  For instance, the claims do not require *automatically* calibrating a camera's parameters, let alone in an accurate manner.  The claims also are not limited to calculating *physical* parameters—nor would this alter the analysis, as the Federal Circuit has repeatedly held that computing or analyzing data relating to physical items is an abstract process.  *See, e.g.*, *Elec. Power Grp., LLC v. Alstom SA*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (ineligible claims that involved analyzing data relating to an "electric power grid"); *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1368 (Fed. Cir. 2019) (ineligible claims that involved analyzing "physiologic treatment data" of a human patient).  Indeed, the Federal Circuit recently held ineligible claims that recited various data processing functions for "monitoring vehicles."  *RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*, No. 2025-1044, 2026 WL 1162746, at *1–2 (Fed. Cir. Apr. 29, 2026).

---

[1] All remaining emphases in this brief have been added unless otherwise noted.

2

Motive's argument that the claims provide a "specific technological improvement" that solved this purported problem is also conclusory and finds no basis in the claim language. Motive argues that the claims' improvement is "*automatically* determining the *calibration* parameters" of a camera "through the line(s) detected in the video, with a review or confirmation workflow that *ensures accuracy* before" "transmitt[ing]" the parameters "to the camera." Opp. 2. To start, the claims do not require *automatically* determining a camera parameter. In fact, the patents establish the claims' step of "computing" a "camera parameter" does *not* need to be automatic, as they expressly contemplate human involvement in the claims' steps of "manual review" and "confirmation" ('580 patent) or "modification" ('276 patent) of the parameter. Br. 6. Thus, any "ensure[d] accuracy" would be the result of human action and not a technological improvement required *in the claims*. Likewise, the claims do not require a *calibration* parameter. Instead, the claims simply recite computing a generically described "camera parameter." In any event, computing a *calibration* parameter would amount to no more than "limit[ing]" the abstract process of computing data "to particular content," which does not remove that process from "the realm of abstract ideas." *Elec. Power*, 830 F.3d at 1353.

Accordingly, when stripped of features not actually found *in the claims*, what is left of Motive's purported "specific technological improvement" is no more than the abstract idea of calculating a parameter of a camera based on a horizon line in a video or image received by the camera. Br. 3–4.

### b.   Motive's Remaining Arguments Fail

*Motive Errs in Its Application of the Case Law.* Motive contends the *Electric Power* "line of cases" does not apply because it "concerns [ineligible] claims that do no more than collect data from existing sources, apply a generic analysis to the collected data, and display the results, with no specific technical implementation details and no improvement to any technological process or system." Opp. 6. But at the heart of the '580 and '276 patent claims are exactly those abstract processes, which the Federal Circuit in *Electric Power* and other cases has held are ineligible: collecting information (*i.e.*, "receiving" a video or image); modifying it (*i.e.*, "overlaying" a horizon line on the video or image, or modifying that line ('276 patent)); conducting an analysis with that information (*i.e.*, "computing" a "camera parameter"); and sending the results of the analysis (*i.e.*, "transmitting" the "camera parameter"). Br. 4 (citing cases). The claims recite "no specific technical implementation details and

3

no improvement to any technological process or system" to perform these functions. *See* Opp. 6.

Nevertheless, Motive contends the claims are "different" because they "are directed to a specific technical process for deriving *physical* properties of a camera device from video data captured by that camera device, using the line(s) identified in the video data to derive the parameters, and transmitting" the parameters "back to the camera device *to update its operations*." Opp. 6. But there is nothing *in the claims* requiring that "physical" camera properties be "deriv[ed]" and camera "operations" be "update[d]." *Supra* at p. 3–4. Thus, Motive's attempt to recharacterize the claims, including its bare assertion that they "improve the functioning of a physical camera system," should be ignored. Opp. 6.

Motive also misplaces its reliance on cases like *Thales*, *Contour IP*, and *Core Wireless*. In *Thales Visionix Inc. v. United States*, the eligible claims "specif[ied] a particular configuration of inertial sensors" that operated in a "non-conventional manner to reduce errors in measuring the relative position and orientation of a moving object." 850 F.3d 1343, 1348 (Fed. Cir. 2017). Similarly, in *Contour IP Holding LLC v. GoPro, Inc.*, the eligible claims provided "an improved POV camera" by specifically "enabl[ing]" it "to 'operate differently than it otherwise could.'" 113 F.4th 1373, 1379–80 (Fed. Cir. 2024). The eligible claims in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.* provided an "improved user interface for electronic devices" "with small screens" by requiring "a specific manner of displaying a limited set of information" that improved the devices' "functioning." 880 F.3d 1356, 1362–63 (Fed. Cir. 2018). Here, unlike the *Thales* and *Core Wireless* claims, the '580 and '276 patent claims require no "particular" technological "configuration," much less one requiring "non-conventional" or improved functioning of any specific technology. Further, unlike the *Contour IP* claims, Motive does not contend the claims here enable any technology to "operate differently than it otherwise could"—they do not. Indeed, Motive's reasons for why its patents claims are similar to the eligible claims in those cases yet again rely on irrelevant *unclaimed* features (*e.g.*, "*automatically* deriv[ing] . . . parameters," "use of a video in a *moving* vehicle," "self-calibrating *without manual intervention*," "*specific* computation" of parameters). Opp. 4–5. The claims' language makes clear that they employ at most preexisting, generic technology functioning as expected to carry out the idea of calculating a camera parameter based on a horizon line in a video or image. Br. 3–4.

*The Claims Fail to Specify the "How."* Motive never explains what *in the claims* specifies *how*

4

to perform their functions.  Opp. 7.  The Federal Circuit has rejected a patentee's assertions that claims provided a technical improvement where, as here, the claims "lack[ed] any meaningful detail regarding *how* to" perform their functions "in a nonconventional way."  *RFC*, 2026 WL 1162746, at *2.

### 2.    *Alice* Step Two:  The Claims Lack an Inventive Concept

*The Claims' "Predictive Model" Does Not Add an Inventive Concept.*  The only claim element Motive contends is not conventional is the "predictive model," which appears only in the '580 patent claims.  Opp. 8; *see* Br. 6–8.  To start, the Federal Circuit has "repeatedly made clear that" such "a conclusory assertion about an inventive concept . . . is insufficient."  *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1068 (Fed. Cir. 2026).  Motive is also wrong.  Although Motive concedes the specification confirms conventional technology can be used for the "predictive model," Motive argues the specification's use of the words "can be" implies that *unconventional* technology can be used as well.  Opp. 8.  Yet Motive does not even try to identify any unconventional technology that could be used.  Regardless, because the claims encompass "predictive models" that are conventional technology and thus those embodiments would lack any inventive concept, it does not matter whether the claims could also encompass predictive models that are unconventional.  It is well settled that "a claim covers both statutory" (patent eligible) and "non-statutory" (ineligible) "embodiments," "it is not eligible for patenting."  *Mentor Graphics Corp. v. Eve-USA, Inc.*, 851 F.3d 1275, 1294–95 (Fed. Cir. 2017).

*Motive's Conclusory Assertion About the Combination of Claim Elements Fails.*  Motive's argument that the claims' combination of elements is "non-conventional" (Opp. 7–8) is entirely conclusory and should be rejected on that basis alone.  *GoTV*, 166 F.4th at 1068.  Further, Motive's argument is irrelevant because it relies on features found nowhere *in the claims*, such as "automatic identification," "automated overlay," and "closed-loop parameter transmission."  Opp. 7–8.  Motive also cites without explanation the denial of IPR institution for the '276 patent as purported support for its assertion.  Opp. 8.  Notably, Motive does not address the *instituted* IPR for the related '580 patent claims, which Motive does not dispute are materially the same as the '276 patent claims for purposes of the eligibility inquiry.  Br. 2–3, 6–9.  In any event, Motive does not explain why the '276 patent IPR institution denial impacts the eligibility question here.  Nor could it, as the denial was a one-line statement with no substantive analysis and at most concerned the questions of validity under 35 U.S.C.

5

§§ 102 and 103, which are separate from the threshold legal question of patent eligibility under Section 101. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty."); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (holding that it is not "enough for subject-matter eligibility [under § 101] that claimed techniques be novel and nonobvious in light of prior art [under §§] . . . 102 and 103"); *Coho Licensing LLC v. Glam Media, Inc.*, No. C 14-01576 JSW, 2017 WL 6210882, at *7 (N.D. Cal. Jan. 23, 2017), *aff'd sub nom. Coho Licensing LLC v. Oath Inc.*, 710 F. App'x 892 (Fed. Cir. 2018) (holding claims ineligible despite the PTAB declining to institute IPR).

*The Dependent Claims Have No Inventive Concept.*  Motive's only argument that the dependent claims pass Step Two is that some claims recite "receiving the image from a camera 'while the vehicle is moving' or when 'traveling above a pre-defined speed.'"  Opp. 8–9.  But merely defining when an image is received (*e.g.*, when the vehicle is moving) simply "narrow[s] or reformulat[es]" the abstract idea of calculating a camera parameter based on a horizon line in a received video or image, which is insufficient at Step Two.  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018).

## II.    THE '243 PATENT CLAIMS ARE NOT PATENT ELIGIBLE

The '243 patent claims are focused on the abstract idea of applying a generic machine learning technique (*i.e.*, a neural network) to a particular field of use (*i.e.*, distracted driving detection).  Br. 10–13.  Motive contends the claims are instead directed to a "specific technological improvement" because they require a "specific neural network architecture" and "training methodology."  Opp. 11.  Motive, however, offers no support for this assertion and has no response to the fundamental problem that the patent itself confirms the claims require only the application of conventional machine learning techniques in the field of distracted driving detection—an abstract idea that is ineligible under controlling precedent.  Furthermore, the eligibility question can be decided based on claim 1 of the '243 patent alone because Motive does not identify in the other claims any limitations of "distinctive significance" that would materially affect the analysis.  *Mobile Acuity*, 110 F.4th at 1290.

### 1.    *Alice* Step One:  The Claims Are Directed to an Abstract Idea

#### a.    The Claims Do Not Provide a Specific Technological Improvement

Motive's lead Step One argument is that the claims are eligible because they recite "a specific

neural network architecture" and "a specific training methodology," which Motive contends provided an "improvement to existing technology." Opp. 9–11. This argument fails for numerous reasons.

The claims recite no "specific neural network architecture." They merely recite a "backbone network" with "one or more prediction heads" "coupled" (or connected) to it—without requiring any specific configuration or offering any other detail. Motive does not dispute that the patent concedes both the "backbone network" and "prediction heads" can be a generic neural network. Br. 13. Nor does Motive suggest the claims require a specific technical improvement to "couple" one generic neural network (*i.e.*, a prediction head) to another generic neural network (*i.e.*, the backbone network). Simply reciting "generic computer features" that are "coupled to" each other itself is insufficient for eligibility. *People.ai, Inc. v. Clari Inc.*, No. 2022-1364, 2023 WL 2820794, at *12 (Fed. Cir. Apr. 7, 2023).

Nevertheless, Motive contends this "architecture is not generic" because the "backbone network performs a specific function" of "processing image input and generating feature information" and the "prediction heads" "classify[] those features." Opp. 10. But the claims do not expressly limit these elements to those functions or specify *how* to perform them in a "nonconventional way." *RFC*, 2026 WL 1162746, at *2; Br. 13. In any event, rather than explain why that "architecture" is "not generic," Motive's argument merely refers to these generic elements' known functions. Motive does not dispute that, as prior art cited on the face of the '243 patent confirms, a backbone network for generating feature information and prediction heads for classifying those features were already well known. Br. 13.

Furthermore, the claims require no "specific training methodology." For this argument, Motive merely points to the claims' recitation of "inputting labeled examples" and "minimizing a loss" to reduce error in that classification. Opp. 11. Both are known and basic aspects of machine learning training: inputting labeled examples so the machine learning model can learn how to classify images and minimizing a loss function to reduce error in that classification. Br. 9–10. Indeed, the claims' step of "inputting labeled examples" to train a neural network is no different from the ineligible *Recentive* claims' use of "event parameters" and "target features" to train a "machine learning" model, or the ineligible *DM* claims' use of a learning base of "historical images" to train a "deep learning" neural network. *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1209 n.2 (Fed. Cir. 2025); *Dental Monitoring SAS v. Align Tech., Inc.*, No. C 22-07335 WHA, 2024 WL 2261931, at *2, *5 (N.D. Cal.

7

May 16, 2024).  Similarly, the '243 patent claims' step of "minimizing a loss" to improve accuracy of the neural network's classification of images is no different from the ineligible *Recentive* claims' step of "iterative training [to] improve[] the accuracy of the [machine learning] model." 134 F.4th at 1209 n.2.  Motive has no response to these material similarities between the '243 patent claims and those in *Recentive* and *DM*.  Nonetheless, Motive contends the claims are different because they "classify specific behavioral indicators from in-vehicle camera footage." Opp. 11.  But this amounts to no more than applying a generic machine learning technique in a field of use (*i.e.*, distracted driving detection)— which is insufficient under the controlling precedent.  Br. 11–12; *Recentive*, 134 F.4th at 1213.

### b. Motive's Remaining Arguments Fail

*Motive's Other Conclusory "Technological Improvement" Assertions.*  Motive argues that the claims improved upon "[p]rior art systems [that] used either traditional computer vision techniques (which were insufficiently *accurate* for real-world deployment) or generic neural networks that lacked the architectural efficiency to process in-vehicle camera footage in *real time*." Opp. 11.  Yet again, this argument should be rejected because it is conclusory. *Zillow*, 2024 WL 89642, at *5.  Regardless, Motive identifies nothing *in the claims* that could confer eligibility or substantiate Motive's assertion. The only possible source of accuracy in the claims is the broad instruction of "minimizing a loss," which the patent concedes can be implemented using a known, abstract mathematical function that itself is not eligible.  Br. 13–14 (citing cases).  In addition, because there is no requirement *in the claims* for "real time" processing, that *unclaimed* feature is "irrelevant." *Am. Axle*, 967 F.3d at 1293.  Finally, Motive suggests the claims provide an improvement given the denial of IPR institution for this patent. Opp. 11.  This argument fails for the same reasons discussed for the '276 patent. *Supra* at p. 5–6.

*Motive's Attempt to Escape Recentive and DM Fails.*  Motive misapprehends the Federal Circuit's holding in *Recentive*, arguing that the court "held the claims ineligible because they applied generic machine learning to what was fundamentally an organizational and administrative task— scheduling." Opp. 9.  It is telling that Motive offers no citation to *Recentive* for that assertion:  it was not part of the court's holding, which did not even use the terms "organizational" or "administrative." Instead, the Federal Circuit held that—just like the '243 patent claims—"claims that do no more than apply established methods of machine learning to a new data environment are" ineligible.  134 F.4th

8

at 1211. Motive also argues that *Recentive* and *DM* do not apply because, unlike the ineligible claims in those cases, the '243 patent claims provide a specific "architecture" and "training methodology." Opp. 10–11. Motive's conclusory argument fails for the reasons discussed above. *Supra* § II.1.a.

Furthermore, relying on *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358 (Fed. Cir. 2020), Motive contends *Recentive* and *DM* do not apply because the '243 patent claims relate to the "physical" dimension. Opp. 12. Contrary to Motive's argument, however, the Federal Circuit did not rule that the *CardioNet* claims were eligible because they related to the "physical" realm, but rather because they specified an "improved medical device that achieve[d] speedier, more accurate, and clinically significant detection of two specific medical conditions." 955 F.3d at 1370. Here, in contrast, the '243 patent claims do not provide any technological improvement. In any event, that the claims apply a generic machine learning technique to data that may relate to the "physical" realm does not render them non-abstract. Indeed, the ineligible *DM* claims applied a generic machine learning technique to data relating to the physical realm, *i.e.*, the fit of an orthodontic aligner worn by a dental patient. 2024 WL 2261931, at *2. Thus, Motive's argument does not hold water.

*The Claims Fail to Specify the "How."* Motive never resolves the problem that the claims fail to specify *how* to perform their recited functions, much less in a "nonconventional way." *RFC*, 2026 WL 1162746, at *2; Opp. 12. The claims instead employ "purely functional" language, *e.g.*, inputting data, and minimizing a loss—without providing the requisite "how." Br. 13.

### 2.    *Alice* Step Two:  The Claims Lack an Inventive Concept

*The Claims' Backbone Network With Prediction Heads Provides No Inventive Concept.* Motive contends the claims' "core inventive concept" is the "specific combination" of a "backbone network" and "prediction heads" "for *real-time* embedded driver distraction detection." Opp. 14; *see also id.* at 12–13. As an initial matter, this conclusory assertion is insufficient to avoid dismissal. *GoTV*, 166 F.4th at 1068. In any event, the '243 patent contradicts Motive's assertion, as the patent concedes the "backbone network" and "prediction heads" can be no more than conventional neural networks. Br. 13–14; *supra* at p. 7. In addition, Motive does not disagree that, as prior art cited on the face of the '243 patent confirms, it was already well known to use backbone networks for generating feature information and prediction heads for classifying those features. *Supra* at p. 7; Br. 13. Further, there is

9

no requirement *in the claims* that the backbone network or the prediction heads provide "*real-time embedded* driver distraction detection." Thus, these *unclaimed* features are "irrelevant." *Am. Axle*, 967 F.3d at 1293.

*Motive's Other Assertions Fail.* Motive does not dispute that the patent concedes the step of "minimizing a loss" can be performed using a known mathematical algorithm, and that this algorithm cannot itself confer eligibility. *See* Br. 13–14. Motive nonetheless contends the step is "not claimed in isolation as a mathematical formula," suggesting there is some other patent-eligible way to minimize a loss. Opp. 14. Motive's vague suggestion, which identifies no other option, should be rejected. In addition, Motive argues its SAC allegations are "sufficient." Opp. 13. But Motive fails to identify a *single* factual allegation tied to the *claim language* or supported by the specification that could avoid dismissal. *Zillow Grp.*, 2024 WL 89642, at *5; Br. 15. Instead, Motive runs away from its SAC allegations, which focused on a "multi-task model," and minimizes them as mere "context" for its *new* "technological improvement" assertion in its opposition brief—*i.e.*, that the claims require a specific "architecture" and "training methodology." *Supra* at p. 7. Motive's shifting position on the purported "technological improvement" of its own patent claims further underscores that its assertions have no merit. Finally, Motive argues that prior art referred to in the IPR petition should be disregarded because the petition was denied. Opp. 14. Motive's argument is a red herring because Samsara (properly) relied on that prior art as support for why the '243 patent's *dependent* claims fail Step Two, and Motive never argues that any dependent claim presents a materially different patent-eligibility question as compared to representative claim 1. *Supra* at p. 6. Motive's argument therefore should be ignored.

## III.    DISMISSAL WITH PREJUDICE IS APPROPRIATE

Leave to amend is futile where there is no "new factual allegation" that could "save the asserted claims from ineligibility." *Simio*, 983 F.3d at 1364. Here, although Motive contends it should be granted leave to amend a *third* time, it proposes no allegations that it contends would materially alter the eligibility analysis. Motive also does not contend any claim construction disputes need to be resolved before deciding the eligibility question. Thus, dismissal with prejudice should be granted.

DATED: May 5, 2026

Respectfully submitted,

*/s/ Josh Krevitt*
Josh Krevitt (SBN 208552)
Brian A. Rosenthal (*pro hac vice*)
Katherine Q. Dominguez (*pro hac vice*)
Allen Kathir (*pro hac vice*)
Allyson Parks (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
JKrevitt@gibsondunn.com
BRosenthal@gibsondunn.com
KDominguez@gibsondunn.com
AKathir@gibsondunn.com
AParks@gibsondunn.com

Jaysen S. Chung (SBN 280708)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.393.8306
JSChung@gibsondunn.com

Stuart M. Rosenberg (SBN 239926)
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301
Telephone: 650.849.5300
Facsimile: 650.849.5333
SRosenberg@gibsondunn.com

Nathaniel R. Scharn (SBN 305836)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220
NScharn@gibsondunn.com

Hannah L. Bedard (*pro hac vice*)
Wendy Cai (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8500
Facsimile: 202.467.0539
HBedard@gibsondunn.com
WCai@gibsondunn.com

*Attorneys for Defendant and Counterclaim Plaintiff Samsara Inc.*

11

SAMSARA INC.'S REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS

CASE NO. 3:24-CV-00902-JD

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on May 5, 2026, with a copy of this document via electronic mail.

*/s/ Josh Krevitt*
Josh Krevitt

SAMSARA INC.'S REPLY IN SUPPORT OF                                    CASE NO. 3:24-CV-00902-JD
MOTION FOR JUDGMENT ON THE PLEADINGS